## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY<br><br>　　　　Plaintiff,<br><br>v.<br><br>VPRART, LLC, Erin Gilbert and Patrick Gilbert, Individually and as Natural Parents and Guardians of their Minor Children, F.G., H.G., and P.G.,<br><br>　　　　Defendants. | CASE No.: 1:21-CV-21312-BB<br><br>**AMENDED COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff Admiral Insurance Company ("Admiral") brings this lawsuit for a declaratory judgment against Defendants VPRART, LLC ("VPRART"); Erin Gilbert and Patrick Gilbert, Individually and as Natural Parents and Guardians of their Minor Children, F.G., H.G., and P.G. (collectively, the "Gilberts"), and states and alleges as follows:

### NATURE OF THE ACTION

1.　Pursuant to 28 U.S.C. § 2201, this lawsuit seeks a determination of the parties' rights and obligations under a Commercial Lines Insurance Policy that Admiral issued to VPRART, in connection with a lawsuit that the Gilberts have filed against VPRART.

### THE PARTIES

2.　At all times material to this action, Admiral is and was a Delaware corporation with its principal place of business in Arizona, and is and was licensed to conduct business in this jurisdiction.

3. A corporation is a citizen of any state in which it is incorporated and of the state where its principal place of business is located. *See Werner v. Busch Entertainment Corp.,* 2006 WL 2644920, 1 (M.D. Fla. 2006) (citing *MacGinnitie v. Hobbs Group LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005)). Accordingly, at all times material to this action, Admiral is and was a citizen of Delaware and Arizona.

4. At all times material to this action, VPRART is and was a Florida limited liability company organized and existing under the laws of the state of Florida, with its principal place of business in Miami, Florida. For purposes of diversity jurisdiction, a limited liability company is a citizen of every state in which any of its members is a citizen. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004).

5. At all times material to this action, VPRART has and had one member, Kevin Tollado, who is and was the managing member, and is and was domiciled in the state of Florida.

6. "Citizenship is equivalent to domicile for purposes of diversity jurisdiction." *See Simpson v. Fender*, 445 F. Appx. 268, 270 (11th Cir. 2011) (citing *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002)). A natural person's citizenship is determined by his "domicile," or "the place of his true, fixed, and permanent home and principal establishment… to which he has the intentions of returning whenever he is absent therefrom." *McCormick*, 293 F.3d at 1257-58.

7. Accordingly, at all times material to this action, VPRART's sole member, Kevin Tollado, is and was a permanent resident of the state of Florida and is and was domiciled and a citizen of the State of Florida. *Simpson v. Fender*, 445 F. Appx. 268, 270 (11th Cir. 2011).

8. As such, at all times material to this action, VPRART is and was a citizen of the State of Florida.

9. At all times material to this action, Erin Gilbert, Individually and as Natural Parent and Guardian of her minor children, F.G., H.G., and P.G., is and was, a U.S. citizen and permanent resident of St. Croix, U.S. Virgin Islands. Accordingly, Erin Gilbert, Individually and as Natural Parent and Guardian of her minor children, F.G., H.G., and P.G., at all times material to this action, is and was, domiciled and a citizen of the U.S. Virgin Islands. *See id.*

10. At all times material to this action, Patrick Gilbert, Individually and as Natural Parent and Guardian of his minor children, F.G., H.G., and P.G., is the husband of Erin and is and was, a U.S. citizen and permanent resident of St. Croix, U.S. Virgin Islands. Accordingly, Patrick Gilbert, Individually and as Natural Parent and Guardian of his minor children, F.G., H.G., and P.G., at all times material to this action, is and was domiciled and a citizen of the U.S. Virgin Islands. *See id.*

11. The Gilberts are proper parties because their rights, if any, may be affected by this Court's declaration, and thus have been named in this action so they will be bound by the Court's ultimate decrees.

12. Consequently, complete diversity exists between Plaintiff and Defendants. At all times material to this action, Plaintiff is and was a citizen of Delaware and Arizona, while Defendants are and were are citizens of the State of Florida and the U.S. Virgin Islands. Therefore, this Court has original jurisdiction of this action under the provisions of 28 U.S.C. § 1332.

## JURISDICTION AND VENUE

13. This court has jurisdiction under 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties. The amount in controversy in this matter includes the $100,000 in insurance coverage that is being sought with respect to the underlying lawsuit the Gilberts commenced

against VPRART.  (*See* December 23, 2020 letter from counsel for Gilberts to counsel for VPRART, seeking assignment of VPRART's rights against Admiral, at 2, 5 (attached hereto and incorporated by reference as **Exhibit D**)).  The insurance coverage sought is for significant past, present, and future bodily injury to Erin Gilbert, including double amputation, due to the alleged negligence of VPRART.  (*See* **Exhibit B**, ¶¶ 40-55).  Accordingly, the amount in controversy exceeds $75,000.  *See, e.g., Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010).

