# EXHIBIT A



**Policyholder Message**

Named Insured:   VPRART LLC                              Policy Number:   CA000036628-01

Dear Policyholder:

Our Corporate Headquarters' and Northeast Regional Branch Office mailing address is:

> Admiral Insurance Company (A Berkley Company)
> Mt. Laurel Corporate Park
> 1000 Howard Blvd., Suite 300, P.O. Box 5430
> Mt. Laurel, NJ 08054

Our telephone number:

General:          (856) 429-9200

If you need to report a claim please direct it to:

I.        By regular or overnight mail to:

> Admiral Insurance Company (A Berkley Company)
> Mt. Laurel Corporate Park
> 1000 Howard Blvd., Suite 300, P.O. Box 5430
> Mt. Laurel, NJ 08054
> Attention: New Claim
> **Clearly state it is a "NEW CLAIM"**

II.       By Email to:

> admclaims@admiralins.com
> Do not email claims to ANY claims individual.

III.      By FAX to:

> Fax #: (856) 429-3630
> Attention: New Claim
> **Clearly state it is a "NEW CLAIM"**

Jennifer Hoopes
Notary Public of New Jersey
My Commission Expires January 29, 2024
I.D. No. 2442512

**CERTIFIED TRUE COPY**
SWORN TO AND SUBSCRIBED
BEFORE ME THIS 22 DAY OF
March , 2021



# ADMIRAL INSURANCE COMPANY

### A Stock Company

## COMMERCIAL LINES POLICY

## THIS POLICY IS NOT OBTAINED PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

THIS POLICY CONSISTS OF:

- DECLARATIONS
- COMMON POLICY CONDITIONS
- ONE OR MORE COVERAGE PARTS. A COVERAGE PART CONSISTS OF:

    - ONE OR MORE COVERAGE FORMS
    - APPLICABLE FORMS AND ENDORSEMENTS

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_____
Secretary

_____
President and CEO

1000 Howard Blvd., Suite 300, P.O. Box 5430    Mt. Laurel, NJ 08054    Telephone (856) 429-9200   Facsimile (856) 429-8611

JA1001 (03/13)                                    a W. R. Berkley Company

Policy Number: CA000036628-01



**ADMIRAL** | INSURANCE GROUP
a Berkley Company

AI 80 00 09 17

Effective Date: 11/12/2019

**Named Insured:**   VPRART LLC

## IMPORTANT – POLICYHOLDER NOTICES

## NOTICE

Except to such extent as may otherwise be provided here in, the coverage of this policy is limited generally to liability for only those claims that are first made against the insured and reported to us while the policy is in force. Please review the policy carefully and discuss the coverage thereunder with your insurance agent or broker.

# SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY

# ADMIRAL INSURANCE COMPANY

A STOCK COMPANY
(herein called the Company)



# COMMON POLICY
## DECLARATIONS

**Policy No.:** __CA000036628-01__          **Renewal/Rewrite of:**                    **NEW**

| Named Insured and Mailing Address |
|---|

VPRART LLC
7262 NW 33 ST.
MIAMI, FL 33122

**POLICY PERIOD:** From      11/12/2019    to    11/12/2020    At 12:01 A.M. Standard Time at the address of the **Named Insured** as stated herein

**THE NAMED INSURED IS:**          LLC

**BUSINESS DESCRIPTION:**        Contract MFG for Cosmetics and CBD

**AUDIT PERIOD:**                Annual

IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE
WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGES FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM
MAY BE SUBJECT TO ADJUSTMENT.

Commercial General Liability Coverage                                                    $7,140.00

Products/Completed Operations Liability Coverage

|  |  |
|---|---|
| PREMIUM: | $7,140.00 |
| TERRORISM PREMIUM: |  |
| TOTAL PREMIUM: | $7,140.00 |

Form(s) and Endorsement(s) made a part of this policy at inception:
REFER TO SCHEDULE OF FORMS, AI 00 18 03 98

This policy is not binding unless countersigned by Admiral Insurance Company or its authorized representative.

Countersigned On: _____1/7/2020_____        By: _____
                                                        Authorized Representative
            At: _____Mount Laurel, NJ_____

THESE COMMON POLICY DECLARATIONS AND THE COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS (OR
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART DECLARATIONS), TOGETHER WITH THE COMMON POLICY CONDITIONS,
COVERAGE PART(S), FORM(S) AND ENDORSEMENT(S), IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED
POLICY.

**ADMIRAL INSURANCE COMPANY**

A STOCK COMPANY
(herein called the Company)



**COMMERCIAL GENERAL LIABILITY
COVERAGE PART
DECLARATIONS**

## POLICY NUMBER    CA000036628-01

### LIMITS OF INSURANCE

| | | | |
|---|---|---|---|
| Each Occurrence Limit | $ | 1,000,000 | |
| General Aggregate Limit | $ | 2,000,000 | |
| (Other Than Products- Completed Operations) | | | |
| Products - Completed Operations Aggregate Limit | $ | 2,000,000 | |
| Personal and Advertising Injury Limit | $ | 1,000,000 | |
| Damage To Premises  Rented To You Limit | $ | 300,000 | Any One Premises |
| Medical Expense Limit | $ | 5,000 | Any One Person |

### RETROACTIVE DATE

November 12, 2019

### PREMIUM

| Classification | Code | Premium Basis | Rate | Per | Advance Premium |
|---|---|---|---|---|---|
| Contract MFG for Cosmetics and CBD | 55009 | $2,100,000 | $3.40 | $1,000 Sales | $7,140.00 |

| | | |
|---|---|---|
| | Total Advance Premium | $7,140.00 |
| | Minimum Term Premium | $7,140.00 |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

# SCHEDULE OF FORMS

**Named Insured:**   VPRART LLC                                    **Policy No.:** CA000036628-01

| FORM NUMBER | TITLE |
|---|---|
| JA10010313 | COVER JACKET - ADMIRAL INSURANCE COMPANY |
| DE20010700 | COMMON POLICY DECLARATIONS |
| DE20021218 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| AI00180398 | SCHEDULE OF FORMS |
| NR00020719 | HEALTH, NUTRITION & LIFESTYLE EXCLUSIONS AND COVERAGES ENDORSEMENT (COMMERCIAL GENERAL LIABILITY COVERAGE FORM) |
| NR00070319 | CANNABIDIOL (CBD) - MODIFIED DESIGNATED PRODUCTS, SUPPLEMENTS AND ADDITIVES EXCLUSION |
| CG00020413 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG20110413 | ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES |
| CG20150413 | ADDITIONAL INSURED - VENDORS |
| CG21060514 | EXCLUSION-ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| CG21490999 | TOTAL POLLUTION EXCLUSION ENDORSEMENT |
| CG21750115 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES |
| CG24260413 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| IL00171198 | COMMON POLICY CONDITIONS |
| IL00210702 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT |

AI 00 18 03 98

| | |
|---|---|
| AD06620204 | EMPLOYEE BENEFITS LIABILITY COVERAGE CLAIMS MADE COVERAGE |
| AD07431211 | KNOWN EVENT INCIDENT INJURY OR DAMAGE EXCLUSION |
| AD08420216 | BODILY INJURY REDEFINED |
| AD66010715 | PUNITIVE DAMAGE EXCLUSION |
| AD66090295 | MINIMUM PREMIUM AND MINIMUM RETAINED PREMIUM AMENDATORY ENDORSEMENT |
| AD66110511 | DEDUCTIBLE LIABILITY INSURANCE |
| AD67710410 | WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST VENDORS TO US |
| AD68891213 | SPECIAL JOINT FORM CLAIMS MADE |
| AD66690905 | SUPPLEMENTARY PAYMENTS INCLUDED WITHIN THE LIMIT OF LIABILITY |
| AD66760410 | HIRED AUTO AND NON-OWNED LIABILITY |
| AD67480511 | INTELLECTUAL PROPERTY EXCLUSION (AMENDED DEFINITION OF PERSONAL AND ADVERTISING INJURY) |
| AD67500508 | FORMALDEHYDE EXCLUSION (ABSOLUTE) |
| AD67600415 | PREMIUM BASIS DEFINITION-GROSS SALES |
| AD68670110 | WORLDWIDE COVERAGE |
| AD69680619 | MARIJUANA EXCLUSION (WITH EXCEPTION FOR INDUSTRIAL HEMP) |
| AI44020519 | SERVICE OF SUIT |
| AI66701011 | FLORIDA CHANGES CANCELLATION AND NONRENEWAL |

AI 00 18 03 98

Policy Number: CA000036628-01

NR 00 02 07 19

Effective Date: 11/12/2019

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# HEALTH, NUTRITION & LIFESTYLE EXCLUSIONS AND COVERAGES ENDORSEMENT
## (Commercial General Liability Coverage Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

# HEALTH, NUTRITION & LIFESTYLE EXCLUSIONS

## DESIGNATED PRODUCTS, SUPPLEMENTS AND ADDITIVES EXCLUSION

This insurance does not apply to liability, injury or damages of any kind, to include but not limited to "bodily injury", "property damage" and "personal and advertising injury", including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with the manufacturing, distribution, sale, disposal, testing, handling, application, consumption or use of, or exposure to, any of the products, supplements or additives listed in the Schedule below, or to any other products which contain any of the products, supplements or additives listed in the Schedule below, or to any products which contain products similar to the chemical formulary of the products, supplements or additives listed in the Schedule below, or to any product which is a derivative of a product, supplement or additive listed in the Schedule below, or to any product, supplement or additive which is generally known in the trade in which it is used as having a formulation, structure or function similar to those listed in the Schedule below, by whatever name manufactured, distributed or sold.

### SCHEDULE

Any product, supplement, additive, substance, ingredient or compound manufactured, imported, formulated, sold or distributed by you or on your behalf by others, in violation of any regulation or law.

Steroids, including any product, supplement, additive, substance, ingredient or compound controlled or banned by the Anabolic Steroid Control Act of 1990 including amendments thereto, or the Anabolic Steroid Control Act of 2005 including amendments thereto

DMAA (Methylhexanamine, 1,3-dimethylamylamine)
DMHA (1,5-dimethylhexylamine)
Ephedra
Ephedrine Alkaloids
Fenfluramine (N-Nitroso_Fenfluramine)
Kratom
Phenibut

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit" or other proceeding alleging injury or damage of any kind, including but not limited to "bodily injury", "property damage" or "personal and advertising injury" to which this amendment applies.

# ASBESTOS EXCLUSION (ABSOLUTE)

This insurance does not apply to liability, injury or damages of any kind, to include but not limited to "bodily injury", "property damage" or "personal and advertising injury" including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with actual, alleged or threatened past, present or future claims arising in whole or in part, either directly or indirectly, out of the mining, manufacturing, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of, exposure to, testing for or failure to disclose the presence of asbestos, products containing asbestos, or products designed or used to protect from the inhalation, ingestion, contact with or other exposure to asbestos whether or not the asbestos is or was at any time airborne as a fume, dust, powder, fiber or particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever.

It is further agreed that this insurance does not apply to any loss, cost or expense including but not limited to, payment for investigation or defense, fines, penalties, interest and other costs or expenses, arising out of or related to any:

(1)  Clean up or removal of asbestos or products and materials containing asbestos;

(2)  Such actions as may be necessary to monitor, assess and evaluate the release or threat of same, of asbestos or products and material containing asbestos;

(3)  Disposal of asbestos substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result;

(4)  Compliance with any law or regulation regarding asbestos;

(5)  Existence, storage, handling or transportation of asbestos;

(6)  Any supervision, instructions, recommendations, warranties (express or implied), warnings or advice given or which should have been given.

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit", demand, fine or other proceeding alleging injury or damages of any kind, to include but not limited to "bodily injury", "property damage" or "personal and advertising injury" to which this amendment applies.

# LEAD EXCLUSION (ABSOLUTE)

This insurance does not apply to liability, injury or damages of any kind, to include but not limited to "bodily injury", "property damage" or "personal and advertising injury" including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with actual, alleged or threatened past, present or future claims arising in whole or in part, either directly or indirectly, out of the mining, manufacturing, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of, exposure to, ingestion of or testing for or failure to disclose the presence of lead, products containing lead, or products designed or used to protect from the inhalation, ingestion, contact with or other exposure to lead, whether or not the lead is or was at any time airborne as a fume, dust, powder, fiber or particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever.

It is further agreed that this insurance does not apply to any loss, cost or expense, including but not limited to payment for investigation or defense, fines, penalties, interest and other costs or expenses, arising out of or related to any:

(1)  Clean up or removal of lead or products and materials containing lead;

(2)  Such actions as may be necessary to monitor, assess and evaluate the release or threat of same, of lead or products and material containing lead;

(3)  Disposal of lead substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result;

(4)  Compliance with any law or regulation regarding lead;

(5)  Existence, storage, handling or transportation of lead;

(6)  Any supervision, instructions, recommendations, warranties (express or implied), warnings or advice given or which should have been given.

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit", demand, fine or other proceeding alleging injury or damages of any kind, to include but not limited to "bodily injury", "property damage" or "personal and advertising injury" to which this amendment applies.

# MICROORGANISMS, BIOLOGICAL ORGANISMS OR ORGANIC CONTAMINANTS EXCLUSION (EXCEPT BODILY INJURY CAUSED BY YOUR PRODUCT)

This insurance does not apply to:

(1) Liability, injury or damages of any kind, to include but not limited to "bodily injury", "property damage", "personal and advertising injury" arising out of, related to, caused by or in any way connected with the exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast or other toxins, allergens, infectious agents, wet or dry rot or rust, or materials of any kind containing them at any time, regardless of the cause of growth, proliferation or secretion:

  (a) At, from or within any premises, site, location or building which is or was at any time owned or occupied by, directly or indirectly managed by, rented or loaned to, used by or for any insured or others;

  (b) At, from or within any premises, site, location or building on which any insured or any contractor or subcontractor working directly or indirectly on any insured's behalf are performing or have completed operations.

(2) Any loss, cost or expense arising out of any:

  (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

  (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

This exclusion does not apply to "bodily injury" caused by "your product".

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit" or other proceeding alleging injury or damages of any kind, to include but not limited to "bodily injury", "property damage", "personal and advertising injury" to which this amendment applies.

# SILICA EXCLUSION (EXCEPT BODILY INJURY CAUSED BY YOUR PRODUCT)

A. This insurance does not apply to any "bodily injury", "property damage" or "personal and advertising injury" related to actual, alleged, or threatened past, present or future "claims" arising in whole or in part, either directly or indirectly, out of mining, the manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of, exposure to, ingestion of, testing for or failure to disclose the presence of, failure to warn or advise of silica, products containing silica, or products designed or used to protect from the inhalation, ingestion, contact with or any other exposure to silica, whether or not the silica is or was at any time airborne as a fume, dust, powder, fiber or particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever.

B. This insurance does not apply to any loss, cost or expense including, but not limited to, payment for investigation or defense, fines, penalties, interest and other costs or expenses, arising out of or related to any:

  (1) Clean up or removal of silica or products and materials containing silica;

  (2) Such actions as may be necessary to monitor, assess and evaluate the release or threat of same, of silica or products and material containing silica;

(3) Disposal of silica substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result;

(4) Compliance with any law or regulation regarding silica;

(5) Existence, storage, handling or transportation of silica;

(6) Any supervision, instructions, recommendations, warranties (express or implied), warnings or advice given or which should have been given.

C. This exclusion does not apply to "bodily injury" caused by "your product".

D. It is further agreed that for any "claim" made or "suit" brought which is excluded under the terms of this amendment the Company shall not have the obligation to defend, adjust, investigate or pay any cost for investigation, defense, attorney fees or adjustment arising out of such "claims".

# PRESCRIPTION DRUG, PRESCRIPTION DRUG ACTIVE INGREDIENT AND BIOLOGIC EXCLUSION

This insurance does not apply to liability, injury or damages of any kind, to include but not limited to "bodily injury", "property damage" or "personal and advertising injury" including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with:

A. "Your product" that is a "prescription drug";

B. "Your product" if it contains a "prescription drug active ingredient";

C. "Your product" that is a "biologic"; or

D. Testing performed by you or on your behalf of any product that is a "prescription drug", any product that contains a "prescription drug active ingredient", or any product that is a "biologic".

We shall have no duty to investigate, defend or indemnify you or your subsidiaries or any insured, or anyone acting on behalf of you or your subsidiaries or any insured, against any loss, claim, "suit", demand, fine or other proceeding alleging injury or damages of any kind, to include but not limited to "bodily injury", "property damage" or "personal and advertising injury" to which this amendment applies.

**Additional Definitions**

A. "Prescription drug" means a drug or medicine that requires a doctor's authorization for the general public to purchase.

B. "Prescription drug active ingredient" means any component of a "prescription drug" that provides pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the human body.

