# EXHIBIT C



**HINSHAW & CULBERTSON LLP**
**Attorneys at Law**
One East Broward Boulevard
Suite 1010
Ft. Lauderdale, FL 33301

954-467-7900
954-467-1024 (fax)
**www.hinshawlaw.com**

Rory Eric Jurman
954-375-1141
rjurman@hinshawlaw.com

June 30, 2020

<u>**VIA EMAIL**</u>
Mr. Kevin Tellado
Vprart LLC
7262 NW 33rd Street
Miami, FL 33122
vaporartillery@gmail.com

|  |  |  |
|---|---|---|
| Re: | Named Insured: | **Vprart LLC** |
|  | Claimant(s): | **Erin and Patrick Gilbert** |
|  | Claim No.: | **A000000033050** |
|  | Policy No.: | **74MP000554-0** |
|  | Issuing Company: | **Admiral Insurance Company** |
|  | <u>Our Matter No.:</u> | <u>**1032448**</u> |

Dear Mr. Tellado:

      We have been retained as coverage counsel by Admiral Insurance Company ("Admiral") in connection with a products liability suit entitled *Erin Gilbert and Patrick Gilbert, Individually and as Natural Parents and Guardians of their Minor Children, F.G., H.G., and P.G. v. Just CBD LLC, et al.*, Case No. 062019CA020275AXXXCE, in the Circuit Court for the Seventeenth Judicial Circuit In and For Broward County, Florida ("the Lawsuit").  Plaintiffs Erin Gilbert and Patrick Gilbert ("Plaintiffs") filed an original complaint on September 25, 2019 against defendants Just CBD LLC, Just Brands USA, Inc., Just Brands FL LLC, Speedy Distribution Group Inc., S&H World Holdings LLC, SSGI Financial Services Inc., and Best Wellness USA LLC ("Defendants"). Plaintiffs filed an Amended Complaint on March 20, 2020 ("Amended Complaint"), adding defendant VPRART LLC (d/b/a VaporAttillery) ("Vprart").  The purpose of this letter is to advise Vprart as to Admiral's coverage position relative to the Lawsuit.  It is my understanding that all correspondence relating to insurance coverage for Vprart should be directed to you.  If this understanding is not correct, please forward this letter to the appropriate person and advise me immediately.

      The Amended Complaint alleges that Ms. Gilbert suffered permanent and catastrophic bodily injuries after purchasing and consuming a CBD vaping product in August 2019 that was allegedly designed, manufactured, labeled, tested, marketed, sold and/or distributed by the Defendants, including defendant Vprart.  The Amended Complaint alleges that Vprart is a Florida limited liability company that "designs, manufactures, markets and/or globally distributes Just CBD brand products including, upon information and belief, the Just CBD product at issue in this litigation."  Plaintiffs assert that Vprart and Defendants negligently designed, manufactured, and/or labeled the Just CBD Mango product that Ms. Gilbert purchased.  Plaintiffs also assert strict liability and loss of consortium claims.

Admiral Insurance Company ("Admiral") issued Commercial Lines Policy no. CA000036628-01 to named insured Vprart LLC ("Vprart") for the policy period of November 12, 2019 to November 12, 2020, with $1,000,000 each occurrence, $2,000,000 products-completed operations aggregate, and $2,000,000 general aggregate limits (the "Policy"). The Policy has a retroactive date of November 12, 2019 that applies to all potentially implicated coverages.

For the reasons set forth below, Admiral owes no obligation to defend or indemnify Vprart in connection with the Lawsuit. Admiral reserves the right to supplement this coverage position. Admiral has included pertinent policy language from multiple portions of the Policy in this letter. Although we have attempted to include all of the policy provisions that we believe are pertinent to this matter, the provisions set forth in this letter in no way replace the provisions of the actual Policy. If you have any questions regarding the terms, definitions, exclusions, conditions, endorsements and/or limits of liability contained in the Policy, please refer to the Policy itself. The Policy is incorporated by reference into this coverage position letter in its entirety.