14.     Venue in this district is proper under 28 U.S.C. § 1391 because, among other things, a substantial part of the risk insured under the contract is situated in this district, Defendant VPRART resides in this district and division, and the insurance policy was issued in this district and division.

15.     All conditions precedent to filing this action have occurred or have been complied with.

## FACTUAL ALLEGATIONS

### VPRART's Insurance Policy

16.     Admiral issued to VPRART a Commercial Lines Insurance Policy bearing number *xxx*628-01, and in effect from November 12, 2019 through November 12, 2020 (the "Policy," attached hereto and incorporated by reference as **Exhibit A**).

17.     The Policy provides "Claims-Made" Commercial General Liability Coverage, up to a $1,000,000 Each Occurrence Limit of Insurance, subject to a $5,000 deductible.

18.     The Commercial General Liability Coverage Form in the Policy states at the beginning of the form that "**COVERAGES A AND B PROVIDE CLAIMS-MADE COVERAGE.  PLEASE READ THE ENTIRE FORM CAREFULLY.**"  (Ex. A, p. 37).

19. Subject to various terms and conditions in the Policy, the Insuring Agreement for Coverage A provides that Admiral "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies. . . . However, [Admiral] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply." (*Id.*, § I.A.1.a.).

20. The Policy states that "[t]his insurance applies to 'bodily injury' . . . only if: (2) The 'bodily injury' . . . did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period." (*Id.*, § I.A.1.b.(2)).

21. The "Pre-Existing Damage Exclusion" further precludes coverage for bodily injury that began before the policy period or retroactive date and continued thereafter:

This insurance does not apply to:

1. Any damages arising out of or related to "bodily injury" or "property damage", whether such "bodily injury" or "property damage" is known or unknown,

    (a) which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier); or

    (b) which are, or are alleged to be, in the process of occurring as of the inception date of the policy (or the retroactive date of this policy, if any; whichever is earlier) even if the "occurrence" continues during this policy period.

(Ex. A, p. 76 (Special Exclusions – Joint Form Endorsement).

22. Per endorsement to the Policy, "bodily injury" "means physical injury, physical sickness or physical disease sustained by any one person." (*Id.*, p. 70).

23. The Policy's "Retroactive Date" is November 12, 2019. (*Id.*, p. 5 (Commercial General Liability Coverage Part Declarations)).

24. The Policy also includes a "Health, Nutrition & Lifestyle Exclusions and Coverages Endorsement" (the "HNL Coverage Endorsement") which modifies the insurance provided under the Commercial General Liability Coverage Form.

25. The HNL Coverage Endorsement provides a $100,000 Each Claim Limit – Including Claims Expenses, subject to a $2,500 deductible. (*Id*., p. 12 (HNL Coverage Endorsement Additional Declarations Schedule)).

26. The HNL Coverage Endorsement states that "THIS IS A **CLAIMS**-MADE COVERAGE. PLEASE READ THIS POLICY AND THIS COVERAGE CAREFULLY." (*Id*).

27. The HNL Coverage Endorsement incorporates a Professional Liability Insuring Agreement into the Policy, as follows:

> Except to the extent coverage is afforded under **COVERAGE D – PROFESSIONAL LIABILITY** below, this insurance does not apply to "bodily injury" . . . or damages of any kind, including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with past, present or future claims or "suits" arising in whole or in part, either directly or indirectly, out of the rendering of or the failure to render any professional service by or on behalf of any insured.
>
> **COVERAGE D – PROFESSIONAL LIABILITY**
>
> **COVERAGE D – I**. INSURING AGREEMENTS
>
> A. We will pay on behalf of the Named Insured those amounts which the Named Insured is legally obligated to pay as **damages** caused by a **professional incident** taking place within the "coverage territory" and occurring in its entirety after the Retroactive Date shown in the ADDITIONAL DECLARATIONS SCHEDULE above and before the end of the policy period, for which a **claim** is first made against the Named Insured during the policy period or any extended reporting period we provide.

(*Id*., § D.I.A.).

28. The Retroactive Date shown in the Additional Declarations Schedule is November 12, 2019. (*Id*.).

29. Coverage D in the HNL Coverage Endorsement provides that Admiral has "no obligation or duty under this coverage to defend any **claim** for which coverage is excluded hereunder or not otherwise afforded by this coverage and we are not obligated hereunder to pay any **claims expenses** incurred by the Insured in the defense of any **claim** not covered by this coverage." (*Id*. § D.I.B.).