C. "Biologic" means:

(1) A medicinal product such as a vaccine, blood or blood component, allergenic, somatic cell, gene therapy, recombinant therapeutic protein, or living cells that are used as therapeutics to treat diseases; and

(2) Any product containing as an ingredient any "biologic".

# HEALTH, NUTRITION & LIFESTYLE COVERAGES

## HEALTH NUTRITION AND LIFESTYLE
## PROFESSIONAL LIABILITY INSURANCE COVERAGE
### CLAIMS-MADE COVERAGE

### ADDITIONAL DECLARATIONS SCHEDULE

| Limits Of Insurance | |
|---|---|
| Each Claim Limit - Including Claims Expenses | $  100,000 |
| (Payments from this limit reduce the Each Occurrence Limit shown in the Declarations) | |
| Aggregate Limit for All Claims - Including Claims Expenses | $  250,000 |
| (Payments from this limit reduce the General Aggregate Limit shown in the Declarations) | |
| **Deductible** | |
| Applicable to Each Claim | $  2,500 |
| (Payments under this deductible reduce the General Aggregate Limit shown in the Declarations) | |
| **Coverage Retroactive Date** | |
| Retroactive Date applicable to this coverage:  11/12/2019 | |

THIS IS A **CLAIMS**-MADE COVERAGE.  PLEASE READ THIS POLICY AND THIS COVERAGE CAREFULLY.  OUR LIMIT OF INSURANCE AVAILABLE WILL BE REDUCED BY THE AMOUNTS PAID FOR **DAMAGES** AND **CLAIM EXPENSES**.

Certain terms are defined in the policy to which this coverage is attached.  Words that are in **bold** type throughout this coverage are defined terms within the Definitions section of this coverage.

In consideration of the premium paid, in reliance upon the statements in the Application(s) and subject to the terms and conditions of this coverage and the policy to which it is attached, the Company agrees with the Named Insured as follows:

Except to the extent coverage is afforded under **COVERAGE D - PROFESSIONAL LIABILITY** below, this insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or damages of any kind, including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with past, present or future claims or "suits" arising in whole or in part, either directly or indirectly, out of the rendering of or the failure to render any professional service by or on behalf of any insured.

## COVERAGE D - PROFESSIONAL LIABILITY

### COVERAGE D - I. INSURING AGREEMENTS

    **A.** We will pay on behalf of the Named Insured those amounts which the Named Insured is legally obligated to pay as **damages** caused by a **professional incident** taking place within the "coverage territory" and occurring in its entirety after the Retroactive Date shown in the ADDITIONAL DECLARATIONS SCHEDULE above and before the end of the policy period, for which a **claim** is first made against the Named Insured during the policy period or any extended reporting period we provide**.**

    **B.** We have the right and duty to defend any **claim** brought against the Insured seeking **damages** caused by a **professional incident** to which this coverage applies, including the right to appoint counsel to defend the Insured, and will do so even if any of the allegations of the **claim** are groundless, false or fraudulent.  We may make such investigation of any **claim** as we deem expedient.  Our right and duty to defend ends when we have used up the applicable Limits of Insurance in the payment of **damages** and/or **claim expenses,** or have tendered the applicable Limits of Insurance to a court of competent jurisdiction.  We have no obligation or duty under this coverage to defend any **claim** for which coverage is excluded hereunder or not otherwise afforded by this coverage and we are not obligated hereunder to pay any **claim expenses** incurred by the Insured in the defense of any **claim** not covered by this coverage.

    **C.** We will have the right to make any settlement of a **claim** under this coverage.  We shall retain the right and duty to defend any **claim** brought against the Insured seeking **damages** caused by a **professional incident** to which this coverage applies**,** including the right to appoint counsel.

**COVERAGE D - II.** DEFINITIONS

**A. Advertisement** means:

A notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

2. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an **advertisement**.

**B. Claim** means:

1. A written demand for money or services received by any Insured resulting from a **professional incident**.

2. Service of **suit** against an Insured.

**Claim** includes **Related Claims**. **Related Claims** means two or more **claims** arising out of a **professional incident** or **professional incidents** that are logically or causally connected.

**C. Claim Expenses** means:

1. Fees, costs and expenses resulting from the investigation, adjustment, settlement and defense of a **claim**.

2. Allowable expenses of $250 per day but no more than $5,000 in total for the compensation of all Insureds for personally attending any legal proceeding at our request. These allowable expenses shall not be applied to the applicable Limit of Insurance or to the Deductible.

3. The premiums for appeal, attachment or similar bonds, but only for bond amounts within the applicable Limits of Insurance. We do not have to furnish these bonds.

4. Prejudgment interest awarded against the Insured on that part of any covered judgment we pay. If we make an offer to pay the applicable Limits of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

5. All interest on the full amount of any covered judgment that accrues after entry of the judgment and before we have paid, offered to pay, or have tendered or deposited to a court of competent jurisdiction the part of the judgment that is within the applicable Limits of Insurance.

**Claim Expenses** do not include:

1. Salaries or expenses of our regular employees or officials;

2. Fines, penalties, or taxes levied against the Insured;

3. Fees, costs, or expenses incurred by the Insured without our prior written consent. These unilaterally incurred fees, costs, or expenses will not be reimbursed by us nor reduce the deductible under the policy.

**D. Damages** means a monetary and compensatory judgment, award or settlement.

However, **damages** shall not include:

1. Any **damages,** which are a multiple of compensatory **damages,** taxes or fees;

2. Amounts the Insured is required to pay or return as restitution;

3. Fines, penalties, sanctions, taxes or fees, assessed against the Insured;

4. Judgments or awards arising from acts deemed uninsurable by law;

5. Fees or charges, including over-charges or cost overruns incurred by any Insured;

6. Collecting fees of an Insured from a third party;

7. The return of fees or other compensation paid to an Insured;

8. Non-pecuniary relief.

**E.** For purposes of this coverage, Insured means:

1. The Named Insured;

2. Your principals, partners, executive officers, directors, members, managers, stockholders, trustees, and current and former employees while acting on your behalf within the course and scope of their duties as such;

3. In the event of death or incapacity of any Insured, their legal representative in his or her capacity as such, for any **claim** against the Insured;

4.  A temporary worker under your supervision, who is furnished to you to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions.

F.  **Intellectual Property** means property that is created through the intellectual efforts of its creator which is claimed to be protected by law.

G.  **Other Insurance** includes, but is not limited to, coverage or benefits provided by self-insurance arrangements, pools, self-insurance trusts, captive insurance companies, inter-insurance exchanges, mutual insurance companies, stock insurance companies, risk retention groups, reciprocal exchanges, mutual benefit or assistance programs, or any other plan or agreement of risk assumption.

H.  **Professional Incident** means a negligent act, error or omission in the rendering of or failure to render **professional services** by the Named Insured or a person acting under the Named Insured's direction, control or supervision and for whose acts, errors or omissions the Named Insured is legally liable.

All **professional incidents** that are logically or causally connected will be deemed one **professional incident** that, for the purpose of determining coverage under this policy, occurred at the time of the earliest act, error or omission.

**Professional Incident** also means "occurrence" for **claim** reporting purposes.

I.  **Professional Services** means only the following services performed by the Named Insured for the Named Insured's goods or products:

1.  Design of ingredient formulations; and

2.  Development of:

    a.  Label usage and dosage information;

    b.  Packaging descriptions of product dosage and usage information.

**Professional Services** do not include any services performed by the Named Insured which actually or allegedly result in the failure of goods, products or services to conform with any statement of quality or performance made in any **advertisement**, or in the violation of any false advertising, unfair business practices, unfair trade practices or unfair competition law or regulation.

J.  **Suit** means a civil proceeding in which **damages** resulting from a **professional incident** are alleged. **Suit** includes an arbitration proceeding to which the Insured is required to submit or to which the Insured has submitted with our consent. **Suit** includes an arbitration proceeding or any other alternative dispute resolution proceeding in which such **damages** are claimed and to which the Insured submits with our consent.

## COVERAGE D - III. EXCLUSIONS

This coverage does not apply to:

A.  A **claim** made by an Insured against any other Insured;

B.  Any **claim** based upon or arising out of, in whole or in part, directly or indirectly, a dishonest, fraudulent, criminal or malicious act;

C.  Any **claim** based upon or arising out of, in whole or in part, directly or indirectly, the insolvency or bankruptcy of any Insured or any person, firm or organization;

D.  Any **claim** based upon or arising out of, in whole or in part, directly or indirectly, discrimination, violation of civil rights, or any allegation that a person was subjected to unfair treatment or a denial or reduction of benefits, privileges or accommodation in violation of any law, statute, ordinance or regulation designed to ensure equal access to opportunities, goods, services, facilities, and accommodations;

E.  Any **claim** based upon or arising out of, in whole or in part, directly or indirectly, any Insured's activities as owner, sole proprietor, superintendent, executive officer, director, partner, trustee or employee of any organization which is not shown as a Named Insured on this policy;

F.  Any **claim** based upon or arising out of, directly or indirectly, in whole or in part, any piracy or unfair competition, unfair or false advertising, unfair trade practice or unfair business practice; or any misappropriation, infringement, or use of a copyright, title, slogan, patent, trademark, trade name, trade dress, service mark, domain name, trade secret or any other violation of an **intellectual property** right or law;

G.  Any **claim** based upon or arising out of, directly or indirectly, in whole or in part, "bodily injury", "property damage", or "personal and advertising injury";

H.   Any **claim** based upon or arising out of, in whole or in part, directly or indirectly, liability you assume under any contract or agreement; however, this exclusion does not apply to liability you would have in the absence of such contract or agreement;

I.   Any **claim** against an Insured that is brought by or on behalf of any federal, state or local government agency or professional or trade licensing organization; however, this exclusion shall not apply where the **claim** alleges a **professional incident**;

J.   Any **claim** alleging, in whole or in part, directly or indirectly, an Insured exceeded a contract price, cost guarantee or cost estimate;

K.   Any **claim** based upon or arising out of, in whole or in part, directly or indirectly, express warranties or guarantees;

L.   Any **claim** based upon or arising out of, in whole or in part, directly or indirectly, fee disputes;

M.   Any **claim** based upon or arising out of, in whole or in part, directly or indirectly, the deficiency or malfunction of any product, any process or technique that is not described in the definition of **professional services** or any product or equipment which is sold, manufactured or furnished by or on behalf of the Insured;

N.   Any **claim** based upon or arising out of, directly or indirectly, any **claim** or circumstance that is reported to any other insurer by any Insured prior to the effective date of this coverage;

O.   Any **professional incident**, condition, circumstance or event that is or was known to any insured prior to the earliest of the beginning of the policy period shown in the Declarations of this policy or the effective date of this coverage, whichever is later;

P.   Any **claim** based upon or arising out of, directly or indirectly, any refusal to employ, termination of employment, or coercion, demotion, discipline, evaluation, reassignment or other employment-related act, omission, policy or practice.  This exclusion applies whether you are held liable as an employer or in any other capacity;

Q.   To "bodily injury", "property damage", "personal and advertising injury" or **professional incident** arising out of:

   1.   The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or

   2.   The rendering or failure to render:

      a.   Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction, or the related furnishing of food or beverages; or

      b.   Any therapeutic service, treatment, advice or instruction;

R.   Any **claim** based upon or arising out of, in whole or in part, directly or indirectly, the failure of goods, products or services to conform with any statement of quality or performance made in any **advertisement**.

S.   Any **claim** based upon or arising in whole or in part out of the actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release or escape of any solid, liquid gaseous or thermal irritant or contaminant including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste (hereinafter referred to as hazardous substances). Waste includes materials to be recycled, reconditioned or reclaimed.

   It is further agreed this insurance does not apply to any **claim**, loss, cost or expense arising in whole or in part out of any:

   1.   Clean up or removal of hazardous substances; or

   2.   Such actions as may be necessary to monitor, assess and/or evaluate the presence, discharge, dispersal, seepage, migration, release, escape, or threat of same, of hazardous substances; or

   3.   Disposal of hazardous substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result; or

   4.   Government direction, action, order, demand, requirement or request that any insured test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of, hazardous substances.

**COVERAGE D - IV.** LIMITS OF INSURANCE AND DEDUCTIBLE

For the purposes of this coverage, the LIMITS OF INSURANCE section of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM is amended to include the Limits of Insurance shown in the ADDITIONAL DECLARATIONS SCHEDULE above for this COVERAGE D.

A.   The Limits of Insurance shown in the ADDITIONAL DECLARATIONS SCHEDULE above are the maximum we will pay regardless of the number of Insureds, individuals or organizations that make a **claim**, or the number of **claims** made.

B.   Limit of Insurance – Aggregate Limit

The Aggregate Limit shown in the ADDITIONAL DECLARATIONS SCHEDULE above, is the maximum amount we will pay for all **claim expenses** and **damages** for all **claims** covered hereunder.  Payments from this Aggregate Limit reduce the General Aggregate Limit shown in the policy Declarations.

C.   Limit of Insurance – Each **Claim** Limit

The Limit of Insurance – Each **Claim** Limit shown in the ADDITIONAL DECLARATIONS SCHEDULE above, is the maximum amount we will pay for **claim expenses** and **damages** attributable to any one **claim** covered hereunder.  Payments from this Each **Claim** Limit reduce the Each Occurrence Limit shown in the policy Declarations.

D.   Our duty to defend will end when our Limits of Insurance have been exhausted by payment of **claim expenses** and **damages** in any combination or have been tendered to a court of competent jurisdiction.

E.   Deductible

The deductible amount stated in the ADDITIONAL DECLARATIONS SCHEDULE above applies to each **claim** and shall be paid by the Named Insured.  The deductible applies to **claim expenses** and **damages** and reduces the Limits of Insurance stated in the ADDITIONAL DECLARATIONS SCHEDULE above.  We may advance payment of part or all of the deductible amount and upon notification of such payment being made, the Insured must promptly reimburse the Company for the deductible amounts advanced by us.

**COVERAGE D - V.** EXTENDED REPORTING PERIODS

For the purposes of this coverage, the following is added to the EXTENDED REPORTING PERIODS amendment that is made part of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM:

The Basic and Supplemental Extended Reporting Periods applicable to "bodily injury" and "property damage" also apply to:

COVERAGE D - PROFESSIONAL LIABILITY

# HEALTH, NUTRITION & LIFESTYLE
## CYBER / DATA BREACH COVERAGE
### CLAIMS-MADE COVERAGE

#### ADDITIONAL DECLARATIONS SCHEDULE

| Limits Of Insurance | |
|---|---|
| Each Claim or Privacy Breach Event Limit - Including Claims Expenses (Payments from this limit reduce the Each Occurrence Limit shown in the Declarations) | $  250,000 |
| Aggregate Limit for All Claims and Privacy Breach Events - Including Claims Expenses (Payments from this limit reduce the General Aggregate Limit shown in the Declarations) | $  250,000 |
| **Deductible** | |
| Applicable to Each Claim or Privacy Breach Event | $  2,500 |
| **Named Insured's Business** | |
| This coverage applies to the technology network security and privacy operations of the Named Insured which are usual and necessary for the conduct of the Named Insured's health nutrition & lifestyle business as described in the Business Description shown in the Declarations of this policy. | |
| **Retroactive Date** | |
| Retroactive Date applicable to this coverage:  11/12/2019 | |

THIS IS A **CLAIMS**-MADE COVERAGE.  PLEASE READ THIS POLICY AND THIS COVERAGE CAREFULLY. OUR LIMIT OF INSURANCE AVAILABLE WILL BE REDUCED BY THE AMOUNTS PAID FOR **DAMAGES, PRIVACY BREACH EXPENSES** AND **CLAIM EXPENSES.**

In consideration of the premium paid, in reliance upon the statements in the Application(s) and subject to the terms and conditions of this coverage and the policy to which it is attached, the Company agrees with the Named Insured as follows:

Words in **bold** are defined terms within **COVERAGE E - SECTION VI - DEFINITIONS**.  Throughout this coverage, the words you and your refer to the Insured.  The words we, us and our refer to Admiral Insurance Company (the Company). The word Policy refers to this Policy of insurance.  The word coverage refers to this COVERAGE E.

Each of the COVERAGES under this policy provides for a specific type of coverage and has its own terms and conditions as set forth in each COVERAGE.  The terms and conditions set forth in the COMMERCIAL GENERAL LIABILITY COVERAGE FORM apply to all COVERAGES of this policy unless stated otherwise.

Only one COVERAGE and its applicable Limits of Insurance shall apply to a given **Claim** or "suit" arising out of the same "occurrence" or **Wrongful Act,** or series of continuous, related or repeated "occurrences" or **Wrongful Acts.**

If more than one COVERAGE is alleged to apply to a **Claim** or "suit" arising out of the same "occurrence" or **Wrongful Act,** or series of continuous, related or repeated "occurrences" or **Wrongful Acts,** we shall have the right to designate which COVERAGE is applicable based on our determination of the predominant issues presented, considering the allegations, facts and circumstances of the **Claim,** and we will pay no more than the highest applicable Limit of Insurance available under the COVERAGE that we designate.