Please understand that Admiral's evaluation is based on its understanding of the facts and the information available to it. If you have any additional information that you believe merits reconsideration of Admiral's position, please submit it to the undersigned for review and consideration as soon as possible. Furthermore, we recognize that the allegations of wrongdoing made by Plaintiffs are unsubstantiated at this time and nothing contained in this letter is meant to suggest that those allegations have any legal or factual merit.

## FACTUAL BACKGROUND

Plaintiffs allege that e-cigarettes or vaporizers ("vapes") are handheld, battery-powered devices that use a heating mechanism to create an inhalable aerosol from a pod or cartridge filled with vape liquid or oil. (Amended Complaint, ¶ 15). Plaintiffs allege that vapes can be used with detachable or built-in pods or cartridges containing nicotine/tobacco, CHO or tetrahydrocannabinol ("THC"), the active ingredient in marijuana. (Amended Complaint, ¶ 16). While vapes are not regulated by the federal government, the United States Food and Drug Administration and the Centers for Disease Control launched an investigation on August 18, 2019 "after learning of more than 94 reports since June 2019 of severe pulmonary disease associated with vaping across several states and U.S. territories." (Amended Complaint, ¶ 18). According to the Amended Complaint, as of February 18, 2020, a total of 2,807 individuals in 50 U.S. states, the District of Columbia, Puerto Rico and the U.S. Virgin Islands have suffered acute respiratory illnesses associated with vaping. (Amended Complaint, ¶ 19). Plaintiffs allege that dozens of published studies and case reports confirm vaping can cause severe acute respiratory illness. (Amended Complaint, ¶ 20). According to the Plaintiffs, numerous studies have also linked respiratory injuries to the toxicity of artificial flavoring ingredients or additives, some of which may be safe for ingestion but have never been tested for safety risks associated with inhalation in vaping products. (Amended Complaint, ¶ 23).

Plaintiffs allege that CBD is a popular, naturally-occurring ingredient derived from hemp plants unofficially used to manage certain conditions such as anxiety, depression, insomnia, and chronic pain. (Amended Complaint, ¶ 24). CBD products come in many forms, including vaping oils, edibles, tinctures, and creams. (Amended Complaint, ¶ 25). According to the Amended Complaint, CBD contains less than 0.3% THC. (Amended Complaint, ¶ 26).

Plaintiffs allege that Ms. Gilbert suffered bodily injuries as a result of using Defendants' "Just CBD" vape product in August 2019. According to the Amended Complaint, Defendants market their "Just CBD" vape products as a 100% safe way to increase acuity and combat stress on a daily basis. Defendants claim "[u]sers are known to feel more attentive to their surroundings. CBD vape juice for cartridges is often considered a 'huge relief felt throughout the body, as well as the mind." (Amended Complaint, ¶ 30). Plaintiffs allege that Defendants misrepresent the health risks of their Just CBD vape products by failing to include any warnings in the product labeling or elsewhere in their marketing materials regarding the risk of acute respiratory injury. (Amended Complaint, ¶ 31).

Defendants further misrepresent and downplay health risks of their Just CBD vape products by telling customers "our range of flavors include strawberry, blueberry, mango, and honey. Each flavor will bring you back to your favorite memory. Everything will be just fine after a couple of hits of the CBD oil. Get back to feeling the way you should be!" (Amended Complaint, ¶ 32). Further, Plaintiffs allege Defendants misrepresent their products by falsely claiming that "Just CBD was founded on the basis to offer the purest CBD vape oil cartridges and CBD products. We believe you have the right to know exactly what is inside your CBD products. Our mission and promise to never misrepresent the content of our products. All our products have been rigorously tested by World Class labs, and we are confident that all CBD pen cartridges and vape oil cartridges are made with the purest quality CBD oil, we stand behind all the products we sell." (Amended Complaint, ¶ 33).