30. The Policy defines "professional incident" as

> A negligent act, error or omission in the rendering of or failure to render **professional services** by the Named Insured or a person acting under the Named Insured's direction, control or supervision and for whose acts, errors or omission the Named Insured is legally liable.
>
> All **professional incidents** that are logically or causally connected will be deemed one **professional incident** that, for the purpose of determining coverage under this policy, occurred at the time of the earlier act, error or omission. . . . .

(*Id.*, p. 14, § D.II.H.).

31. The Policy defines "professional services" as

> only the following services performed by the Named Insured for the Named Insured's goods or products:
>
> 1. Design of ingredient formulations; and
>
> 2. Development of:
>
>    a. Label usage and dosage information;
>    b. Packaging descriptions of product dosage and usage information. . . . .
>
> **Professional Services** do not include any services performed by the Named Insured which actually or allegedly result in the failure of goods, products or services to conform with any statement of quality or performance made in any **advertisement**, or in the violation of any false advertising, unfair business practices, unfair trade practices or unfair competition law or regulation.

(*Id.* § D.II.I.).

32. Exclusion G. in the HNL Coverage Endorsement precludes any coverage otherwise provided through Insuring Agreement D for "[a]ny **claim** based upon or arising out of, directly or indirectly, in whole or in part, 'bodily injury' . . . ." (*Id*. § D.III.G).

33. Exclusion M. in the HNL Coverage Endorsement precludes any coverage otherwise provided through Insuring Agreement D for "[a]ny **claim** based upon or arising out of, in whole or in part, directly or indirectly, the deficiency or malfunction of any product, any process or technique that is not described in the definition of **professional services** or any product or equipment which is sold, manufactured or furnished by or on behalf of the Insured." (*Id*., p. 15, § D.III.M.).

34. Various other terms and conditions in the Policy apply to preclude or otherwise limit coverage under Coverage A and Coverage D.

**Underlying Litigation For Which VPRART Seeks Coverage**

35. On September 25, 2019, due to injuries Erin Gilbert sustained after using a CBD vaping product from August 15 to August 18, 2019, the Gilbert's commenced litigation in Florida state court, Broward County, to which case number 062019CA020275AXXXCE was assigned (the "Underlying Litigation").

36. VPRART was added as a defendant to the Underlying Litigation through an Amended Complaint filed on March 20, 2020.

37. The Gilberts filed a Second Amended Complaint (attached hereto and incorporated by reference as **Exhibit B**),[1] which, upon information and belief, remains the controlling pleading in that matter.

---

[1] The Second Amended Complaint was filed as an attachment to the Gilberts' October 28, 2020 Unopposed Motion For Leave to File Second Amended Complaint, which was granted January

38. The Second Amended Complaint alleges that on our around August 15, 2019, Erin Gilbert purchased a "Just CBD Mango" flavored vape cartridge for the first time. (Ex. B, ¶ 37).

39. The Second Amended Complaint alleges that Ms. Gilbert vaped the Just CBD Mango product daily from August 15, 2019 through August 18, 2019. (*Id*. ¶ 39).

40. The Second Amended Complaint alleges that on August 19, 2019, Ms. Gilbert presented to the local emergency room with fevers, shortness of breath, cough, vomiting, and diarrhea. (*Id*. ¶ 40).

41. The Second Amended Complaint alleges that from August 19, 2019 through October 2, 2019, Ms. Gilbert was hospitalized and sustained various injuries, including amputations of both legs. (*Id*. ¶¶ 41-53).

42. The Second Amended Complaint alleges that Ms. Gilbert's injuries are attributed to vaping the Just CBD Mango product. (*Id*. ¶ 54).

43. The Second Amended Complaint alleges that VPRART designed, manufactured, tested, labeled, marketed, distributed and/or placed into the stream of commerce the Just CBD Mango product used by Ms. Gilbert. (*Id*. ¶¶ 13, 174-175).

44. Count VIII in the Second Amended Complaint asserts a claim against VPRART for "Strict Liability – Design Defect."

45. Count VIII in the Second Amended Complaint alleges that the Just CBD Mango product was defectively designed "when it left the possession of" VPRART and the alleged defects existed at the time VPRART placed the product into the stream of commerce. (*Id*. ¶¶ 178, 180).

---

14, 2021. The attachment to the Gilberts' motion in the underlying matter is attached hereto as Exhibit B as no separate Second Amended Complaint was filed in the underlying litigation.

46. Count XVI in the Second Amended Complaint asserts a claims against VPRART for "Negligent Design."

47. Count XVI in the Second Amended Complaint alleges that VPRART breached its duty in the design of the Just CBD Mango product by, among others, failing to conduct proper testing "before placing Just CBD Mango into the stream of commerce." (*Id.* ¶ 233.a.).