**Claim Expenses** and Supplementary Payments will be treated as provided for in the COVERAGE designated as applicable to the **Claim** or "suit".  If COVERAGE E is designated as applicable to a **Claim** or "suit", we will not pay more in **Claim Expenses** or Supplementary Payments than the highest Limit of Insurance available for the COVERAGE we designate.

#### COVERAGE E – CYBER / DATA BREACH COVERAGE

#### COVERAGE E - SECTION I - INSURING AGREEMENT

For the purposes of this coverage, the following is added to the COVERAGES section of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM:

A.  Third Party Liability Coverage

We will pay on behalf of the Insured those amounts which the Insured is legally obligated to pay as **Damages** plus **Claim Expenses** in excess of the Deductible directly resulting from:

1.  **Network Security Wrongful Acts;** or

2.  **Privacy Wrongful Acts;**

Provided that: (a) the subject **Wrongful Act** took place within the Coverage Territory described in Paragraph **C.** of **COVERAGE E** - SECTION IV – ADDITIONAL CONDITIONS; and (b) such **Wrongful Act** was committed on or after the Retroactive Date shown in the ADDITIONAL DECLARATIONS SCHEDULE and prior to the expiration or termination date of this Policy; and (c) the resulting **Claim** is first made during the Policy Period or any applicable extended reporting period.

B.  First Party Privacy Coverage

We will pay on behalf of the Insured those **Privacy Breach Expenses** in excess of the Deductible directly resulting from a **Privacy Breach Event**, provided that the **Privacy Breach Event**: (a) takes place within the Coverage Territory described in Paragraph **C.** of **COVERAGE E** - SECTION IV – ADDITIONAL CONDITIONS; and (b) first occurs on or after the Retroactive Date and prior to the expiration or termination date of this Policy; and (c) is first discovered during the Policy Period; and (d) is reported to us immediately but in no event longer than the minimum time period required by any applicable **Privacy Law**.

C.  The Company's Rights and Duties

1.  We have the right and duty to defend and pay on behalf of the Insured any **Claim Expenses** directly resulting from any covered **Claim** to which this **COVERAGE E** applies and will do so even if the allegations of the **Claim** are groundless, false or fraudulent. We have the right to investigate and settle any **Claim** as we deem expedient. Our duty ends when we have used up the applicable Limits of Insurance in the payment of **Damages** or **Claim Expenses** or both, or when we have deposited the remaining applicable Limits of Insurance with a court of competent jurisdiction. We have no obligation or duty to defend any **Claim** for which coverage is excluded or not otherwise provided by this **COVERAGE E**. We are not obligated to pay any **Claim Expenses** incurred by the Insured in the defense of any **Claim** for which coverage is excluded or not otherwise provided by this **COVERAGE E**.

2.  We have the right and duty to pay on behalf of the Insured any **Privacy Breach Expenses** to which this insurance applies directly resulting from a covered **Privacy Breach Event**. Our duty ends when we have used up the applicable Limits of Insurance in the payment of **Privacy Breach Expenses** or have deposited the remaining applicable Limits of Insurance with a court of competent jurisdiction. We have no obligation or duty to respond to or cover any **Privacy Breach Expenses** directly relating to, in connection with or arising from a **Privacy Breach Event** for which coverage is excluded or not otherwise provided by this **COVERAGE E**. We are not obligated to pay any **Privacy Breach Expenses** incurred by the Insured prior to the Insured's reporting the **Privacy Breach Event** to us, or which is excluded or otherwise not covered by this **COVERAGE E.**.

3.  We have the right to investigate, direct the defense, negotiate and settle any **Claim**, as we deem appropriate.

**COVERAGE E - SECTION II - EXCLUSIONS**

For the purposes of this coverage, the following is added to the EXCLUSIONS section of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM:

We shall not be liable to pay, indemnify or reimburse **Damages**, **Privacy Breach Expenses** or **Claim Expenses** and are not obligated to defend the Insured with respect to any **Claim** or **Privacy Breach Event** based on, resulting from, arising out of, in consequence of, or in any way connected with or involving, directly or indirectly, any of the following:

A.  Any actual or alleged dishonest, fraudulent, criminal or malicious act, error or omission by any Insured.

B.  Any Insured's actual or alleged intentional or knowing **Unauthorized Access or Unauthorized Use**, tampering with, denial of service attack, or otherwise limiting or preventing the use of any Insured's or any third party's computer system or network.

C.  Any actual or alleged gaining in fact of any profit or advantage to which any Insured is not legally entitled.

D.  Any actual or alleged "bodily injury", "property damage" or "personal and advertising injury", provided however that this exclusion shall not apply to a **Claim** for mental injury, mental anguish, or emotional distress directly caused by a **Privacy Wrongful Act**.

E.  Any actual or alleged direct creation of **Malicious Code**.

F.   Any **Claim** attributable to any actual electrical or mechanical failures, including power interruption, surge, brownout or blackout, or defect of telephone, telecommunications, or data transmission lines, services, equipment or infrastructure.

G.   The unsolicited dissemination of any communication to actual or prospective customers of any Insured or any third party including, but not limited to, actions brought under the Telecommunications Act, the CAN-SPAM Act, or any other federal, state or local legislation, regulation or law protecting a person's or entity's right of seclusion or privacy.

H.   Any actual or alleged gambling, contest, promotion sweepstakes, lottery or other game of chance including, but not limited to, the redemption or over-redemption thereof.

I.   Any seizure, nationalization, confiscation, destruction, deletion or other malicious or harmful conduct, action or inaction by or on behalf of or in the name or right of any local, state, federal, or foreign administrative, governmental, quasi-governmental, regulatory or governmentally approved agency, tribunal, body, person or similar or equivalent entity of any Protected Information or computer, hardware, software or electronic system held or used by any Insured.

J.   Any actual or alleged breach of contract, agreement, understanding, privacy policy, warranty or other guarantee or promise; however, with respect to breach of contract only, this exclusion shall not apply to any liability that would have attached to any Insured in the absence of such contract.

K.   The defense, indemnification, reimbursement or other protection of others or any other liability or obligation assumed by any Insured under any contract, agreement, understanding, privacy policy, warranty or other guarantee or promise; however, this exclusion shall not apply to:

   1.   Liability that would have attached to the Insured in the absence of any such contract, agreement, understanding, privacy policy, warranty or other guarantee or promise; or

   2.   With respect to a **Privacy Wrongful Act** only, the Insured's defense, indemnification, reimbursement or other protection of a third party pursuant to a confidentiality or non-disclosure agreement.

L.   Any actual or alleged **Wrongful Act, Privacy Breach Event, Related Event, Related Claim**, fact, circumstance, subject, decision, transaction, event, situation or cause which has been reported, noticed or identified to any other insurance carrier under any policy, application or other actual or proposed contract, agreement, understanding, or other guarantee or promise.

M.   Any **Wrongful Act, Privacy Breach Event, Related Event, Related Claim**, fact, circumstance, subject, decision, transaction, event, situation or cause of which the person signing the Application for this Policy or any Insured's current, former or future director, Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, Chief Technology Officer, Chief Privacy Officer, President, In-house General Counsel, partner, principal, Risk Manager, or equivalent position was aware prior to the Effective Date of this Policy or any other policy issued by us if such **Wrongful Act, Privacy Breach Event, Related Event, Related Claim**, fact, circumstance, subject, decision, transaction, event, situation or cause could reasonably have been expected to give rise to a **Claim** or a **Privacy Breach Event.**

N.   Any actual or alleged **Wrongful Act, Privacy Breach Event, Related Event or Related Claim** committed or which took place in whole or in part before the Retroactive Date of this coverage, as set forth in the ADDITIONAL DECLARATIONS SCHEDULE.

O.   Any prior or pending litigation, **Claim, Privacy Breach Event, Related Event, Related Claim**, fact, circumstance, subject, decision, transaction, event, situation, cause, proceeding or investigation made, presented, transmitted, filed or commenced on or before the Effective Date of this Policy, or alleging or derived from the same litigation, **Claim, Privacy Breach Event, Related Event, Related Claim**, fact, circumstance, subject, decision, transaction, event, situation, cause, proceeding or investigation underlying or alleged therein.

P.   Any actual or alleged discrimination of any kind including, but not limited to, race, creed, religion, ethnic background, national origin, age, handicap, sex, sexual orientation, marital status or financial condition.

Q.   Any actual or alleged wrongful employment practice including, but not limited to, any refusal to employ, termination of employment, employment policies or procedures, coercion, demotion, evaluation, retaliation, reassignment, discipline, defamation, harassment, humiliation, failure to promote, wrongful disciplinary action, deprivation of career opportunity, inadequate work place, whistle-blowing, and labor disputes for any reason.

R.   Any actual or alleged antitrust, restraint of trade, unfair, false or deceptive trade practice, or violation of any federal, state, local or foreign legislation, regulation or law involving or prohibiting any antitrust activity, price fixing, price

discrimination, monopoly or monopolization, predatory pricing, unfair competition, collusion, conspiracy or unfair, false, misleading or deceptive trade or business practice, advertising or promotion.

**S.** Any actual or alleged false, misleading, deceptive or fraudulent statement or representation advertising or promoting the products, services or business of any Insured.

**T.** Any actual or alleged violation of any federal, state, local or foreign securities-related legislation, regulation or law.

**U.** Any actual or alleged patent infringement or theft, copying, misappropriation, display or publication of any patent, process, style of doing business, idea, confidential or proprietary information, trade secret or other similar information or **intellectual property** interest, copyright, title, slogan, trademark, trade name, trade dress, service mark or service name.

**V.** Any costs or expenses incurred by any Insured or others to inspect, investigate, withdraw, alter, recall, reprocess, restore, replace, retract, amend, reprint, reproduce, remediate, correct, enhance, upgrade or otherwise modify any product, service, business or media of or for any Insured, or any part of any such product, service or media.

**W.** Any **Claim** against any Insured that is brought by or on behalf of:

    **1.** Any Insured; however, this exclusion shall not apply to an otherwise covered **Claim** by an **Employee** alleging a **Privacy Wrongful Act;**

    **2.** Any entity which is owned or controlled by, or is under common ownership or control with, any Insured;

    **3.** Any person or entity which owns or controls any entity included within the definition of Insured;

    **4.** Any entity of which any Insured is a director, officer, partner or principal shareholder; or

    **5.** Any independent contractor of any Insured.

**X.** Any **Claim** against any Insured that is brought by or on behalf of any federal, state, local or foreign administrative, governmental, or regulatory agency, tribunal, body or similar or equivalent entity; however, this exclusion shall not apply to a **Claim** brought by any of these entities if such entity is also a client and the **Claim** arises from actual or alleged **Wrongful Acts** arising out of the parties' business relationship.

**Y.** Any actual or alleged unlawful or unauthorized or undisclosed obtaining, gathering, collecting, acquiring, using, distribution or sale of any information of any type, nature or kind including, but not limited to, **Protected Information**.

**Z.** Any **Claim**, **Privacy Breach Event** or other transaction or matter which is uninsurable under any act, statute, rule, regulation, ordinance, common law, or other law of the United States of America concerning trade or economic sanctions or export control laws are not covered under this Policy.

## COVERAGE E - SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE

For the purposes of this coverage, the LIMITS OF INSURANCE section of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM is amended to include the Limits of Insurance shown in the ADDITIONAL DECLARATIONS SCHEDULE of this coverage.

**A.** The Each Claim or Privacy Breach Event Limit shown in the ADDITIONAL DECLARATIONS SCHEDULE is the maximum amount we will pay for all **Damages**, **Claim Expenses** and **Privacy Breach Expenses** from each **Claim** and **Related Claims** or **Privacy Breach Expenses** from each **Privacy Breach Event** and **Related Events** in any combination under this Policy. Payments from this Each Claim or Privacy Breach Event Limit of Insurance reduce the Each Occurrence Limit shown in the policy Declarations.

**B.** The Aggregate Limit shown in the ADDITIONAL DECLARATIONS SCHEDULE is the maximum amount we will pay for all **Damages**, **Claim Expenses** and **Privacy Breach Expenses** from all **Claims** and all **Privacy Breach Events**, and all **Related Claims** and all **Related Events** covered under this Coverage. Payments from this Aggregate Limit for All Claims and Privacy Breach Events reduce the General Aggregate Limit shown in the policy Declarations.

**C.** Applicable rules to the **LIMITS OF INSURANCE:**

    **1.** The Each Claim or Privacy Breach Event Limit shown in the ADDITIONAL DECLARATIONS SCHEDULE of this coverage and the rules below fix the most we will pay regardless of the number of:

        **a.** Insureds;

        **b.** **Claims** made or "suits" brought;

        **c.** Persons or organizations making **Claims** or bringing "suits"; or

        **d.** **Wrongful Acts** or **Privacy Breach Events**.

2. Our duty to defend will end when our Limits of Insurance have been exhausted by payment of **Damages, Claim Expenses** or **Privacy Breach Expenses** in any combination, or when our remaining applicable Limits of Insurance have been tendered to a court of competent jurisdiction.

3. Notwithstanding any other provision of this Policy, the purchase of an Extended Reporting Period shall not under any circumstances increase or reinstate the Limits of Insurance unless such increase or reinstatement is specifically provided for by written amendment to this Policy.

4. The Limits of Insurance of this Coverage apply separately to each consecutive annual period and to any remaining period of less than twelve months, starting with the beginning of the Policy Period shown in the Declarations, unless the Policy Period is extended after issuance for an additional period of less than twelve months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

### D. DEDUCTIBLE

1. For any **Claim** made, we shall be liable for only the amount of the **Claim**, including **Claim Expenses** and **Damages**, that exceeds the Deductible amount specified in the ADDITIONAL DECLARATIONS SCHEDULE. We have no obligation, either to the Insured or to any person or entity, to pay all or any portion of any Deductible amount for or on behalf of any Insured.

   A single Deductible amount applies to **Claims** made alleging multiple **Wrongful Acts,** or a series of continuous, repeated, same, related or substantially similar **Wrongful Acts**.

2. For any **Privacy Breach Event** covered by this COVERAGE E, we shall be liable for only the amount of the **Privacy Breach Expenses** that exceeds the Deductible amount. We have no obligation, either to the Insured or to any person or entity, to pay all or any portion of any Deductible amount on behalf of any Insured.

## COVERAGE E - SECTION IV - ADDITIONAL CONDITIONS

For the purposes of this endorsement, the CONDITIONS section of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM is amended to include the following ADDITIONAL CONDITIONS:

### A. Related Claims and Related Events

1. All **Related Claims**, whenever made, shall be deemed to be a single **Claim,** regardless of:

   a. The number of **Related Claims**;

   b. The number or identity of claimants;

   c. The number or identity of Insureds involved or against whom **Related Claims** have been or could have been made;

   d. Whether the **Related Claims** are asserted in a class action or otherwise; or

   e. The number and timing of the **Related Claims**, even if the **Related Claims** comprising such single **Claim** were made in more than one Policy Period.

   All **Related Claims** shall be treated as a single **Claim** made when the earliest of such **Related Claims** was first made, or when the earliest of such **Related Claims** is treated as having been made, whichever is the earlier date.

2. All **Related Events**, whenever occurring, shall be deemed to be a single **Privacy Breach Event**, regardless of:

   a. The number of **Related Events**;

   b. The number or identity of Insureds involved; or

   c. The number and timing of the **Related Events**, even if the **Related Events** comprising such single **Privacy Breach Event** occurred in more than one Policy Period.

   All **Related Events** shall be treated as a single **Privacy Breach Event** occurring when the earliest of such **Related Events** first occurred.

### B. Application

The statements and particulars contained in the Application and any and all attachments constitute the representations of all Insureds and are material. This coverage is issued and continued in force by the Company in reliance upon the truth, accuracy and completeness of such representations.

C. Coverage Territory for Purposes of this coverage Only

This coverage applies to **Wrongful Acts** and **Privacy Breach Events** taking place anywhere in the world (except Countries or States against which the United States has implemented trade or diplomatic sanctions), provided the Insured's responsibility to pay **Damages** is determined in a "suit" on the merits in the United States of America (including its territories and possessions) or Puerto Rico, or in a settlement we agree to.

D. Privacy Breach Event Reporting for First Party Privacy Coverage

The Insured shall report a **Privacy Breach Event** for which coverage is being sought under this COVERAGE E immediately, but in no event longer than the minimum time period required by any applicable **Privacy Law**. Such reporting must include full particulars of the Insureds involved, the time, date, location and description of the specific **Privacy Breach Event**, and the circumstances by which the Insured first became aware of the **Privacy Breach Event**.