Plaintiffs allege, upon information and belief, that Defendants performed inadequate testing, or no testing at all, to assess the safety of their Just CBD vape cartridges, including Just CBD Mango. (Amended Complaint, ¶ 34). According to the Amended Complaint, upon information and belief, Defendants performed inadequate testing, or no testing at all, to assess the safety of the artificial flavoring or additives in Just CBD vape cartridges, including Just CBD Mango, and in particular flavoring ingredients which may be safe for ingestion but have never been tested for safety risks associated with inhalation in vaping products. Plaintiffs further allege, upon information and belief, that Defendants' Just CBD vape cartridges, including Just CBD Mango, contain harmful toxins, artificial flavorings, additives, contaminants and/or other presently unknown chemicals or chemical compounds that can cause catastrophic acute respiratory injury when used as directed. (Amended Complaint, ¶ 35).

Plaintiffs allege that on or about August 15, 2019, Plaintiff, Erin Gilbert, purchased a Just CBD Mango flavored 200mg vape cartridge ("Just CBD Mango") for the first time from a local vendor in St. Croix in the U.S. Virgin Islands. (Amended Complaint, ¶ 38). Ms. Gilbert vaped Just CBD Mango daily from August 15, 2019 through and including August 18, 2019. (Amended Complaint, ¶ 39). On August 19, 2019, Ms. Gilbert, presented to the emergency department at Juan F. Luis Memorial Hospital and Medical Center in St. Croix with unexplained fevers, shortness of breath, cough, vomiting and diarrhea. (Amended Complaint, ¶ 40). According to the Amended Complaint, Ms. Gilbert's condition worsened and on August 22, 2019, she was airlifted to Jackson Memorial Hospital in Miami. (Amended Complaint, ¶¶ 41-44). Upon arrival at Jackson Memorial Hospital in Miami, Ms. Gilbert was in a paralyzed state with acute respiratory distress and multiorgan failure, including acute kidney injury, acute liver injury, and lactic acidosis. (Amended Complaint, ¶ 45). Surgery was unable to prevent "progressive necrosis in her lower extremities." (Amended Complaint, ¶ 46).

According to the Lawsuit, Ms. Gilbert underwent amputations to both legs in August and September of 2019. (Amended Complaint, ¶¶ 47-51). Specifically:

On August 25, 2019, Ms. Gilbert underwent cryomnputation of non-viable segments of her right leg.

On August 27, 2019, Ms. Gilbert underwent a right knee disarticulation in preparation for amputation.

On or about September 3, 2019, Ms. Gilbert was weaned off life support and underwent placement of a tracheostomy tube for respiratory function.

On September 6, 2019, Ms. Gilbert underwent a transmetatarsal amputation of her right leg from above the knee and a left leg debridement with closure of left leg fasciotomies.

On September 23, 2019, Ms. Gilbert underwent a transmetatarsal below the knee amputation of her left leg due to extreme necrosis.

Plaintiffs allege that Ms. Gilbert has been fitted with a prosthetic right knee and bilateral prosthetic legs and continues outpatient physical therapy and periodic fittings to adjust her prosthetics. (Amended Complaint, ¶ 53). Plaintiffs allege that "[a]fter ruling out any infectious (bacterial, viral or fungal) cause, Ms. Gilbert's treating physicians attributed each of her catastrophic injuries to vaping." (Amended Complaint, ¶ 54).

Plaintiffs allege that as a direct and proximate result of Defendants' negligence and liability producing conduct as described herein, Ms. Gilbert, a previously healthy 35-year-old mother of three young children, suffered catastrophic permanent injuries and disfigurement, including but not limited to, bilateral pneumonia, acute respiratory distress syndrome, septic shock, acute kidney injury, acute liver injury, multiple cardiac arrests, septic emboli to bilateral legs, right leg amputation from above the knee and left leg amputation from below the knee. (Amended Complaint. ¶ 55).