48. Count XXIV in the Second Amended Complaint asserts a claim against VPRART for "Strict Liability – Manufacturing Defect."

49. Count XXIV in the Second Amended Complaint alleges that the Just CBD Mango product Ms. Gilbert used was "defectively manufactured when it left the possession of" VPRART and placed into the stream of commerce. (*Id.* ¶¶ 347-348).

50. Count XXXII in the Second Amended Complaint asserts a claim against VPRART for "Negligent Manufacturing."

51. Count XXXII in the Second Amended Complaint alleges that VPRART breached its duty to manufacture the Just CBD Product Ms. Gilbert used by, among others, manufacturing the product with harmful toxins. (*Id.* ¶ 401.b.).

52. Count XL in the Second Amended Complaint asserts a claim against VPRART for "Strict Liability – Warnings Defects."

53. Count XL in the Second Amended Complaint alleges that the Just CBD Mango product Ms. Gilbert used had "defective labeling, packaging, marketing materials, distribution materials and sales materials including warnings when it left possession of" VPRART. (*Id.* ¶ 509).

54. Count XLVIII in the Second Amended Complaint asserts a claim against VPRART for "Negligence – Warnings Defects."

55. Count XLVIII in the Second Amended Complaint alleges that VPRART breached a duty to warn in connection with the "labeling, marketing, distribution, advertising, promoting and/or sale" of the Just CBD Mango product used by Ms. Gilbert. (*Id*. ¶ 582).

56. With respect to each count asserted against VPRART in the Second Amended Complaint, the Gilberts allege that VPRART's alleged misconduct was the direct and proximate result of Ms. Gilbert's injuries.

57. The Gilberts seek damages as a result of Ms. Gilbert's bodily injuries, which include, among other injuries and damages, leg amputations, and any resulting pain and suffering, disability or physical impairment, disfigurement, future expenses, hospitalization, past and future medical and nursing care, and past and future lost earnings.

58. Ms. Gilbert's injuries, as alleged in the Second Amended Complaint, first occurred before the inception date and Retroactive Date in the Policy, and were in the process of occurring as of the inception date and Retroactive Date in the Policy.

59. Ms. Gilbert used the Just CBD Mango product after it was designed, manufactured, tested, labeled, marketed, distributed and/or placed into the stream of commerce.

60. To the extent any "professional incident," as defined in the Policy, is alleged in the Second Amended Complaint, such incident took place, in its entirety, before the Policy's November 12, 2019 Retroactive Date.

61. By letter dated June 30, 2020, Admiral denied coverage for the Underlying Litigation and advised VPRART of the reasons for the denial. (Attached hereto and incorporated by reference as **Exhibit C**).

## COUNT I: DECLARATORY JUDGMENT

62. Admiral realleges and incorporates by reference the allegations asserted in paragraphs 1-61 above as if fully set forth herein.

63. The Policy is a valid and enforceable contract of insurance between VPRART and Admiral.

64. Pursuant to the terms and conditions of the Policy, there is no insurance coverage available for the allegations asserted in the Underlying Litigation.

65. The bodily injuries at issue in the Underlying Litigation first occurred prior to the inception date of the Policy and are thus excluded under Coverage A in the Policy.

66. VPRART's alleged misconduct at issue in the Underlying Litigation occurred before the Retroactive Date in the Policy and thus Coverage D in the Policy is not available.

67. Admiral is informed and believes, and thereon alleges, that VPRART contends that the Policy provides coverage for the injuries at issue in the Underlying Litigation.

68. An actual, justiciable controversy exists between the parties, warranting the entry of a declaratory judgment by this Court.

**WHEREFORE**, Admiral requests that this Court enter judgment as follows:

a. A judicial declaration that the Policy does not require Admiral to indemnify VPRART for damages, if any, awarded against it in the Underlying Litigation;

b. A judicial declaration that the Policy does not require Admiral to defend VPRART in the claims asserted against it in the Underlying Litigation;

c. A judicial declaration that the Policy does not provide coverage for, or otherwise respond to, the claims asserted against VPRART in the Underlying Litigation; and

d. For such other relief as the Court deems just, proper, and equitable under the circumstances.

Dated: April 12, 2021

*/s/Rory Eric Jurman*
RORY ERIC JURMAN, ESQ.
Fla. Bar No. 194646
rjurman@hinshawlaw.com

**HINSHAW & CULBERTSON LLP**
One East Broward Boulevard
Suite 1010
Ft. Lauderdale, FL 33301
Telephone: 954-467-7900
Facsimile: 954-467-1024

***Attorneys for Plaintiff Admiral Insurance Company***