## COVERAGE E - SECTION V - EXTENDED REPORTING PERIODS

For the purposes of this coverage, the following is added to the EXTENDED REPORTING PERIODS amendment that is made part of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM:

The Basic and Supplemental Extended Reporting Periods applicable to "bodily injury" and "property damage" also apply to:

### COVERAGE E – CYBER / DATA BREACH COVERAGE

## COVERAGE E - SECTION VI - DEFINITIONS

For the purposes of this coverage, the DEFINITIONS section of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM is included in and made part of this coverage. Defined terms may be shown in **bold** or in "quotation marks". The style of identifying a defined term will not change its meaning or applicability.

Any definition or definitions shown below which differ from the DEFINITIONS section of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM shall apply for purposes of this coverage only.

A. **Claim** means a written demand or assertion of a legal right for money or services made against any Insured.

B. **Claim Expenses** means:

1. Reasonable and necessary legal fees, costs and expenses directly resulting from the investigation, adjustment, settlement and/or defense of a **Claim**;

2. Reasonable and necessary expenses charged by a vendor designated or approved in writing by us to investigate the **Unauthorized Access or Unauthorized Use** of the computer system or network in the Insured's possession from which **Protected Information** has been accessed in order to determine the manner in which such information was accessed. Such costs do not include: (a) salaries, wages, fees, remuneration, overhead, benefits or expenses of our employees or an Insured's **Employees** or officials; or (b) costs or expenses incurred to prevent future or subsequent **Unauthorized Access or Unauthorized Use** of the computer system or network in the Insured's possession;

3. All interest on the full amount of any covered judgment that accrues after entry of the judgment and before we have paid, offered to pay, or have deposited into a court of competent jurisdiction that part of the judgment which is within the remaining applicable Limits of Insurance; and

4. The premiums for appeal, attachment or similar bonds, but only for bond amounts within the applicable Limits of Insurance. We do not have to furnish these bonds.

**Claim Expenses** does not include:

1. Salaries, wages, fees, remuneration, overhead, benefits or expenses of an Insured's **Employees** or officials;

2. **Damages**, fines, penalties, fees, or taxes levied or assessed against an Insured;

3. Fees, costs, or expenses which are:

   a. Incurred by the Insured prior to the time that a **Claim** is made; or

   b. Paid or incurred without our prior written consent;

   These unilaterally incurred fees, costs or expenses will not be reimbursed by us and will not reduce the Deductible;

4. Costs incurred or to be incurred by or on behalf of an Insured in connection with the inspection, investigation, withdrawal, alteration, recall, reprocessing, restoration, replacement, retraction, amendment, reprinting,

reproduction, remediation, correction, enhancement, upgrading or other modification of audio, visual, digital or informational material;

5.   Costs of inspecting, investigating, correcting, performing, re-performing, modifying or improving the Insured's **Network Security and Privacy Operations**, whether by the Insured or another person or entity, when the Insured had the opportunity to inspect, investigate, correct, perform, re-perform, modify or improve on the conduct or operation or activity that gave rise to the **Claim**;

6.   Costs and expenses required to comply with any injunctive or other non-monetary equitable, declaratory, regulatory or administrative relief, including specific performance, or any agreement to provide such relief;

7.   Any **Privacy Breach Expenses**; or

8.   Costs to implement, upgrade or maintain any security measures of the computer system or network in the Insured's possession.

C.   **Damages** means any monetary amount which the Insured becomes legally obligated to pay as the direct result of a covered **Claim**, including judgments, awards, damages, settlements to which we have consented in writing, prejudgment and post-judgment interest awarded which directly arise from and correspond to the portion of any judgment attributable to a covered **Claim**.

**Damages** does not include:

1.   Any amount for which the Insured is not liable or legally obligated to pay;

2.   Punitive damages, exemplary damages, liquidated damages, taxes, fines or penalties;

3.   Multiples of any compensatory damages, taxes, fines, penalties or liquidated damages;

4.   Matters uninsurable under any law applicable to this Policy;

5.   Past, present and future earned and unearned royalties, profits, fees, costs, expenses, commissions, and profits unlawfully or unjustly held or obtained, including the return, offset, disgorgement or restitution of such royalties, profits, fees, costs, expenses, commissions, and profits unlawfully or unjustly held or obtained;

6.   Costs incurred or to be incurred by or on behalf of an Insured in connection with the inspection, investigation, withdrawal, alteration, recall, reprocessing, restoration, replacement, retraction, amendment, reprinting, reproduction, remediation, correction, enhancement, upgrading or other modification of audio, visual, digital or informational material;

7.   Costs of inspecting, investigating, correcting, performing, re-performing, modifying or improving the Insured's **Network Security and Privacy Operations**, whether by the Insured or another person or entity, when the Insured had the opportunity to inspect, investigate, correct, perform, re-perform, modify or improve on the conduct or operation or activity that gave rise to the **Claim**;

8.   Costs and expenses required to comply with any injunctive or other non-monetary equitable, declaratory, regulatory or administrative relief, including specific performance, or any agreement to provide such relief;

9.   Discounts, prizes, awards, coupons or other incentives offered to the Insured's clients or customers;

10.  Any **Privacy Breach Expenses**; or

11.  Costs to implement, upgrade or maintain any security measures of the computer system or network in the Insured's possession.

D.   **Employee** includes a "leased worker", but not a "temporary worker", "volunteer worker" or independent contractor. An **Employee's** status as an Insured will be determined as of the date of the **Wrongful Act** upon which a **Claim** involving the **Employee** is based.

E.   **Intellectual Property** means property that is created through the intellectual efforts of its creator which is claimed to be protected by law.

F.   **Malicious Code** means an unauthorized, unwanted or harmful program, code or script, including, but not limited to, viruses, Trojan horses, worms, time or logic bombs, spyware, malware, spider ware or other infections or contaminants.

G.   **Network Security and Privacy Operations** means the business activities described in the ADDITIONAL DECLARATIONS SCHEDULE of this coverage.

H.   **Network Security Wrongful Act** means the Insured's unintentional and unknowing failure to prevent an **Unauthorized Access or Unauthorized Use** of the computer system or network in the Insured's possession that directly results in:

   1. The inability of an authorized third party user to access the computer system or network in the Insured's possession;

   2. The inability of an authorized third party user to access its computer system or network;

   3. The failure or corruption of a third party's computer system or network;

   4. The transmittal or distribution of **Malicious Code** by the Insured to a third party's computer system or network; or

   5. The perpetuation of a denial of service attack on a third party's computer system or network.

I. **Other Insurance** includes, but is not limited to, coverage or benefits provided by self-insurance arrangements, pools, self-insurance trusts, captive insurance companies, inter-insurance exchanges, mutual insurance companies, stock insurance companies, risk retention groups, reciprocal exchanges, mutual benefit or assistance programs, or any other plan or agreement of risk assumption.

J. **Privacy Breach Event** means the theft or unintentional and unauthorized disclosure of **Protected Information** directly resulting from the Insured's unintentional and unknowing failure to safeguard such **Protected Information**, but only to the extent such **Protected Information** was legally and permissibly in the Insured's possession at the time such **Privacy Breach Event** occurred.

K. **Privacy Breach Expenses** mean the following reasonable and necessary expenses incurred by or for the Insured which are required to comply with applicable **Privacy Laws** or to minimize **Damages** otherwise covered under this coverage:

   1. Notification Expense

   Reasonable and necessary expenses charged by a vendor designated or approved in writing by us to comply with a **Privacy Law** which requires the Insured to notify a **Protected Person** of an **Unauthorized Access or Unauthorized Use** of the **Protected Person's Protected Information**;

   2. Credit Monitoring Expense

   Reasonable and necessary expenses charged by a vendor designated or approved in writing by us to provide credit monitoring services to a **Protected Person**, to the extent required by **Privacy Law** or to minimize any **Damages** otherwise covered under this coverage;

   3. Cyber Investigation Expense

   Reasonable and necessary expenses charged by a vendor designated or approved in writing by us to investigate the **Unauthorized Access or Unauthorized Use** of the computer system or network in the Insured's possession from which **Protected Information** has been accessed in order to determine whether the Insured has an obligation to provide notice under **Privacy Law**. Such costs do not include: (a) salaries, wages, fees, remuneration, overhead, benefits or expenses of our employees or an Insured's **Employees** or officials; or (b) costs or expenses incurred to prevent future or subsequent **Unauthorized Access or Unauthorized Use** of the computer system or network in the Insured's possession following the first **Privacy Breach Event**.

   **Cyber Investigation Expense** does not mean the costs or expenses charged or incurred to restore, replace, remediate, repair, correct, enhance, upgrade or otherwise modify, improve or make changes to the computer system, network or other hardware or software in the Insured's possession following or as a result of an actual or attempted **Unauthorized Access or Unauthorized Use**.

L. **Privacy Law** means the following laws, to the extent they apply to persons and organizations who lawfully and permissibly obtain or possess a **Protected Person's Protected Information**:

   1. Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191);

   2. Gramm-Leach-Bliley Act of 1999;

   3. California Security Breach Notification Act (CA SB 1386); and

   4. Other similar or equivalent United States or Canadian federal, state or provincial privacy protection legislation that requires organizations that lawfully and permissibly obtain or possess **Protected Information** to post privacy policies, adopt specific privacy or security controls, or notify individuals in the event that **Protected Information** has potentially been unlawfully accessed.

M. **Privacy Wrongful Act** means any of the following actual or alleged unintentional and unknowing conduct resulting from the Insured's unintentional and unknowing failure to safeguard **Protected Information**, but only if such **Protected Information** was legally and permissibly in the Insured's possession at the time such **Privacy Wrongful**

**Act** occurred and such failure directly related to, was in connection with or arose from the Insured's **Network Security and Privacy Operations**:

1. The Insured's violation of a **Privacy Law**; or

2. The Insured's invasion or infringement of an individual's right to privacy or publicity.

N. **Protected Information** means an individual's name, social security number, medical or healthcare data, other protected health information, driver's license number, state identification number, credit card number, debit card number, address, telephone number, account number, account histories, passwords, or other nonpublic personal information as defined in **Privacy Law**. **Protected Information** does not include records that are lawfully available to the general public for any reason including, but not limited to, information from federal, state or local government records.

O. **Protected Person** means a person whose **Protected Information** is protected from unauthorized disclosure or access by a **Privacy Law**.

P. **Related Events** means **Privacy Breach Events** based upon, arising from, in consequence of, directly or indirectly resulting from, or involving in any way continuous, repeated, the same, related, or substantially similar facts, circumstances, subjects, situations, decisions, cause, persons, transactions, event, class of persons or events, or continuous, repeated, the same, related, or a substantially similar series of facts, circumstances, subjects, situations, decisions, persons, transactions, class of persons or events.

Q. **Related Claims** means **Claims** based upon, arising from, in consequence of, directly or indirectly resulting from, or involving in any way continuous, repeated, the same, related, or substantially similar facts, circumstances, subjects, situations, decisions, cause, persons, transactions, events, class of persons or events, or continuous, repeated, the same, related, or a substantially similar series of facts, circumstances, subjects, situations, decisions, persons, transactions, class of persons or events.

R. **Unauthorized Access or Unauthorized Use** means access to or the use of a computer system and network in the Insured's possession by a person or organization that is not authorized to do so, or the access to or use of a computer system and network in the Insured's possession by an authorized person in an unauthorized manner.

S. **Wrongful Act** means a **Network Security Wrongful Act** or a **Privacy Wrongful Act.**

# LIMITED PROPOSITION 65
# CIVIL PENALTIES REIMBURSEMENT COVERAGE

### ADDITIONAL DECLARATIONS SCHEDULE

| Limits Of Insurance | | |
|---|---|---|
| Each Proposition 65 Offense Limit<br>(Payments from this limit reduce the Personal and Advertising Injury Limit shown in the Declarations) | $ | 100,000 |
| Aggregate Limit for All Proposition 65 Offenses<br>(Payments from this limit reduce the General Aggregate Limit shown in the Declarations) | $ | 100,000 |
| | | |
| **Deductible** | | |
| Applicable to Civil Penalties for Each Proposition 65 Offense<br>(Payments by the insured or any other source (such as other insurance)  for the cost or expense of defending any claim, "suit" or action pursuant to "Proposition 65" will not satisfy this Deductible) | $ | 10,000 |
| **Retroactive Date** | | |
| Retroactive Date applicable to LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT COVERAGE:<br>11/12/2019 | | |

**THIS COVERAGE ONLY PROVIDES COVERAGE FOR REIMBURSEMENT TO YOU FOR CIVIL PENALTIES PAID BY YOU BECAUSE OF A "designated personal and advertising injury offense" THAT RESULTS IN COVERED CIVIL PENALTIES.**

**THIS COVERAGE DOES NOT PROVIDE ANY LIABILITY COVERAGE, OR COVERAGE FOR THE COST OR EXPENSE OF DEFENDING ANY CLAIM, SUIT OR ACTION PURSUANT TO "PROPOSITION 65".  WE WILL HAVE NO DUTY TO DEFEND ANY INSURED AGAINST ANY CLAIM MADE OR "SUIT" BROUGHT AGAINST ANY INSURED UNDER THIS ENDORSEMENT.**

**EXCEPT WITH RESPECT TO CIVIL PENALTIES, THIS ENDORSEMENT DOES NOT PROVIDE ANY COVERAGE FOR COSTS, EXPENSES OR DAMAGES INCURRED BY ANY INSURED TO CORRECT, RECTIFY OR OTHERWISE RESPOND TO ANY VIOLATION OF "PROPOSITION 65", OR TO COMPLY WITH ANY ACTION PURSUANT TO "PROPOSITION 65" OR ADMINISTRATIVE ORDER OR EQUITABLE RELIEF.**

Except to the extent coverage is afforded under **LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT COVERAGE** below, this coverage does not apply to "bodily injury", "property damage", "personal and advertising injury", **professional liability** or damages of any kind, including costs, expenses, fines or penalties, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with past, present or future claims or "suits" arising in whole or in part, either directly or indirectly, out of any failure by any Insured or others to comply with any part of California's Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65) and amendments thereto.

The following is added to **SECTION I – COVERAGES:**

**SECTION I - INSURING AGREEMENT - LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT**

**COVERAGE**

a.  We will reimburse you for civil penalties that you become legally obligated to pay because of a "designated personal and advertising injury offense" to which this reimbursement coverage applies.  The amount of such reimbursement is limited as described in SECTION IV – LIMITS OF INSURANCE.

No other obligation or liability to pay sums or perform acts or services is covered.  This coverage does not provide any coverage for costs, expenses or damages incurred by any insured to correct, rectify or otherwise respond to any violation of "Proposition 65", or to comply with any action pursuant to "Proposition 65" or administrative order or equitable relief.  Nothing in this coverage shall be construed to create any duty to defend any insured against claims or "suits" which are subject to or potentially subject to reimbursement pursuant to this coverage.

b. This insurance applies to covered "designated personal and advertising injury offenses", but only if:

   (1) The "designated personal and advertising injury offense" arises out of your business as described in the Business Description shown in the Declarations of this policy;

   (2) The "designated personal and advertising injury offense" was committed in the "coverage territory";

   (3) The "designated personal and advertising injury offense" was not committed in whole or in part before the Retroactive Date shown in the ADDITIONAL DECLARATIONS SCHEDULE or after the end of the policy period; and

   (4) A claim for civil penalties because of the "designated personal and advertising injury offense" is first made against any insured, in accordance with Paragraph c. below, during the policy period or any Extended Reporting Period we provide under SECTION VI – EXTENDED REPORTING PERIODS.

c. A "designated personal and advertising injury offense" is considered committed in whole or in part on the earliest date any insured fails to comply with "California's Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65)" by providing a clear and reasonable warning on "your product" regardless of the number of sales of "your product" or number of exposures of individuals to "your product".

d. A claim made by a person or organization seeking civil penalties will be deemed to have been made at the earlier of the following times:

   (1) When notice of such claim is received by any insured or by us, whichever comes first; or

   (2) When we make settlement in accordance with Paragraph a. above.

All claims by the same person or organization for civil penalties as a result of a "designated personal and advertising injury offense" will be deemed to have been made at the time the first of those claims is made against any insured.

## SECTION II – EXCLUSIONS

All exclusions applying to SECTION I - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY are hereby deleted as respects this LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT COVERAGE only and the following exclusions apply to this LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT COVERAGE.

This coverage does not apply to:

a. Any actual or alleged dishonest, fraudulent, criminal or malicious act, error or omission committed by or on behalf of any insured; or

b. Any actual or alleged "designated personal and advertising injury offense", claim, "suit", action, condition, circumstance, event, or incident that is or was known to any insured prior to the beginning of the policy period shown in the Declarations; or

c. Any:

   (1) Claim or litigation against any Insured occurring prior to, or pending as of the beginning of the policy period, including but not limited to claims, demands, causes of action, notices to correct any warnings or conditions, legal or quasi-legal proceedings, decrees or judgments; or

   (2) Subsequent litigation or claims arising from, or based on substantially the same matters as alleged in the pleadings of such prior or pending litigation.