Plaintiffs assert eight claims against all Defendants: Count I (Strict Liability – Design Defect); Count II (Negligent Design); Count III (Manufacturing Defect); Count IV (Negligent Manufacturing); Count V (Strict Liability – Warning Defects); Count VI (Negligence – Warning Defects); Count VII (Loss of Spousal Consortium); and Count VIII (Loss of Parental Consortium). The Prayer for Relief seeks "all damages recoverable under law, including for (a) bodily injury and any resulting pain and suffering, disability, or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experience in the past are to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained the past were to be so obtained in the future; and (c) any earnings or working time lost in the past and any loss of ability to earn money in the future." Further, Plaintiffs seek interest, costs of suit, attorney's fees, and demand a jury trial.

# THE POLICY

Admiral Insurance Company ("Admiral") issued commercial general liability policy no. CA000036628-01 to named insured Vprart LLC for the policy period of November 12, 2019 to November 12, 2020, with $1,000,000 each occurrence, $2,000,000 products-completed operations aggregate, and $2,000,000 general aggregate limits (the "Policy"). The Policy declarations identify Vprart's business as "Contract MFG for Cosmetics and CBD."

The Policy potentially provides coverage pursuant to Coverage A, set forth in Commercial General Liability Coverage Form (CG 00 02 04 13), and Coverage D, set forth in Health, Nutrition & Lifestyle Coverages – Health Nutrition and Lifestyle Professional Liability Insurance Coverage Claims-Made Coverage (Form NR 00 02 07 19). None of the other Policy coverages are potentially implicated by the Lawsuit.

Coverage D of the Policy is set forth in Health, Nutrition & Lifestyle Coverages – Health Nutrition and Lifestyle Professional Liability Insurance Coverage Claims-Made Coverage (Form NR 00 02 07 19), which provides as follows:

**ADDITIONAL DECLARATIONS SCHEDULE**

| Limits Of Insurance | |
|---|---|
| Each Claim Limit - Including Claims Expenses (Payments from this limit reduce the Each Occurrence Limit shown in the Declarations) | $ 100,000 |
| Aggregate Limit for All Claims - Including Claims Expenses (Payments from this limit reduce the General Aggregate Limit shown in the Declarations) | $ 250,000 |
| **Deductible** | |
| Applicable to Each Claim (Payments under this deductible reduce the General Aggregate Limit shown in the Declarations) | $ 2,500 |
| **Coverage Retroactive Date** | |
| Retroactive Date applicable to this coverage: 11/12/2019 | |

Except to the extent coverage is afforded under COVERAGE D - PROFESSIONAL LIABILITY below, this insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or damages of any kind, including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with past, present or future claims or "suits" arising in whole or in part, either directly or indirectly, out of the rendering of or the failure to render any professional service by or on behalf of any insured.

COVERAGE D - PROFESSIONAL LIABILITY COVERAGE D - I. INSURING AGREEMENTS

A. We will pay on behalf of the Named Insured those amounts which the Named Insured is legally obligated to pay as damages caused by a professional incident taking place within the "coverage territory" and occurring in its entirety after the Retroactive Date shown in the ADDITIONAL DECLARATIONS SCHEDULE above and before the end of the policy period, for which a claim is first made against

5

the Named Insured during the policy period or any extended reporting period we provide.

B. We have the right and duty to defend any claim brought against the Insured seeking damages caused by a professional incident to which this coverage applies, including the right to appoint counsel to defend the Insured, and will do so even if any of the allegations of the claim are groundless, false or fraudulent. We may make such investigation of any claim as we deem expedient. Our right and duty to defend ends when we have used up the applicable Limits of Insurance in the payment of damages and/or claim expenses, or have tendered the applicable Limits of Insurance to a court of competent jurisdiction. We have no obligation or duty under this coverage to defend any claim for which coverage is excluded hereunder or not otherwise afforded by this coverage and we are not obligated hereunder to pay any claim expenses incurred by the Insured in the defense of any claim not covered by this coverage

******

COVERAGE D - II. DEFINITIONS

A. Advertisement means: A notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

2. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

B. Claim means:

1. A written demand for money or services received by any Insured resulting from a professional incident.

2. Service of suit against an Insured.

Claim includes Related Claims. Related Claims means two or more claims arising out of a professional incident or professional incidents that are logically or causally connected.