## SECTION III – WHO IS AN INSURED

All persons and organizations qualifying as an insured under SECTION III - WHO IS AN INSURED of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM are also insureds under LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT COVERAGE.

## SECTION IV - LIMITS OF INSURANCE AND DEDUCTIBLE

For the purposes of this LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT COVERAGE, the LIMITS OF INSURANCE section of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM is amended to include the Limits of Insurance shown in the ADDITIONAL DECLARATIONS SCHEDULE of this LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT COVERAGE.

a. The Each Proposition 65 Offense Limit shown in the ADDITIONAL DECLARATIONS SCHEDULE is the most we will reimburse you for all civil penalties for each claim from a "designated personal and advertising injury offense." Payments under this Each Proposition 65 Offense Limit of Insurance shall reduce the Personal and Advertising Injury Limit shown in the policy Declarations.

b.   The Aggregate Limit for All Proposition 65 Offenses that is shown in the ADDITIONAL DECLARATIONS SCHEDULE is the most we will reimburse you for all civil penalties for all claims from all "designated personal and advertising injury offenses" under this LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT COVERAGE.  This Aggregate Limit for All Proposition 65 Offenses shall reduce the General Aggregate Limit shown in the policy Declarations.

c.   Applicable rules to the **LIMITS OF INSURANCE**:

(1)   The Each Proposition 65 Offense Limit shown in the ADDITIONAL DECLARATIONS SCHEDULE of this LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT COVERAGE and the rules below fix the most we will pay regardless of the number of:

(a)   Insureds;

(b)   Claims made or "suits" or actions brought; or

(c)   Persons or organizations making claims or bringing "suits" or actions.

(2)   The Limits of Insurance of this LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT COVERAGE apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

d.   Applicable rules to the **DEDUCTIBLE**:

(1)   For any claim made, we shall be liable for only the amount of the claim for a covered "designated personal and advertising injury offense" under this LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT COVERAGE that exceeds the Deductible amount specified in the ADDITIONAL DECLARATIONS SCHEDULE. We have no obligation, either to the insured or to any person or entity, to pay all or any portion of any Deductible amount for or on behalf of any insured.

(2)   A single Deductible amount applies to claims alleging multiple "designated personal and advertising injury offenses," or a series of continuous, repeated, same, related or substantially similar "designated personal and advertising injury offenses".

(3)   The Deductible amount shall not be satisfied by the payment by any insured or any other source (including, but not limited to, other insurance) of expenses, costs, damages or defense fees or costs not otherwise covered by this Endorsement.

## SECTION V - ADDITIONAL CONDITIONS

a.   For the purposes of this LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT COVERAGE, the CONDITIONS section of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM also applies to LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT COVERAGE

b.   For the purposes of this LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT COVERAGE, the CONDITIONS section of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM is amended to add the following:

(1)   You must see to it that we are notified as soon as practicable of any actual, suspected or threatened investigation or action by or on behalf of any government that may result in any civil penalties arising from a "designated personal and advertising injury offense".  To the extent possible, notice should include:

(a)   How, when and where the suspected "designated personal and advertising injury offense" was discovered; and

(b)   The names and addresses of any injured persons and witnesses.

(c)   The actions being taken by the insured to address the actual, suspected or threatened investigation or action, if any.

(2)   You and any other involved insured must:

(a)   Immediately send us copies of pertinent information and correspondence received in connection with any civil penalties arising from a "designated personal and advertising injury offense";

(b)   Authorize us to obtain records and other information; and

(c)   Cooperate with us in our investigation of any civil penalties arising from a "designated personal and advertising injury offense".

   c.  For the purposes of this LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT COVERAGE, the CONDITIONS section of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM is amended to add the following:

      (1)  We will not provide coverage under SECTION I of this LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT COVERAGE to you, or any other insured, who at any time:

          (a)  Engaged in fraudulent conduct; or

          (b)  Intentionally concealed or misrepresented a material fact concerning a covered "designated personal and advertising injury offense" or civil penalties incurred by you.

## SECTION VI - EXTENDED REPORTING PERIODS

For the purposes of this LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT COVERAGE, the following is added to the EXTENDED REPORTING PERIODS section and any related endorsement that is made part of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM:

   a.  The Basic and Supplemental Extended Reporting Periods applicable to "personal and advertising injury" also apply to this LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT COVERAGE.

## SECTION VII - DEFINITIONS

   a.  For the purposes of this LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT COVERAGE, the DEFINITIONS section of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM is included in and made part of this coverage.

   b.  For the purposes of this LIMITED PROPOSITION 65 CIVIL PENALTIES REIMBURSEMENT COVERAGE only, the following DEFINITIONS are added:

      (1)  "Designated personal and advertising injury offense" means the failure to comply with that part of California's Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65) and amendments thereto, requiring you to provide clear and reasonable warnings to consumers of chemicals in "your product" that are known to the State of California to cause cancer or birth defects or other reproductive harm. The failure to provide a clear and reasonable warning on "your product", regardless of the number of units of "your product" manufactured, distributed or sold without the required warning, shall constitute a single "designated personal and advertising injury offense".

      (2)  "California's Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65)" or "Proposition 65" or "Prop 65" shall include California Health & Safety Code sections 25249.5, et seq, and any amendments thereto, along with any administrative orders, regulations or interpretations in effect at the time applicable to the claim for coverage under this Endorsement.

## LIMITED PRODUCT WITHDRAWAL
## EXPENSE COVERAGE -
## GOVERNMENT-ORDERED WITHDRAWALS ONLY

### ADDITIONAL DECLARATIONS SCHEDULE

|  | Limits Of Insurance |
|---|---|
| Aggregate Limit | $     250,000 |
| Deductible Amount Per Product Withdrawal | $       2,500 |
| Participation Percentage Per Product Withdrawal | 10    % |
| Cut-Off Date: 11/12/2019 | |

**THIS COVERAGE ONLY PROVIDES REIMBURSEMENT TO YOU FOR EXPENSES INCURRED BECAUSE OF A COVERED "PRODUCT WITHDRAWAL". THIS COVERAGE DOES NOT PROVIDE ANY LIABILITY COVERAGE OR COVERAGE FOR THE COST OR EXPENSE OF DEFENDING ANY CLAIM OR SUIT.**

A. The following is added to **SECTION I – COVERAGES:**

### SECTION I – LIMITED PRODUCT WITHDRAWAL EXPENSE COVERAGE

1. **Insuring Agreement**

   a. We will reimburse you for "product withdrawal expenses" incurred by you because of a "product withdrawal" to which this coverage applies.

      The amount of such reimbursement is limited as described in SECTION III – LIMITS OF INSURANCE. No other obligation or liability to pay sums or perform acts or services is covered.

   b. This insurance applies to a "product withdrawal" only if the "product withdrawal" is initiated in the "coverage territory" during the policy period because the United States Food and Drug Administration or the United States Federal Communications Commission has ordered you to conduct a "product withdrawal".

   c. We will reimburse "product withdrawal expenses" only if:

      (1) The expenses are incurred within one year of the date the "product withdrawal" was initiated;

      (2) The expenses are reported to us within one year of the date the expenses were incurred; and

      (3) The product that is the subject of the "product withdrawal" was produced after the Cut-Off Date designated in the ADDITIONAL DECLARATIONS SCHEDULE.

   d. The initiation of a "product withdrawal" will be deemed to have been made only when you first received, either orally or in writing, notification of an order from the United States Food and Drug Administration or the United States Federal Communications Commission to conduct a "product withdrawal".

   e. "Product withdrawal expenses" incurred to withdraw "your products" which contain the same or substantially similar "defects" will be deemed to have arisen out of the same "product withdrawal".

2. **Exclusions**

   This insurance does not apply to "product withdrawal expenses" arising out of:

   a. **Breach Of Warranty And Failure To Conform To Intended Purpose**

      Any "product withdrawal" initiated due to the failure of "your product" to accomplish their intended purpose, including any breach of warranty of fitness, whether written or implied. This exclusion does not apply if such failure has caused or is reasonably expected to cause "bodily injury" or physical damage to tangible property other than "your product".

   b. **Infringement Of Copyright, Patent, Trade Secret, Trade Dress Or Trademark**

      Any "product withdrawal" initiated due to copyright, patent, trade secret, trade dress or trademark infringements.

   c.  **Deterioration, Decomposition Or Chemical Transformation**

Any "product withdrawal" initiated due to transformation of a chemical nature, deterioration or decomposition of "your product". This exclusion does not apply if it is caused by:

     (1)  An error in manufacturing, design, or processing;

     (2)  Transportation of "your product"; or

     (3)  "Product tampering".

   d.  **Goodwill, Market Share, Revenue, Profit Or Redesign**

The costs of regaining goodwill, market share, revenue or "profit" or the costs of redesigning "your product".

   e.  **Expiration Of Shelf Life**

Any "product withdrawal" initiated due to expiration of the designated shelf life of "your product".

   f.  **Known Defect**

A "product withdrawal", initiated because of a "defect" in "your product" known to exist by the Named Insured or the Named Insured's "executive officers", prior to the date when this Coverage Part was first issued to you or prior to the time "your product" leaves your control or possession.

   g.  **Otherwise Excluded Products**

A recall of any specific products for which "bodily injury" or "property damage" is excluded under COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY by endorsement.

   h.  **Governmental Ban**

A recall when "your product" or a component contained within "your product" has been:

     (1)  Banned from the market by the United States Food and Drug Administration or the United States Federal Communications Commission prior to the policy period; or

     (2)  Distributed or sold by you subsequent to any governmental ban.

   i.  **Defense Of Claim**

The defense of a claim or "suit" against you for liability arising out of a "product withdrawal".

   j.  **Third Party Damages, Fines And Penalties**

Any compensatory damages, fines, penalties, punitive or exemplary or other non-compensatory damages imposed upon the insured.

   k.  **Pollution-Related Expenses**

Any loss, cost or expense due to any:

     (1)  Request, demand, order, statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

     (2)  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**B.**  For the purposes of this coverage, SECTION III – LIMITS OF INSURANCE is replaced by the following:

**SECTION III – LIMITS OF INSURANCE**

  1.  The Limits of Insurance shown in the ADDITIONAL DECLARATIONS SCHEDULE and the rules below fix the most we will pay regardless of the number of:

    a.  Insureds;

    b.  "Product withdrawals" initiated; or

    c.  Number of "your products" withdrawn.

  2.  The Aggregate Limit is the most we will reimburse you for the sum of all "product withdrawal expenses" incurred for all "product withdrawals" initiated during the policy period.

3. **Deductible And Participation Percentage Provisions**

   a. **Deductible**

   We will only pay for the amount of "product withdrawal expenses" which are in excess of the deductible amount, if any, shown in the ADDITIONAL DECLARATIONS SCHEDULE of this coverage. The deductible applies separately to each "product withdrawal". The limits of insurance will not be reduced by the amount of this deductible.

   We may, or will if required by law, pay all or any part of any deductible amount, if applicable, to effect settlement of any claim or "suit". Upon notice of our payment of a deductible amount, you shall promptly reimburse us for the part of the deductible amount we paid.

   b. **Participation Percentage**

   If a Participation Percentage is indicated in the ADDITIONAL DECLARATIONS SCHEDULE of this endorsement, the following provision applies:

   You agree to participate in the payment of "product withdrawal expenses" which are in excess of the Deductible, to the extent of the Participation Percentage indicated in the ADDITIONAL DECLARATIONS SCHEDULE. The Participation Percentage will apply separately to each "product withdrawal".

   You also agree that the cost of your participation in the loss will be borne entirely by you when due and you will not obtain insurance to cover it.

The Limits of Insurance of Product Withdrawal Expense Coverage apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

C. For the purposes of this coverage, the **Duties In The Event Of Occurrence, Claim Or Suit Condition** under SECTION IV – CONDITIONS is replaced by the following:

2. **Duties In The Event Of A "Defect" Or A "Product Withdrawal"**

   a. You must see to it that we are notified as soon as practicable of any actual, suspected or threatened "defect" in "your product", or any governmental investigation, that may result in a "product withdrawal". To the extent possible, notice should include:

      (1) How, when and where the "defect" was discovered;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature, location and circumstances of any injury or damage arising out of use or consumption of "your product".

   b. If a "product withdrawal" is initiated, you must:

      (1) Immediately record the specifics of the "product withdrawal" and the date it was initiated; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the "product withdrawal" as soon as practicable.

   c. You must promptly take all reasonable steps to mitigate the expenses associated with a "product withdrawal". Any "profit" that you receive from mitigating the expenses will be deducted from the amount of reimbursement that you will receive for "product withdrawal expenses".

   d. You and any other involved insured must:

      (1) Immediately send us copies of pertinent correspondence received in connection with the "product withdrawal";

      (2) Authorize us to obtain records and other information; and

      (3) Cooperate with us in our investigation of the "product withdrawal".

**D.** For the purposes of this coverage, the following condition is added to SECTION IV – CONDITIONS:

**Concealment Or Fraud**

We will not provide coverage under Section I of this coverage to you, or any other insured, who at any time:

1. Engaged in fraudulent conduct; or

2. Intentionally concealed or misrepresented a material fact concerning a "product withdrawal" or "product withdrawal expenses" incurred by you under Section I of this coverage.

**E.** The following definitions are added to the **Definitions** Section:

1. "Defect" means a defect, deficiency or inadequacy that creates a dangerous condition.

2. "Product tampering" is an act of intentional alteration of "your product" which has caused or is reasonably expected to cause "bodily injury" or physical injury to tangible property other than "your product".

   When "product tampering" is known, suspected or threatened, a "product withdrawal" will be limited to those batches of "your product" which are known or suspected to have been tampered with.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

3. "Product withdrawal" means the recall or withdrawal:

   a. From the market; or

   b. From use by any other person or organization;

   of "your products", or products which contain "your products", because of known or suspected "defects" in "your product", or known or suspected "product tampering", which has caused or is reasonably expected to cause "bodily injury" or physical injury to tangible property other than "your product".

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

4. "Product withdrawal expenses" means those reasonable and necessary extra expenses, listed below, paid and directly related to a "product withdrawal":

   a. Costs of notification;

   b. Costs of stationery, envelopes, production of announcements and postage or facsimiles;

   c. Costs of overtime paid to your regular non-salaried employees and costs incurred by your employees, including costs of transportation and accommodations;

   d. Costs of computer time;

   e. Costs of hiring independent contractors and other temporary employees;

   f. Costs of transportation, shipping or packaging;

   g. Costs of warehouse or storage space; or

   h. Costs of proper disposal of "your products", or products that contain "your products", that cannot be reused, not exceeding your purchase price or your cost to produce the products.

5. "Profit" means the positive gain from business operation after subtracting for all expenses.

## ADDITIONAL INSURED – TRADE SHOW SPONSOR – AUTOMATIC STATUS WHEN REQUIRED IN WRITTEN AGREEMENT WITH YOU

**A.** **SECTION II – WHO IS AN INSURED** is amended to include as an additional insured any person or organization who is a sponsor of a trade show where you are operating a booth or displaying your product, but only:

   **1.** For injury or damage occurring at the trade show; and

   **2.** When you and such person or organization have agreed in writing in a contract or agreement executed prior to the beginning of the trade show that such person or organization be added as an additional insured on your policy.

Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

   **1.** Your acts or omissions; or

   **2.** The acts or omissions of those acting on your behalf;

while attending the trade show sponsored by this additional insured.

A person's or organization's status as an additional insured under this amendment ends when your attendance at the trade show ends.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to "bodily injury" or "property damage" arising out of "your work" or "your product" and included in the "products-completed operations hazard".

## PRIMARY/NON-CONTRIBUTING INSURANCE ENDORSEMENT - VENDORS

It is agreed that Commercial General Liability Coverage Form CG 00 02 Section **IV** Paragraphs **4.b.** and **4.c.** do not apply with respect to other valid and collectible Commercial General Liability insurance, whether primary or excess, available to a person or organization:

   **1.** Who is an insured under an Additional Insured-Vendors endorsement attached to this policy; and

   **2.** Who requires by specific written contract that this insurance is to be primary and/or non-contributory to other valid and collectible insurance available to that person or organization.

This amendment does not change the scope of coverage provided to the person or organization by any additional insured endorsement.