******

D. Damages means a monetary and compensatory judgment, award or settlement. However, damages shall not include:

    1. Any damages, which are a multiple of compensatory damages, taxes or fees;

    2. Amounts the Insured is required to pay or return as restitution;

    3. Fines, penalties, sanctions, taxes or fees, assessed against the Insured;

    4. Judgments or awards arising from acts deemed uninsurable by law;

    5. Fees or charges, including over-charges or cost overruns incurred by any Insured;

    6. Collecting fees of an Insured from a third party;

    7. The return of fees or other compensation paid to an Insured;

    8. Non-pecuniary relief.

******

H. Professional Incident means a negligent act, error or omission in the rendering of or failure to render professional services by the Named Insured or a person acting under the Named Insured's direction, control or supervision and for whose acts, errors or omissions the Named Insured is legally liable. All professional incidents that are logically or causally connected will be deemed one professional incident that, for the purpose of determining coverage under this policy, occurred at the time of the earliest act, error or omission. Professional Incident also means "occurrence" for claim reporting purposes.

I. Professional Services means only the following services performed by the Named Insured for the Named Insured's goods or products:

    1. Design of ingredient formulations; and

    2. Development of:

        a. Label usage and dosage information;

        b. Packaging descriptions of product dosage and usage information.

Professional Services do not include any services performed by the Named Insured which actually or allegedly result in the failure of goods, products or services to conform with any statement of quality or performance made in any advertisement, or in the violation of any false advertising, unfair business practices, unfair trade practices or unfair competition law or regulation

******

COVERAGE D - III. EXCLUSIONS

This coverage does not apply to:

\*\*\*\*\*\*

G. Any **claim** based upon or arising out of, directly or indirectly, in whole or in part, "bodily injury", "property damage", or "personal and advertising injury";

\*\*\*\*\*\*

R. Any **claim** based upon or arising out of, in whole or in part, directly or indirectly, the failure of goods, products or services to conform with any statement of quality or performance made in any **advertisement**.

\*\*\*\*\*\*

There is no coverage for the Lawsuit under Coverage D, because the Lawsuit does not involve a "professional incident" that occurred "in its entirety after the Retroactive Date shown in the ADDITIONAL DECLARATIONS SCHEDULE above," which is November 12, 2019. The Lawsuit was filed on September 25, 2019, nearly two months before the policy period. The Lawsuit alleges that Ms. Gilbert purchased and consumed Just CBD Mango in August 2019, which was designed, manufactured, and marketed by Defendants. The alleged "professional incident" here is the insured's alleged negligent design and labeling of the Just CBD Mango product, which could have taken place only prior to Ms. Gilbert purchasing and consuming the product in August 2019 and before Plaintiffs filed the Lawsuit in September 2019. Thus, the "professional incident" giving rise to the Lawsuit could not have taken place "in its entirety" after the retroactive date of November 12, 2019. Therefore, there is no coverage for the Lawsuit under Coverage D, Health, Nutrition & Lifestyle Coverages – Health Nutrition and Lifestyle Professional Liability Insurance Coverage Claims-Made Coverage (Form NR 00 02 07 19).

While the retroactive date language under Coverage D applies to preclude coverage for the Lawsuit, Admiral takes this opportunity to draw your attention to other Policy terms, conditions, and exclusions that may also apply to limit or preclude coverage for the Lawsuit under Coverage D. Admiral reserves its rights to disclaim coverage on the following grounds.