## LIMITATION OF EXTENDED REPORTING PERIODS - EXTENDED TERM (CGL Coverage Form)

**SECTION V - EXTENDED REPORTING PERIODS** is deleted in its entirety and replaced by the following:

**SECTION V - EXTENDED REPORTING PERIODS**

**1.** We will provide the Basic Extended Reporting Period described in Paragraph **4.** below if:

   **a.** This Coverage Part is canceled or not renewed; or

   **b.** We renew or replace this Coverage Part with insurance that:

      **(1)** Has a Retroactive Date later than the date shown in the Declarations of this Coverage Part; or

      **(2)** Does not apply to "bodily injury", "property damage" or "personal and advertising injury" on a claims-made basis.

**2.** We will provide the Supplemental Extended Reporting Period described in Paragraph **5.** below if:

   **a.** This Coverage Part is canceled or not renewed by us; or

   **b.** We renew or replace this Coverage Part with insurance that:

      **(1)** Has a Retroactive Date later than the date shown in the Declarations of this Coverage Part; or

    **(2)** Does not apply to "bodily injury", "property damage" or "personal and advertising injury" on a claims-made basis.

**3.** Extended Reporting Periods do not extend the policy period or change the scope of coverage provided.  They apply only to claims first received by you and reported to us during the Extended Reporting Period for:

    **a.** "Bodily injury" or "property damage" that occurs before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations; or

    **b.** "Personal and advertising injury" caused by an offense committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations.

Once in effect, Extended Reporting Periods may not be canceled.

**4.** A Basic Extended Reporting Period is automatically provided without additional charge.  This period starts with the end of the policy period and lasts for:

    **a.** Sixty days with respect to claims because of "bodily injury" and "property damage" arising out of an "occurrence" reported to us, not later than 60 days after the end of the policy period, in accordance with Paragraph **2.a.** of the Section **IV** – Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition;

    **b.** Sixty days with respect to claims because of "personal and advertising injury" arising out of an offense reported to us, not later than 60 days after the end of the policy period, in accordance with Paragraph **2.a.** of the Section **IV** – Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition; and

    **c.** Sixty days with respect to claims arising from "occurrences" or offenses not previously reported to us.

The Basic Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

**5.** A Supplemental Extended Reporting Period is available, but only by an endorsement and for an extra charge.  This supplemental period starts when the Basic Extended Reporting Period, set forth in Paragraph **4.** above, ends and lasts for <u>3</u> years.

You must give us a written request for the endorsement within 60 days after the end of the policy period.  The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates.  In doing so, we may take into account the following:

    **a.** The exposures insured;

    **b.** Previous types and amounts of insurance;

    **c.** Limits of Insurance available under this Coverage Part for future payment of damages;

    **d.** Prior claims experience; and

    **e.** Other related factors.

The additional premium will not exceed <u>200</u>% of the annual premium for this Coverage Part.

This endorsement shall set forth the terms, not inconsistent with this section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for claims first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

**6.** Extended Reporting Periods do not reinstate or increase the Limits of Insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number: CA000036628-01

NR 00 07 03 19

Effective Date: 11/12/2019

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CANNABIDIOL (CBD) –
# MODIFIED DESIGNATED PRODUCTS, SUPPLEMENTS
# AND ADDITIVES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

Only with respect to Cannabidiol (CBD) products made or sold by you, the following sentence is deleted in its entirety from Health, Nutrition & Lifestyle Exclusions and Coverages Endorsement NR 00 02 (or NR 00 04, if applicable):

Any product, supplement, additive, substance, ingredient or compound manufactured, imported, formulated, sold or distributed by you or on your behalf by others, in violation of any regulation or law.

COMMERCIAL GENERAL LIABILITY
CG 00 02 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

## COVERAGES A AND B PROVIDE CLAIMS-MADE COVERAGE.
## PLEASE READ THE ENTIRE FORM CAREFULLY.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

(3) A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph c. below, during the policy period or any Extended Reporting Period we provide under Section V – Extended Reporting Periods.

c. A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

(1) When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

(2) When we make settlement in accordance with Paragraph a. above.

All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury", will be deemed to have been made at the time the first of those claims is made against any insured.

All claims for damages because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those claims is made against any insured.

### 2. Exclusions

This insurance does not apply to:

© Insurance Services Office, Inc., 2012

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

 © Insurance Services Office, Inc., 2012

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

(b) The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

© Insurance Services Office, Inc., 2012

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

 © Insurance Services Office, Inc., 2012

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if:

      (1) The offense was committed in the "coverage territory";

      (2) The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

      (3) A claim for damages because of the "personal and advertising injury" is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or any Extended Reporting Period we provide under Section **V** – Extended Reporting Periods.

   c. A claim made by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

      (1) When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

      (2) When we make settlement in accordance with Paragraph **a.** above.

      All claims for damages because of "personal and advertising injury" to the same person or organization as a result of an offense will be deemed to have been made at the time the first of those claims is made against any insured.

2. **Exclusions**

   This insurance does not apply to:

   a. **Knowing Violation Of Rights Of Another**

      "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

   b. **Material Published With Knowledge Of Falsity**

      "Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

   c. **Material Published Prior To Policy Period**

      "Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the Retroactive Date, if any, shown in the Declarations.

   d. **Criminal Acts**

      "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

   e. **Contractual Liability**

      "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

   f. **Breach Of Contract**

      "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

 © Insurance Services Office, Inc., 2012

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

© Insurance Services Office, Inc., 2012

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

## COVERAGE C – MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

  **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

    **(1)** "Bodily injury" or "personal and advertising injury":

      **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(a)** above;

      **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)** or **(b)** above; or

      **(d)** Arising out of his or her providing or failing to provide professional health care services.

    **(2)** "Property damage" to property:

      **(a)** Owned, occupied or used by;

      **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

      you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

  **b.** Any person (other than your "employee" or "volunteer worker") or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

  **(1)** With respect to liability arising out of the maintenance or use of that property; and

  **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

  **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

  **b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

  **c.** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

  **a.** Insureds;

  **b.** Claims made or "suits" brought; or

  **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

  **a.** Medical expenses under Coverage C;

  **b.** Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

      Notice of an "occurrence" or offense is not notice of a claim.

   b. If a claim is received by any insured, you must:

      (1) Immediately record the specifics of the claim and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

b. **Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies to "bodily injury" or "property damage" on other than a claims-made basis, if:

i. No Retroactive Date is shown in the Declarations of this insurance; or

ii. The other insurance has a policy period which continues after the Retroactive Date shown in the Declarations of this insurance;

(ii) That is Fire, Extended Coverage, Builders' Risk, Installation Risk or similar coverage for "your work";

(iii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iv) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(v) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**10. Your Right To Claim And Occurrence Information**

We will provide the first Named Insured shown in the Declarations the following information relating to this and any preceding general liability claims-made Coverage Part we have issued to you during the previous three years:

a. A list or other record of each "occurrence", not previously reported to any other insurer, of which we were notified in accordance with Paragraph **2.a.** of the Section **IV** – Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition. We will include the date and brief description of the "occurrence" if that information was in the notice we received.

b. A summary by policy year, of payments made and amounts reserved, stated separately, under any applicable General Aggregate Limit and Products-Completed Operations Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

If we cancel or elect not to renew this Coverage Part, we will provide such information no later than 30 days before the date of policy termination. In other circumstances, we will provide this information only if we receive a written request from the first Named Insured within 60 days after the end of the policy period. In this case, we will provide this information within 45 days of receipt of the request.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.

## SECTION V – EXTENDED REPORTING PERIODS

1. We will provide one or more Extended Reporting Periods, as described below, if:

   a. This Coverage Part is canceled or not renewed; or

   b. We renew or replace this Coverage Part with insurance that:

      (1) Has a Retroactive Date later than the date shown in the Declarations of this Coverage Part; or

      (2) Does not apply to "bodily injury", "property damage" or "personal and advertising injury" on a claims-made basis.

2. Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to claims for:

   a. "Bodily injury" or "property damage" that occurs before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations; or

   b. "Personal and advertising injury" caused by an offense committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations.

   Once in effect, Extended Reporting Periods may not be canceled.

3. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

   a. Five years with respect to claims because of "bodily injury" and "property damage" arising out of an "occurrence" reported to us, not later than 60 days after the end of the policy period, in accordance with Paragraph **2.a.** of the Section **IV** – Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition;

   b. Five years with respect to claims because of "personal and advertising injury" arising out of an offense reported to us, not later than 60 days after the end of the policy period, in accordance with Paragraph **2.a.** of the Section **IV** – Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition; and

   c. Sixty days with respect to claims arising from "occurrences" or offenses not previously reported to us.

The Basic Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

4. The Basic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

5. A Supplemental Extended Reporting Period of unlimited duration is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, set forth in Paragraph **3.** above, ends.

   You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

   We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

   a. The exposures insured;

   b. Previous types and amounts of insurance;

   c. Limits of Insurance available under this Coverage Part for future payment of damages; and

   d. Other related factors.

   The additional premium will not exceed 200% of the annual premium for this Coverage Part.

   This endorsement shall set forth the terms, not inconsistent with this section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for claims first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

6. If the Supplemental Extended Reporting Period is in effect, we will provide the supplemental aggregate limits of insurance described below, but only for claims first received and recorded during the Supplemental Extended Reporting Period.

   The supplemental aggregate limits of insurance will be equal to the dollar amount shown in the Declarations in effect at the end of the policy period for such of the following limits of insurance for which a dollar amount has been entered:

General Aggregate Limit

Products-Completed Operations Aggregate Limit

Paragraphs **2.** and **3.** of Section III – Limits Of Insurance will be amended accordingly. The Personal and Advertising Injury Limit, the Each Occurrence Limit and the Damage To Premises Rented To You Limit shown in the Declarations will then continue to apply, as set forth in Paragraphs **4., 5.** and **6.** of that section.

## SECTION VI – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in Paragraph **a.** above;

      (2) The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

  **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

  **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

  **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

  **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

  **b.** While it is in or on an aircraft, watercraft or "auto"; or

  **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

  **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

  **b.** Vehicles maintained for use solely on or next to premises you own or rent;

  **c.** Vehicles that travel on crawler treads;

  **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

  **e.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

  **f.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

  However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

      **(a)** Snow removal;

      **(b)** Road maintenance, but not construction or resurfacing; or

      **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from, computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

    a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (a) You;

        (b) Others trading under your name; or

        (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      (2) The providing of or failure to provide warnings or instructions.

    c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

    a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      (2) The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

Policy Number: CA000036628-01

CG 20 11 04 13

Effective Date: 11/12/2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| |
|---|
| **Designation Of Premises (Part Leased To You):** |
| All premises leased to you and covered by this insurance. |

| |
|---|
| **Name Of Person(s) Or Organization(s) (Additional Insured):** |
| Any person or organization that is a manager or lessor of real property, but only if coverage as an additional insured is required by a written contract or written agreement that is an "insured contract", and provided the "bodily injury" or "property damage" first occurs, or the "personal and advertising injury" offense is first committed, subsequent to the execution of the contract or agreement. |

| | |
|---|---|
| **Additional Premium:** | $  Included |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A.  **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1.  Any "occurrence" which takes place after you cease to be a tenant in that premises.

2.  Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule.

However:

1.  The insurance afforded to such additional insured only applies to the extent permitted by law; and

2.  If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

B.  With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1.  Required by the contract or agreement; or

2.  Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

Policy Number: CA000036628-01

CG 20 15 04 13

Effective Date: 11/12/2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| Any person or organization that is a vendor of "your products", but only if coverage as an additional insured-vendor is required by a written contract or written agreement, and provided the "bodily injury" or "property damage" first occurs subsequent to the execution of the contract or agreement. | Any of "your products" covered by this insurance. |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

A.  **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

   However:

   1.  The insurance afforded to such vendor only applies to the extent permitted by law; and

   2.  If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

B.  With respect to the insurance afforded to these vendors, the following additional exclusions apply:

   1.  The insurance afforded the vendor does not apply to:

      a.  "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

      b.  Any express warranty unauthorized by you;

      c.  Any physical or chemical change in the product made intentionally by the vendor;

      d.  Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

      e.  Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

CG 20 15 04 13

© Insurance Services Office, Inc., 2012

Page 1 of 2

    **f.**  Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

    **g.**  Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

    **h.**  "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf.  However, this exclusion does not apply to:

        **(1)**  The exceptions contained in Sub-paragraphs **d.** or **f.**; or

        **(2)**  Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

  **2.**  This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**C.**  **With respect to the insurance afforded to these vendors, the following is added to Section III – Limits Of Insurance:**

If coverage provided to the vendor is required by a contract or agreement, the most we will pay on behalf of the vendor is the amount of insurance:

  **1.**  Required by the contract or agreement; or

  **2.**  Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012

Policy Number: CA000036628-01

CG 21 06 05 14

Effective Date: 11/12/2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

   **2. Exclusions**

     This insurance does not apply to:

     **p.  Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

       Damages arising out of:

       **(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

       **(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

       This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

       However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

       As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

   **2. Exclusions**

     This insurance does not apply to:

     **Access Or Disclosure Of Confidential Or Personal Information**

     "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

     This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

Policy Number: CA000036628-01

CG 21 49 09 99

Effective Date: 11/12/2019

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.   Pollution**

(1)   "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2)   Any loss, cost or expense arising out of any:

(a)   Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b)   Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Copyright, Insurance Services Office, Inc., 1998

Policy Number: CA000036628-01

CG 21 75 01 15

Effective Date: 11/12/2019

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism", or out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory".  However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars).  In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property.  For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury.  For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

© Insurance Services Office, Inc., 2015

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   **a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

   **b.** The act resulted in damage:

      **(1)** Within the United States (including its territories and possessions and Puerto Rico); or

      **(2)** Outside of the United States in the case of:

         **(a)** An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

         **(b)** The premises of any United States mission; and

   **c.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

   Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

Policy Number: CA000036628-01

CG 24 26 04 13

Effective Date: 11/12/2019

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

  **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

  **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

  **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

CG 24 26 04 13

© Insurance Services Office, Inc., 2012

Page 1 of 1   ☐

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

Policy Number: CA000036628-01

IL 00 21 07 02

Effective Date: 11/12/2019

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY ENDORSEMENT (BROAD FORM)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1.  The insurance does not apply:

A.  Under any Liability Coverage, to "bodily injury" or "property damage":

(1)  With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2)  Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B.  Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C.  Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

(1)  The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

(2)  The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

(3)  The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

© ISO Properties, Inc.,  2001

2.  As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

  (a)  Any "nuclear reactor";

  (b)  Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

  (c)  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

  (d)  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Policy Number: CA000036628-01

**AD 06 62 02 04**

Effective Date: 11/12/2019

**THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY COVERAGE
# CLAIMS MADE COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

1.  Limits of Liability
    - $ 1,000,000  each claim
    - $ 2,000,000  aggregate

2.  Deductible
    - $ 5,000  each claim

3.  Numbers of Employees  ALL
    Premium  $ INCLUDED

4.  Retroactive Date:  INCEPTION

I.  COVERAGES

1.  Insuring Agreement

    We will pay those sums which you become legally obligated to pay as damages sustained by any employee, former employee, prospective employee or the beneficiaries or legal representatives thereof caused by your negligent act, error or omission or any other person for whose acts you are legally liable in the "administration" of your "Employee Benefits Programs" in the "policy territory". No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS.

    We will have the right and duty to defend any suit seeking damages, except,

    (a) the amount we will pay for damages is limited as described in SECTION III-LIMITS OF INSURANCE;

    (b) we may, at our discretion, investigate any negligent act, error or omission and settle any claim or suit that may result, and

    (c) our right and duty to defend ends when the applicable limit of insurance has been used up in the payment of judgments, settlements or SUPPLEMENTARY PAYMENTS

    This insurance applies to damages only if a claim for damages is first made against you during the policy period. If during this policy period you become aware of any occurrences or circumstances which might result in a claim or claims under this insurance and notice thereof is given to us as soon as practicable in accordance with Section IV, Conditions 2 of the policy, it is agreed that any subsequent claim arising out of such occurrences or circumstances, whether made during or after the expiration of this endorsement period (but no later than sixty days after the expiration of this endorsement period), shall be treated as a claim made during this endorsement period.

    A claim by a person or organization seeking damages will be deemed to have been made when notice of such claim is received and recorded by you or by us, whichever comes first.

    All claims for damages to the same person will be deemed to have been made at the time the first of those claims is made against you.

2. Exclusions

This insurance does not apply to:

(a) Damages arising out of a negligent act, error or omission which:

    (1) occurred prior to the policy period or the Retroactive Date shown in the Schedule, whichever is earlier; and

    (2) you knew or should have known prior to the policy period might result in a claim;

(b) damages due to any dishonest, fraudulent, criminal or malicious act;

(c) damages due to libel, slander, discrimination, humiliation, emotional distress, harassment, or termination from employment;

(d) injury to, or sickness, disease or death of any person, or to injury to or destruction of any tangible property, including the loss of use thereof;

(e) any loss or claim arising out of failure of performance of any contract by an insurer;

(f) your failure to comply with any law concerning workers' compensation, unemployment insurance, social security or disability benefits;

(g) any claim based upon;

    (1) failure of stock or other investments to perform as represented by you;

    (2) advice given by you to an employee to participate or not to participate in stock subscription plans;

    (3) the investment or non-investment of funds.