Specifically, even if the Lawsuit involved a "professional incident" that occurred "in its entirety after" the November 12, 2019 retroactive date (which it does not), there is no coverage for any punitive or exemplary damages under Coverage D, as "Damages" is defined to exclude these types of awards. While the Lawsuit seeks does not specifically seek punitive or exemplary damages, it seeks "all damages recoverable under law." Admiral reserves its rights to deny coverage to the extent punitive or exemplary damages or awarded.

Moreover, even if the Lawsuit involved a "professional incident" that occurred "in its entirety after" the November 12, 2019 retroactive date (which it does not), several exclusions apply to preclude coverage for the Lawsuit under Coverage D. Exclusion G. precludes coverage for "[a]ny **claim** based upon or arising out of, directly or indirectly, in whole or in part, 'bodily injury',

8

'property damage', or 'personal and advertising injury'," where "bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Because the Lawsuit arises out of Ms. Gilbert's alleged bodily injuries, Exclusion G. precludes coverage for the Lawsuit under Coverage D.

Further, Exclusion R. precludes coverage for "[a]ny **claim** based upon or arising out of, in whole or in part, directly or indirectly, the failure of goods, products or services to conform with any statement of quality or performance made in any **advertisement**." The Policy defines "advertisement" in relevant part as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." The Lawsuit expressly alleges that the Defendants, including Vprart, "designed, marketed, advertised, promoted, and labeled Just CBD Mango for the purpose of vaping" (Amended Complaint, ¶ 108; *see also* Amended Complaint, ¶ 121), and "created labeling, packaging, marketing materials, distribution materials, and sales materials including warnings for Just CBD Mango," (Amended Complaint, ¶ 109), and "breached their duty in the warnings contained in the labeling, marketing, distribution, advertising, promoting and/or selling of the Just CBD Mango (Amended Complaint, ¶ 120). (Emphases added). Further, Count VI of the Amended Complaint (Negligence – Warning Defects) expressly alleges that "as a direct and proximate result of Defendants' negligence in the labeling, marketing, distributing, advertising, promoting and/or selling Just CBD Mango, Plaintiff…was proximately harmed." (Amended Complaint, ¶ 125). (Emphasis added). Thus, there is no coverage under Coverage D to extent the Lawsuit is a "**claim** based upon or arising out of, in whole or in part, directly or indirectly, the failure of goods, products or services to conform with any statement of quality or performance made in any **advertisement**."

In addition, Exclusion O. provides that the Policy does not apply to:

> Any **professional incident**, condition, circumstance or event that is or was known to any insured prior to the earliest of the beginning of the policy period shown in the Declarations of this policy or the effective date of this coverage, whichever is later;

Admiral reserves its rights to disclaim coverage under Coverage D to the extent the insured knew about any "professional incident," condition, circumstance, or event prior to November 12, 2019.

Exclusion N. provides that Coverage D of the Policy does not apply to:

> N. Any **claim** based upon or arising out of, directly or indirectly, any **claim** or circumstance that is reported to any other insurer by any **Insured** prior to the effective date of this coverage

To the extent Vprart or another insured reported the Lawsuit, any claim, or circumstance to any other insurer prior to November 12, 2019, Exclusion N. applies to preclude coverage under Coverage D.

The Policy contains Exclusion B., which provides that Coverage D of the Policy does not apply to:

9

> B. Any **claim** based upon or arising out of, in whole or in part, directly or indirectly, a dishonest, fraudulent, criminal or malicious act;

While the Lawsuit alleges only negligence and strict liability claims, it contains allegations that Vprart "knew or should have known" and also seeks "all damages recoverable under law." To the extent it is determined that the Lawsuit is based upon or arising out of, in whole or in part, directly or indirectly, a dishonest, fraudulent, criminal or malicious act, Exclusion B. would apply to preclude coverage under Coverage D.