II. WHO IS AN INSURED

1. If you are designated in the Declarations as:

(a) an individual, the person so designated but only with respect to the conduct of a business of which you are the sole proprietor, and your spouse with respect to the conduct of such a business;

(b) a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to their liability as such;

(c) other than an individual, partnership, or joint venture, the organization so designated and any executive officer, director, or stockholder thereof while acting within the scope of their duties as such;

2. Each of the following is also an insured:

(a) any of your employees authorized to act in the administration of your "Employee Benefits Programs", while acting within the scope of their duties in connection therewith; provided that the insurance shall not apply to any person included as a fiduciary under the Employee Retirement Income Security Act of 1974, including any amendments and regulations relating thereto, while acting in their capacity as such.

This insurance does not apply to loss arising out of the conduct of any partnership or joint venture in which you are a partner or member which is not designated in the policy as a "Named Insured".

III. LIMITS OF LIABILITY

The limit of liability stated in the Schedule of this endorsement as applicable to "each claim" is the limit of your liability for all damages included in each claim to which this insurance applies; provided that the term "each claim" includes all claims because of any loss or losses sustained by any one employee or former employee and the estate, heirs, legal representatives, beneficiaries or assigns of such employee or former employee, as the result of any act, error or omission or combination of related acts, errors or omissions.

Subject to the foregoing provisions respecting the limit of liability for "each claim", the limit of liability stated in the Schedule as "aggregate" is the total limit of our liability for all damages because of all losses under this insurance including all SUPPLEMENTARY PAYMENTS.

The inclusion of this endorsement shall not increase our Limits of Liability as stated in the policy.

IV. ADDITIONAL CONDITIONS

All of the conditions of the policy apply except, as respects the insurance provided by this endorsement:

(a) Premium:

The premium stated in this endorsement is an estimated premium only. Upon termination of each annual period of this policy, you, on request, will furnish us with a statement of personnel changes, and the earned premiums shall be computed on the average number of employees at the beginning and end of such period. If the earned premium thus computed exceeds the estimated advance premium, you will pay the excess to us; if less, we will return to you the unearned portion subject to the Minimum Premium for this insurance.

(b) Your Duties in the event of Negligent Act, Error or Omission, Claim or Suit:

If any claim is made against you or if you learn of any occurrences or circumstances which might result in a claim hereunder, written notice shall be given by you as soon as practicable in accordance with the requirements of Condition 2 of the policy.

(c) The following Condition is added:

The Deductible amount shown in the Schedule of this endorsement shall apply to all payments (damages or supplementary payments) under this coverage. The terms and conditions of the Liability Deductible Endorsement attached to this policy apply to the Deductible for this coverage.

(d) The following Condition is added:

If the Retroactive Date shown in the Schedule is earlier than the policy period, this insurance is excess over any other similar insurance purchased by you that is effective prior to the beginning of the policy period. When this insurance is excess, all of the terms and conditions of Section IV-Condition 4.b. apply.

V. DEFINITIONS

When used in reference to this insurance:

"Employee Benefit Programs" means any of the following employee benefit plans and programs maintained for the benefit of your employees or former employees:

(a) group life insurance, group accident and health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers' compensation, unemployment insurance, salary continuation plans, social security, disability benefits insurance and travel, savings or vacation plans; and

(b) any other employee benefit plan or program added to your "Employee Benefits Program" after the effective date of this endorsement provided that written notice is given to us within 30 days of the effective date thereof and provided further that such addition is endorsed on this policy.

"Administration" means:

(a) providing interpretations and giving counsel to your employees regarding your "Employee Benefits Programs";

(b) handling records in connection with your "Employee Benefits Programs";

(c) the enrollment, termination or cancellation of employees under your "Employee Benefits Programs",

"Policy Territory" means the United States of America, its territories or possessions, or Canada.

Policy Number: CA000036628-01

AD 07 43 12 11

Effective Date: 11/12/2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# KNOWN EVENT, INCIDENT, INJURY OR DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM (Claims-Made Coverage)
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM (Claims-Made Coverage)

This insurance does not apply to those sums that the insured becomes legally obligated to pay because of "bodily injury", "property damage" or "personal and advertising injury", to include all SUPPLEMENTARY PAYMENTS, arising out of:

(a) any "occurrence", claim, offense or "suit"; or

(b) any event, incident, circumstance or condition that may reasonably be expected to result in an "occurrence", claim, offense or "suit"; or

(c) any "bodily injury", "property damage" or "personal and advertising injury",

if such "occurrence", claim, offense, "suit", condition, circumstance, event, incident, "bodily injury", "property damage" or "personal and advertising injury" is or was known to any insured prior to the earliest of the following dates:

(a) The beginning of the policy period shown in the Declarations of this policy; or

(b) The beginning of "continuous claims-made coverage".

"Continuous claims-made coverage" means coverage provided by claims-made policies issued by us to you that have been kept in force without interruption from the beginning of the policy period shown in the Declarations of the first such claims-made policy.

Policy Number: CA000036628-01

**AD 08 42 02 16**

Effective Date: 11/12/2019

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# BODILY INJURY REDEFINED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM (OCCURRENCE VERSION)
COMMERCIAL GENERAL LIABILITY COVERAGE FORM (CLAIMS-MADE)
PRODUCTS AND COMPLETED OPERATIONS LIABILITY COVERAGE FORM (OCCURRENCE VERSION)
PRODUCTS AND COMPLETED OPERATIONS LIABILITY COVERAGE FORM (CLAIMS-MADE VERSION)
LIQUOR LIABILITY COVERAGE (OCCURRENCE VERSION)
LIQUOR LIABILITY COVERAGE (CLAIMS-MADE)
OWNER'S AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
EXCESS LIABILITY COVERAGE FORM
UMBRELLA LIABILITY COVERAGE FORM

The definition of "bodily injury" in DEFINITIONS is amended as follows:

"Bodily injury" means physical injury, physical sickness or physical disease sustained by any one person, including death resulting from any of these at any time.  "Bodily injury" does not include shock or emotional, mental or psychological distress, injury, trauma or anguish, or other similar condition, unless such condition results solely and directly from that one person's prior physical injury, physical sickness or physical disease otherwise covered under this insurance.

        Includes copyrighted material of Insurance Services Office, Inc., with its permission, 2016.          ☐

Policy Number: CA000036628-01                                                                    **AD 66 01 07 15**

                                                                                                 Effective Date: 11/12/2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PUNITIVE DAMAGES EXCLUSION

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE FORM
    LIQUOR LIABILITY COVERAGE FORM
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
    RAILROAD PROTECTIVE LIABILITY COVERAGE FORM

This insurance does not apply to punitive or exemplary damages, in whatever form assessed, awarded against any insured.

Policy Number: CA000036628-01

**AD 66 09 02 95**

Effective Date: 11/12/2019

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MINIMUM PREMIUM AND MINIMUM RETAINED PREMIUM AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

1. Condition 5.  Premium Audit as shown in SECTION IV- CONDITIONS is deleted and replaced by the following condition:

   5.   Premium Audit

   All premiums for this policy shall be computed in accordance with our rules, rates, rating plans, premiums and minimum premiums applicable to the Insurance afforded herein.

   Premium designated in this policy as Advance Premium is a Deposit Premium which shall be credited to the amount of the earned premium due at the end of the policy period.  At the close of each period (or part thereof terminating with the end of policy period), designated in the DECLARATIONS as the audit period, the earned premium shall be computed for such period and, upon notice thereof to the first Named Insured, shall become due and payable.

   Should it become necessary to institute collection activities, including litigation, in order to collect the additional earned premium, then you shall be responsible for 100% of the expenses, fees and costs incurred by the Company in that regard plus any collectible interest.  If the total computed earned premium for the policy period is less than the premium previously paid, then we shall receive and retain no less than the minimum premium(s) listed in the coverage part(s) attached hereto.

You shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to us at the end of the policy period and at such times during the policy period as we may direct.

2. It is further agreed that Section A. Cancellation, paragraph 5. of the COMMON POLICY CONDITIONS IS amended to read as follows:

   5.   If the policy is cancelled, we will send the first Named Insured any premium refund due.

   If we cancel, the refund will be the lesser of the pro rata of the actual earned premium or Minimum Premium.  If the Named Insured cancels, the refund may be less than pro rata.  However in no event shall we retain less than 25% of the Advance Premium shown in the DECLARATIONS.

Policy Number: CA000036628-01

AD 66 11 05 11

Effective Date: 11/12/2019

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE
# (APPLICABLE TO INDEMNITY AND EXPENSES)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

## SCHEDULE

| Coverage | | Amount and Basis of Deductible | | |
|---|---|---|---|---|
| | | PER CLAIM | | PER OCCURRENCE |
| Bodily Injury Liability | $ | | $ | |
| Property Damage Liability | $ | | $ | |
| Bodily Injury Liability and/or Property Damage Liability Combine | $ | 5,000 | $ | |
| Personal and Advertising Injury Liability | $ | | $ | |

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT**  (Enter below any limitations on the application of this endorsement.  If no limitation is entered, the deductibles apply to damages for all "bodily injury", "property damage" and "personal and advertising injury", however caused.  Damages includes any payments made under the Supplementary Payments provisions of this policy including, but not limited to, expenses we incur to investigate or settle a claim or to defend a "suit".):

| **No limitations** |
|---|

1.  Our obligation under the Bodily Injury Liability, Property Damage Liability, and Personal and Advertising Injury Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

    Damages includes any payments made under the Supplementary Payments provisions of this policy including, but not limited to, expenses we incur to investigate or settle a claim, or to defend a "suit".

2.  The deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above.  The deductible amount stated in the Schedule above applies as follows:

    a.  PER CLAIM BASIS.  If the deductible indicated in the Schedule above is on a PER CLAIM basis, that deductible applies as follows:

AD 66 11 05 11

    **(1)** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

    **(2)** Under Personal and Advertising Injury Liability Coverage, to all damages sustained by any one person because of "personal and advertising injury";

    **(3)** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

    **(4)** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

        **(a)** "Bodily injury";

        **(b)** "Property damage"; or

        **(c)** "Bodily injury" and "property damage" combined as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage" and "personal and advertising injury", person includes an organization.

**b.** PER OCCURRENCE BASIS. If the deductible amount indicated in the Schedule above is on a PER OCCURRENCE basis, that deductible amount applies as follows:

    **(1)** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

    **(2)** Under Personal and Advertising Injury Liability Coverage, to all damages sustained by any one person because of "personal and advertising injury";

    **(3)** Under Property Damage Liability Coverage, to all damages because of "property damage"; or

    **(4)** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

        **(a)** "Bodily injury";

        **(b)** "Property damage"; or

        **(c)** "Bodily injury" and "property damage" combined,

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**3.** The terms of this insurance, including those with respect to:

    **a.** Our right and duty to defend the insured against any "suits" seeking those damages; and

    **b.** Your duties in the event of an "occurrence", claim, or "suit";

apply irrespective of the application of the deductible amount.

**4.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**5.** When used in this endorsement, damages include any payments made under the Supplementary Payments provisions of this policy including, but not limited to, expenses we incur to investigate or settle a claim or to defend a "suit".

**6.** If you do not promptly reimburse us for any deductible amount owed, then any cost incurred by us in collection of the deductible amount will be added and applied in addition to the applicable deductible amount without any limitation. These costs include, but are not limited to, collection agency fees, attorney's fees and interest.

Policy Number: CA000036628-01

**AD 67 71 04 10**

Effective Date: 11/12/2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST VENDORS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

**Additional Premium: Included**

**SCHEDULE**

**Name of Person or Organization:**    Any person or organization, but only if the following conditions are met:
  a.   **You have expressly agreed to the waiver in a written contract entered into by you; and**
  b.   **The injury or damage occurs subsequent to the execution of the written contract.**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us of Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of "your product" sold under a written contract with that person or organization and included in the "products-completed operations hazard".  This waiver applies only to the person or organization shown in the Schedule above, but the waiver does not apply if the person or organization:

a.   Makes any physical or chemical change in the product;

b.   Repackages, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

c.   Fails to make such inspections, adjustments, tests or servicing as the person or organization has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

d.   Demonstrates, installs, services, or repairs the product except such operations performed at the person's or organization's premises in connection with the sale of the product; or

e.   Re-labels the product.

This waiver does not apply to any person or organization from whom you have acquired such products, or any ingredient, part or container entering into, accompanying or containing such products.

Policy Number: CA000036628-01

AD 68 89 12 13

Effective Date: 11/12/2019

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SPECIAL EXCLUSIONS – JOINT FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM (CLAIMS-MADE VERSION)

## PRE-EXISTING DAMAGE EXCLUSION

This insurance does not apply to:

1.  Any damages arising out of or related to "bodily injury" or "property damage", whether such "bodily injury" or "property damage" is known or unknown,

    (a)  which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier); or

    (b)  which are, or are alleged to be, in the process of occurring as of the inception date of the policy (or the retroactive date of this policy, if any; whichever is earlier) even if the "occurrence" continues during this policy period.

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

A.  The following exclusion is added to Paragraph **2.**, **Exclusions** of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

(1)  A person arising out of any "wrongful employment act(s)"; or

(2)  The spouse, child, parent, brother, sister or registered domestic partner of that person as a consequence of "bodily injury" to that person at whom any of the "wrongful employment act(s)" described in Paragraph (1) above is directed.

This exclusion applies:

(1)  Whether any insured may be liable as an employer or in any other capacity;

(2)  To any obligation to share damages with or repay someone else who must pay damages because of the injury; and

(3)  Whether the "wrongful employment act(s)" occurs before employment, during employment or after employment of that person.

B.  The following exclusion is added to Paragraph **2.**, **Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

(1)  A person arising out of any "wrongful employment act(s)"; or

(2)  The spouse, child, parent, brother, sister or registered domestic partner of that person as a consequence of "personal and advertising injury" to that person at whom any of the "wrongful employment act(s)" described in Paragraph (1) above is directed.

This exclusion applies:

(1) Whether any insured may be liable as an employer or in any other capacity;

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury; and

(3) Whether the "wrongful employment act(s)" occurs before employment, during employment or after employment of that person.

C. Additional Definitions:

(1) "Wrongful employment act(s)" means any of the following actual, alleged or related acts committed by or on behalf of any insured arising out of a potential, actual or post employment relationship with any person:

(a) Discrimination or harassment because of race, color, religion, age, sex, disability, pregnancy, national origin, sexual orientation, marital status, or any other basis prohibited by law which results in termination of the employment relationship, or demotion, or failure or refusal to hire or promote, or failure to accommodate an "employee" or potential "employee", or denial of an employment privilege, or the taking of any adverse or differential employment action; or

(b) Sexual harassment including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature that is made a condition of employment, is used as a basis for employment decisions, or creates an intimidating, hostile or offensive work environment that interferes with work performance; or

(c) Termination, constructive discharge, wrongful failure to hire, wrongful demotion, retaliation, misrepresentation, infliction of emotional distress, defamation, invasion of privacy, humiliation, wrongful evaluation, or breach of an implied contract or agreement relating to employment, whether arising out of any personnel manual, policy statement or oral representation; or

(d) Physical assault or battery, or any other similar behavior that creates an intimidating, hostile, offensive or dangerous work environment; or

(e) Training or failing to train any "employee" in accordance with any applicable federal, state or local law, regulation, ordinance, rule, guidance document or policy directive governing any act described in Paragraph C. (1) (a) through Paragraph C. (1) (d) above; or

(f) Failure to comply with any applicable federal, state or local law, regulation, ordinance, rule, guidance document or policy directive related to the prevention of any act described in Paragraph C. (1) (a) through Paragraph C. (1) (d) above; or

(g) malicious prosecution.

Policy Number: CA000036628-01

AD 66 69 09 05

Effective Date: 11/12/2019

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SUPPLEMENTARY PAYMENTS INCLUDED WITHIN THE LIMIT OF LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that:

**A.** Under SECTION I – COVERAGES COVERAGE **A** BODILY INJURY AND PROPERTY DAMAGE LIABILITY

Item **1.a.(2)** is deleted in its entirety and replaced by the following:

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments, settlements or Supplementary Payments under Coverages **A** or **B** or medical expenses under Coverage **C.**

**B.** Under SECTION I – COVERAGES COVERAGE **B** PERSONAL AND ADVERTISING INJURY LIABILITY

Item **1.a.(2)** is deleted in its entirety and replaced by the following:

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments, settlements or Supplementary Payments under Coverages **A** or **B** or medical expenses under Coverage **C.**

**C.** Under SUPPLEMENTARY PAYMENTS – COVERAGES **A** AND **B**

The following sentence is deleted in its entirety:

These payments will not reduce the limits of insurance.