The Policy contains Exclusion K., which precludes coverage under Coverage D for:

> K. Any **claim** based upon or arising out of, in whole or in part, directly or indirectly, express warranties or guarantees…

The Lawsuit alleges claims based on the insured's failure to use proper labels that disclosed the risks associated with the Just CBD Mango product, as well as the insured's express statements about the product's quality, contents, and ingredients. To the extent it is determined that the Lawsuit is based upon or arising out of, directly or indirectly, the insured's express warranties or guarantees in its product labeling, Exclusion K. would apply to preclude coverage under Coverage D.

For the foregoing reasons, the Policy does not provide coverage for the Lawsuit under Coverage D, Health, Nutrition & Lifestyle Coverages – Health Nutrition and Lifestyle Professional Liability Insurance Coverage Claims-Made Coverage (Form NR 00 02 07 19). Admiral, thus, owes no duty to defend or indemnify Vprart under Coverage D in connection with the Lawsuit.

The Policy contains another potentially applicable coverage part, Coverage A, provided in the Commercial General Liability Coverage Form (CG 00 02 04 13):

> SECTION I – COVERAGES COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1. Insuring Agreement
>
>> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>>
>>> (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2)[1] Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments, settlements or Supplementary Payments under Coverages A or B or medical expenses under Coverage C.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

(3) A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph c. below, during the policy period or any Extended Reporting Period we provide under Section V – Extended Reporting Periods.

******

SECTION VI – DEFINITIONS

******

3.[2] "Bodily injury" means physical injury, physical sickness or physical disease sustained by any one person, including death resulting from any of these at any time. "Bodily injury" does not include shock or emotional, mental or psychological distress, injury, trauma or anguish, or other similar condition, unless such condition results solely and directly from that one person's prior physical injury, physical sickness or physical disease otherwise covered under this insurance.

******

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

******

The Policy contains Special Exclusions – Joint Form (Form AD 68 89 12 13), which contains the following Pre-Existing Damage Exclusion applicable to Coverage A of the Policy:

---

[1] As amended by Supplementary Payments Included Within the Limit of Liability endorsement (Form AD 66 69 09 05).
[2] As amended by Bodily Injury Redefined endorsement (Form AD 08 42 02 16).

11

PRE-EXISTING DAMAGE EXCLUSION

This insurance does not apply to:

1. Any damages arising out of or related to "bodily injury" or "property damage", whether such "bodily injury" or "property damage" is known or unknown,

(a) which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier); or

(b) which are, or are alleged to be, in the process of occurring as of the inception date of the policy (or the retroactive date of this policy, if any; whichever is earlier) even if the "occurrence" continues during this policy period.

******

The Policy does not provide coverage for the Lawsuit under Coverage A, because the Pre-Existing Damage Exclusion precludes coverage for "bodily injury" that is "in the process of occurring" as of the November 12, 2019 retroactive date of the Policy. According to the Amended Complaint, Ms. Gilbert was first hospitalized in August 2019, underwent leg amputations in September 2019, and allegedly continued to experience "bodily injury" after the retroactive date of November 12, 2019. The Amended Complaint, filed on March 20, 2020, alleges "bodily injury" that is in process of occurring as of the Policy's retroactive date of November 12, 2019, because it alleges that Ms. Gilbert, Mr. Gilbert, and their children continue to experience injuries related to Ms. Gilbert's amputations that took place prior to November 12, 2019. All of the alleged damages arise out of, or are related to, "bodily injury" that Ms. Gilbert first experienced in August 2019, when she was first hospitalized. Accordingly, the Pre-Existing Damage Exclusion contained within the Special Exclusions – Joint Form endorsement (Form AD 68 89 12 13), applies to preclude coverage for the Lawsuit under Coverage A. On this basis, Admiral owes no duty to defend or indemnify Vprart under Coverage A in connection with the Lawsuit.

While the Pre-Existing Damage Exclusion applies to preclude coverage for the Lawsuit under Coverage A, Admiral takes this opportunity to draw your attention to other Policy terms, conditions, and exclusions that may also apply to limit or preclude coverage for the Lawsuit under Coverage A. Admiral reserves its rights to disclaim coverage on the following grounds.