And is replaced by the following:

These payments will reduce the limits of insurance.

**D.** SECTION III – LIMITS OF INSURANCE is deleted in its entirety and replaced by the following:

SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

**c.** Damages under Coverage **B**; and

**d.** Supplementary Payments.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages, including Supplementary Payments, because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages, including Supplementary Payments, because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A**;

**b.** Medical expenses under Coverage **C**;

**c.** Supplementary Payments;

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages, including Supplementary Payments, because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

AD 66 69 09 05

Page 1 of 2

7.  Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

AD 66 69 09 05

Policy Number: CA000036628-01

**AD 66 76 04 10**

Effective Date: 11/12/2019

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Sub-Limits of Insurance:

$1,000,000    Each Occurrence (included in Each Occurrence Limit shown in the Declarations)
$1,000,000    Aggregate (included in General Aggregate Limit shown in the Declarations)

The Sub-Limits of Insurance shown above are included within and not in addition to the Each Occurrence Limit and the General Aggregate Limit shown in the Declarations.

Insurance is provided only with respect to those coverages for which a specific premium charge is shown:

| Coverage | Additional Premium |
|---|---|
| Non-Owned Auto Liability | Included |
| Hired Auto Liability | Included |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A. HIRED AUTO LIABILITY**

The insurance provided under COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** - Coverages) applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

**B. NON-OWNED AUTO LIABILITY**

The insurance provided under COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** - Coverages) applies to "bodily injury" or "property damage" arising out of the use of a "non-owned auto" by any person other than you in the course of your business.

**C.** With respect to the insurance provided by this endorsement:

1. Subparagraphs **b., c., e., g., h., j., k., l., m.** and **n.** of paragraph **2.**, Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** - Coverages) do not apply.

2. The following exclusions are added to paragraph **2.**, Exclusions of COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** - Coverages):

This insurance does not apply to:

**a.** "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

**b.** "Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay the damages because of the injury.

This exclusion does not apply to:

**(1)** Liability assumed by the insured under an "insured contract"; or

**(2)** "Bodily Injury" to domestic "employees" not entitled to workers' compensation benefits.

**c.** "Property damage" to:

**(1)** Property owned or being transported by, or rented or loaned to the insured; or

**(2)** Property in the care, custody or control of the insured.

**D.** For the purposes of this endorsement only, WHO IS AN INSURED (Section II) is replaced by the following:

Each of the following is an insured under this insurance to the extent set forth below:

**1.** You.

**2.** Any other person using a "hired auto" with your permission.

**3.** With respect to a "non-owned auto", any partner or "executive officer" of yours, but only while such "non-owned auto" is being used in your business.

**4.** Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under paragraphs **1.**, **2.** or **3.** above.

None of the following is an insured:

**1.** Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-employee of such person injured in the course of employment;

**2.** Any partner or "executive officer" with respect to any "auto" owned by such partner or officer or a member of his or her household;

**3.** Any person while employed in or otherwise engaged in performing duties related to the conduct of an "auto business", other than an "auto business" you operate;

**4.** The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of any such owner or lessee;

**5.** Any person or organization with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**E.** For the purposes of this endorsement only, the definition of "insured contract" in the DEFINITIONS Section is amended by the addition of the following:

**6.** "Insured contract" means:

**g.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

**F.** For the purposes of this endorsement only, the following definitions are added to the DEFINITIONS Section:

**1.** "Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

**2.** "Hired auto" means any "auto" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", your partners or your "executive officers", or members of their households.

**3.** "Non-owned auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes "autos" owned by your "employees", your partners or your "executive officers", or members of their households, but only while used in your business or your personal affairs.

G. With respect to the insurance provided by this endorsement only, our right and duty to defend ends when we have used up the applicable sub-limit of insurance in the payment of judgments or settlements or Supplementary Payments under the insurance provided by this endorsement.

H. With respect to the insurance provided by this endorsement only, the amount we will pay for damages is limited as described below with respect to damages covered by this endorsement:

1. The Each Occurrence Limit shown above is the most we will pay for the sum of all damages because of "bodily injury" and "property damage" arising out of any one "occurrence";

2. The Aggregate Limit shown above is the most we will pay for the sum of all damages because of "bodily injury" and "property damage";

3. Supplementary Payments will reduce the Each Occurrence and Aggregate Limits of Insurance shown above; and

4. All sums we pay for damages or Supplementary Payments will reduce the Each Occurrence and General Aggregate Limit shown in the Declarations.

Policy Number: CA000036628-01

**AD 67 48 05 11**

Effective Date: 11/12/2019

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# INTELLECTUAL PROPERTY EXCLUSION
## (AMENDED DEFINITION OF PERSONAL AND ADVERTISING INJURY)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

I.  SECTION I – COVERAGES – COVERAGE **B** PERSONAL AND ADVERTISING INJURY LIABILITY Exclusion **i.** is deleted in its entirety and replaced by the following:

  **i.**  "Personal and advertising injury" arising out of:

  **(1)**  Any infringement, disparagement, dilution or diminution of or damage to:

  **(a)**  Copyright, slogan or title;

  **(b)**  Patent;

  **(c)**  Trademark, service mark, service name, collective mark or certification mark, including without limitation any word, name, symbol, device or any combination thereof used to identify or distinguish the origin of a good, product or service;

  **(d)**  Trade secret or practice;

  **(e)**  Trade dress, including without limitation any shape, color, design or appearance used to distinguish the origin of a good, product or service;

  **(f)**  Advertising ideas, concepts, campaigns, or style of doing business; or

  **(g)**  Any other proprietary property rights or intellectual property rights recognized or implied by law.

  **(2)**  Any false designation of the origin of a good, product or service.

  **(3)**  Any deceptive, false, fraudulent, misleading, unfair, unlawful or untrue business act or practice.

II.  The definition of "personal and advertising injury" in the DEFINITIONS section of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM is deleted in its entirety and replaced by the following:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.**  False arrest, detention or imprisonment;

  **b.**  Malicious prosecution;

  **c.**  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.**  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

  **e.**  Oral or written publication of material that violates a person's right of privacy.

Policy Number: CA000036628-01

**AD 67 50 05 08**

Effective Date: 11/12/2019

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FORMALDEHYDE EXCLUSION (ABSOLUTE)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART

This insurance does not apply to liability, injury or damages of any kind, to include but not limited to "bodily injury", "property damage" and "personal and advertising injury", including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with the manufacturing, handling, distribution, sale, application, consumption or use of any product which:

a. Is known as formaldehyde;

b. Contains formaldehyde;

c. Has the same chemical formulary as formaldehyde;

d. Is a formaldehyde derivative;

e. Is a formaldehyde resin or plastic, including but not limited to urea-formaldehyde, phenol-formaldehyde, resorcinol-formaldehyde and melamine-formaldehyde; or

f. Is generally known in the trade in which it is used as having a like formulation, structure or function as formaldehyde, by whatever name manufactured, sold or distributed.

It is further agreed that for any claim made or "suit" brought which is excluded under the terms of this endorsement, the Company shall not have the obligation to defend, adjust, investigate or pay any cost for investigation, defense, attorney fees or adjustment arising out of such claims.

Policy Number: CA000036628-01

**AD 67 60 04 15**

Effective Date: 11/12/2019

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PREMIUM BASIS DEFINITION – GROSS SALES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

When used as a Premium Basis, the following definition applies.

**Gross Sales**

1.  **Definition**

    Gross Sales means the gross amount charged by the named insured, concessionaires of the named insured or by others trading under the insured's name for:

    a.   All goods or products sold or distributed.

    b.   Operations performed during the policy period.

    c.   Rentals.

    d.   Dues or fees.

2.  **Inclusions**

    The following items shall not be deducted from gross sales:

    a.   Foreign exchange discounts.

    b.   Freight allowance to customers.

    c.   Total sales of consigned goods and warehouse receipts.

    d.   Trade or cash discounts.

    e.   Bad debts.

    f.   Repossession of items sold on installments (amount actually collected).

3.  **Exclusions**

    The following items shall be deducted from gross sales:

    a.   Sales or excise taxes which are collected and submitted to a governmental division.

    b.   Credits for repossessed merchandise and products returned.  Allowances for damaged and spoiled goods.

    c.   Finance charges for items sold on installments.

    d.   Freight charges on sales if freight is charged as a separate item on customer's invoice.

    e.   Royalty income from patent rights or copyrights which are not product sales.

    f.   Rental receipts for products liability coverage only.

Policy Number: CA000036628-01

AD 68 67 01 10

Effective Date: 11/12/2019

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WORLDWIDE COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A. Amended Definition of Coverage Territory**

The Definition of "coverage territory" shown in the Coverage Form is deleted in its entirety and replaced by the following:

"Coverage territory" means anywhere in the world except any location that is subject to trade or other economic sanctions or embargo by the United States of America, or where coverage is otherwise prohibited by the United States Office of Foreign Assets Control.

**B. Suits Outside of the United States of America, Puerto Rico and Canada**

If a "suit" is brought outside of the United States of America (including its territories and possessions), Puerto Rico or Canada, the following shall apply:

1. We will have the right but not the duty to defend the claim or "suit".

2. The insured will initiate a defense of the claim or "suit" in accordance with the following conditions:

   a. We retain the right to assume and control the investigation, adjustment or defense of any claim or "suit" at any time.

   b. In the event we do not exercise our right or are prevented from doing so because we are not licensed or permitted by law in the applicable jurisdiction to defend the insured, we will reimburse the insured under Supplementary Payments for any reasonable and necessary expenses incurred for the investigation of a claim or defense of a "suit" seeking damages to which this insurance applies, that we would have paid had we exercised our right to defend. No such expenses shall be paid by any insured without our prior written consent.

**C. Payment of Sums Outside of the United States of America, Puerto Rico and Canada**

1. If the insured becomes legally obligated to pay sums because of damages to which this insurance applies in a part of the "coverage territory" outside of the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented from paying such sums and associated expenses, if applicable, because we are not licensed or permitted by law in the applicable jurisdiction to pay such sums on the insured's behalf, we will reimburse the insured for such sums to the extent permitted by law.

2. The premium and all payments or reimbursements we make for damages because of judgments or settlements are payable when due in United States currency unless otherwise specified in the Declarations. If judgment is rendered, settlement is made or another element of sums paid for damages or expenses under Supplementary Payments is stated in a currency other than United States currency, then payment under this insurance shall be made in the currency stated in the Declarations at the prevailing rate of exchange as published on OANDA.com as of the date payment is made. In no event shall we pay more than the Limits of Insurance shown in the Declarations.

**D. Coverage Disputes**

1. Any disputes between you and us as to whether there is coverage under this insurance must be filed in the courts of the United States of America (including its territories and possessions), Puerto Rico or Canada.

**E. Compulsory Coverage**

The insured must fully maintain any coverage required by law, regulation or other governmental authority during the policy period, except for reduction of the aggregate limits due to payments of claims, judgments or settlements.

**1. No Substitute for Compulsory Coverage**

This insurance is not a substitute for any insurance coverage that is required by law, regulation or other governmental authority that is required to be in force to satisfy the legal requirements of a given jurisdiction.

**2. Failure to Maintain Compulsory Coverage**

Failure to maintain such coverage required by law, regulation or other governmental authority will not invalidate this insurance; however, this insurance will apply as if the coverage required by law, regulation or other governmental authority was in full effect.

**F. Excess Coverage**

SECTION **IV** - CONDITIONS - Paragraph **4.** Other Insurance is amended to include the following:

Notwithstanding any other provision in this Policy to the contrary, if the insured becomes legally obligated to pay damages to which this insurance applies as determined in a claim made or "suit" brought outside of the United States of America (including its territories and possessions), Puerto Rico or Canada, then the amount we will pay for all damages and associated expenses under Supplementary Payments, if applicable, that are otherwise covered under this insurance is excess over:

**1.** Any other insurance, whether such insurance is written on a primary, excess, contingent or on any other basis, unless such insurance is specifically written as excess insurance over the Limits of Insurance shown in the Declarations;

**2.** Any self-insured retention or deductible provided by the insurance referenced in Paragraph **F.1.** above; and

**3.** Where the insured has failed to maintain the compulsory coverage required by law as referenced in Paragraph **E.** above, the limits of such insurance which should have been maintained had the insured satisfied the compulsory insurance requirements.

**G. Additional Duties**

The terms and conditions of this insurance are amended in accordance with the language of this endorsement. All terms and conditions of this insurance shall otherwise apply, including but not limited to the following:

**1.** The insured's duties in the event of an "occurrence", offense, claim or "suit" set forth in SECTION **IV** - CONDITIONS shall apply, except that we shall have the right but not the duty to investigate a claim or defend a "suit".

**2.** In no event shall the insured, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3.** In no event shall the insured admit liability or settle any claim or "suit" without our consent.

Policy Number: CA000036628-01

AD 69 68 06 19

Effective Date: 11/12/2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MARIJUANA EXCLUSION
## (WITH EXCEPTION FOR INDUSTRIAL HEMP)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

1.  The following exclusion is added:

    This insurance does not apply to "bodily injury" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

    a.  The design, manufacture, distribution, sale, serving, furnishing, use or possession of "marijuana";

    b.  The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "marijuana".

    This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by any insured, if the "occurrence" which caused the "bodily injury", or the offense which caused the "personal and advertising injury", involved that which is described in the Paragraph above.

2.  The following definitions are added to the Definitions section:

    a.  "Marijuana":

        (1)  Means any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic.

        (2)  Paragraph 2.a.(1) above includes, but is not limited to, any of the following containing such THC or cannabinoid:

            (a)  Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

            (b)  Any compound, byproduct, extract, salt, derivative, mixture, preparation or combination, such as, but not limited to: (i) resin, oil or wax; (ii) hash or hemp; or (iii) infused liquid or edible marijuana; whether or not derived from any plant or part of any plant set forth in Paragraph 2.a.(2)(a) above.

        "Marijuana" does not mean "industrial hemp".

    b.  "Industrial hemp" means any part of the cannabis plant that has no more than 0.3 percent of THC on a dry weight basis.

Policy Number: CA000036628-01                                             **AI 44 02 05 19**

Effective Date: 11/12/2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# SERVICE OF SUIT

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other Officer specified for that purpose in the Statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, **suit** or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the below named as the person to whom the said Officer is authorized to mail such process or a true copy thereof.

It is further agreed that service of process in such **suit** may be made upon Janet Shemanske, or her nominee of the Company at 7233 East Butherus Drive, Scottsdale, Arizona 85260, and that in any **suit** instituted against the Company upon this policy, it will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.  Nothing herein shall constitute a selection or designation of forum, or a waiver of any of the Company's rights to select a forum or court, including any of the federal courts of the United States.  This includes any right to commence an action in or remove or transfer an action to the United States District Court or any other court of competent jurisdiction, as permitted by law.

Further, pursuant to any statute of any state, territory or district of the United States of America or province of Canada, which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, **suit** or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of this contract of insurance, and we hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

Policy Number: CA000036628-01                                                    **AI 66 70 10 11**

Effective Date: 11/12/2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** Paragraph **2.** of Cancellation **COMMON POLICY CONDITIONS** is replaced by the following:

   **2.** **Cancellation For Policies In Effect 90 Days Or Less**

      **a.** If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

         **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

         **(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

            **(a)** A material misstatement or misrepresentation; or

            **(b)** A failure to comply with underwriting requirements established by the insurer.

**B.** The following is added to **Cancellation COMMON POLICY CONDITIONS**:

   **7.** **Cancellation For Policies In Effect For More Than 90 Days**

      **a.** If this policy has been in effect for more than 90 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

         **(1)** 10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

         **(2)** 45 days before the effective date of cancellation.

**C.** The following is added and supersedes any provision to the contrary:

   **Nonrenewal**

   **1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least 45 days prior to the expiration of the policy.

   **2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**D.**  As used in this endorsement, the term "nonpayment of premium" means the failure of the Named Insured to discharge when due any of his or her obligations in connection with the payment of premiums on a policy or an installment of such a premium, whether the premium or installment is payable directly to the insurer or its agent or indirectly under any plan for financing premiums or extension of credit or the failure of the Named Insured to maintain membership in an organization if such membership is a condition precedent to insurance coverage.  The term also includes the failure of a financial institution to honor the check of an applicant for insurance which was delivered to a licensed agent for payment of a premium, even if the agent previously delivered or transferred the premium to the insurer.

If a correctly dishonored check represents payment of the initial premium, the contract and all contractual obligations are void ab initio unless the nonpayment is cured within the earlier of 5 days after actual notice by certified mail is received by the applicant or 15 days after notice is sent to the applicant by certified mail or registered mail, and, if the contract is void, any premium received by the insurer from a third party shall be refunded to that party in full.