The Policy contains Known Event, Incident, Injury or Damage Exclusion endorsement (Form AD 07 43 12 11), which precludes coverage under Coverage A as follows:

This insurance does not apply to those sums that the insured becomes legally obligated to pay because of "bodily injury", "property damage" or "personal and advertising injury", to include all SUPPLEMENTARY PAYMENTS, arising out of:

(a) any "occurrence", claim, offense or "suit"; or

> (b) any event, incident, circumstance or condition that may reasonably be expected to result in an "occurrence", claim, offense or "suit"; or
>
> (c) any "bodily injury", "property damage" or "personal and advertising injury",
>
> if such "occurrence", claim, offense, "suit", condition, circumstance, event, incident, "bodily injury", "property damage" or "personal and advertising injury" is or was known to any insured prior to the earliest of the following dates:
>
> > (a) The beginning of the policy period shown in the Declarations of this policy; or
> >
> > (b) The beginning of "continuous claims-made coverage".
>
> "Continuous claims-made coverage" means coverage provided by claims-made policies issued by us to you that have been kept in force without interruption from the beginning of the policy period shown in the Declarations of the first such claims-made policy.

******

Similar to Exclusion O. applicable to Coverage D, this exclusion potentially applies to preclude coverage to the extent the insured knew about the Lawsuit, the negligent manufacture of Just CBD Mango, and/or Ms. Gilbert's injuries, prior to the retroactive date of November 12, 2019. Admiral reserves its rights to deny coverage under Coverage A based on the Known Event, Incident, Injury or Damage Exclusion endorsement (Form AD 07 43 12 11).

Coverage A contains Exclusion 2.a. Expected or Intended Injury, which states that the Policy does not apply to:

> a. Expected Or Intended Injury
>
> > "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Admiral reserve its rights to deny coverage based on Exclusion 2.a., to the extent it is determined that Vprart expected or intended the "bodily injury" alleged in the Amended Complaint.

The Policy contains Punitive Damages Exclusion endorsement (Form AD 66 01 07 15), which precludes coverage for punitive damages under Coverage A of the Policy as follows:

> This insurance does not apply to punitive or exemplary damages, in whatever form assessed, awarded against any insured.

******

13

Admiral reserves its rights to deny coverage to the extent punitive or exemplary damages are awarded.

Finally, the Policy contains Deductible Liability Insurance (Applicable to Indemnity and Expenses) (Form AD 66 11 05 11), which provides that the Policy is subject to a $5,000 per claim deductible for "bodily injury" claims. To the extent the Policy affords coverage for the Lawsuit (which it does not), Vprart is obligated to satisfy the deductible before Admiral owes any coverage obligation.

## **CONCLUSION**

As set forth above, there is no coverage for the Lawsuit under the Policy based on the retroactive date language of Coverage D, Health, Nutrition & Lifestyle Coverages – Health Nutrition and Lifestyle Professional Liability Insurance Coverage Claims-Made Coverage (Form NR 00 02 07 19), the Pre-Existing Damage Exclusion, contained within Special Exclusions – Joint Form (Form AD 68 89 12 13), and various other terms and exclusions of the Policy. Accordingly, Admiral owes no duty to defend or indemnify Vprart in connection with the Lawsuit.

Please advise me immediately of any information you have that you believe may affect the determination concerning the coverage available under the Policy. Admiral's position is based upon the facts that have been made available to us to date. Admiral expressly reserves the right to modify its determination concerning the potential for coverage. Nothing contained in this letter should be deemed a waiver of the terms or conditions of the Policy. Admiral expressly reserves the right to rely upon any term or condition of the Policy or any other ground which may be found to limit or preclude coverage.

If you have any questions regarding any aspect of this matter, please do not hesitate to contact me.

Very truly yours,

HINSHAW & CULBERTSON LLP

Rory Eric Jurman

REJ:mah