**EXHIBIT D**

**CONFIDENTIAL-FOR SETTLEMENT PURPOSES ONLY**

# ANAPOLWEISS

Sol H. Weiss, Esquire
One Logan Square
130 N. 18th Street, Suite 1600
Philadelphia, PA 19103
sweiss@anapolweiss.com
(215) 735-2098 Direct Dial
(215) 875-7701 Direct Fax

December 23, 2020

Via Email to thaber@haber-law.com
Tony A. Haber, Esq.
901 Ponce De Leon Boulevard
Suite 101
Coral Gables, FL 33134

**RE: Gilbert v. Just CBD LLC,** *et al.*

Dear Tony:

As discussed, we are providing our assessment of VPRART LLC's (d/b/a Vapor Artillery) ("Vapor Artillery") liability insurance policy with Admiral Insurance Company ("Admiral") bearing Policy Number CA000036628-01 and Admiral's June 30, 2020 denial of coverage letter.

**A. The Gilberts' Claims**

The Gilberts allege catastrophic personal injuries and permanent disfigurement, including bilateral pneumonia, acute respiratory distress syndrome, septic shock, acute kidney injury, acute liver injury, multiple cardiac arrests, septic emboli to bilateral legs, right leg amputation from above the knee and left leg amputation from below the knee resulting from Erin Gilbert's use of a Just CBD Mango vape cartridge designed, manufactured, marketed and/or sold by Vapor Artillery and its co-defendants. In addition to economic damages, damages for pain and suffering, emotional distress and loss of enjoyment of life, the Gilberts assert claims for loss of spousal and parental consortium due to the life changing injuries suffered by Erin Gilbert, a young and active wife and mother of three young children under the age of ten.

Erin Gilbert's treating physicians directly attribute her injuries to vaping. See e.g. Plaintiffs_000282 (Jackson Memorial Hospital Records)("■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■"); Plaintiffs_ 000293 (Jackson Memorial Hospital Records)("■■■■■■■■■■■

**CONFIDENTIAL-FOR SETTLEMENT PURPOSES ONLY**

Plaintiffs_007213 (Jackson PR Statement)("█████████████████████████
████████████████████████████████████████████████████████████
█████████████████.")

The discovery conducted to date reflects that neither Just Brands nor Just CBD produced Just CBD vape cartridges but rather outsourced production to Best Wellness and/or Vapor Artillery. Based on the discovery, including Just Brands' November 17, 2020 Interrogatory Responses, Plaintiffs have reason to believe that Vapor Artillery was involved in the design, manufacturing, or distribution of the Just CBD product at issue in this litigation.

### B. Vapor Artillery's Claim for Coverage under the Admiral Policy

The Admiral Policy, effective November 12, 2019 through November 12, 2020, is a "claims made" policy with a policy limit of $1,000,000 per occurrence, $2,000,000 products-completed operations aggregate, and $2,000,000 general aggregate. Coverage D of this Policy set forth in Health, Nutrition & Lifestyle Coverages provides limits for each claim of $100,000 and an aggregate limit for all claims of $250,000. *See* Admiral Policy at PDF pg. 12.

The Admiral Policy provides coverage for "damages caused by a professional incident taking place within the "coverage territory" and occurring in its entirety after the Retroactive Date.

> H. Professional Incident means a negligent act, error or omission in the rendering of or failure to render professional services by the Named Insured or a person acting under the Named Insured's direction, control or supervision and for whose acts, errors or omissions the Named Insured is legally liable.

*See Id.* at PDF pg. 14. "Professional Services" is defined as the following services performed by Admiral for Admiral's goods or products"

> 1. Design of ingredient formulations; and
>
> 2. Development of:
>
>> a. Label usage and dosage information;
>>
>> b. Packaging descriptions of product dosage and usage information.

*See Id.* at PDF pg. 14. Further, "Coverage territory" is defined as the United States (including its territories and possessions, Puerto Rico and Canada. *See Id.* at PDF pg. 51. The occurrence that gave rise to the Gilberts' claim took place in St. Croix, U.S. Virgin Islands, within the coverage territory.

The Admiral Policy contains a "Pre-Existing Damage Exclusion," which states the following:

> This insurance does not apply to:

**CONFIDENTIAL-FOR SETTLEMENT PURPOSES ONLY**

> 1. Any damage arising out of or related to "bodily injury" or "property damage", whether such "bodily injury" or "property damage" is known or unknown,
>
> (a) which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier); or
>
> (b) which are, or are alleged to be, in the process of occurring as of the inception date of the policy (or the retroactive date of this policy, if any; whichever is earlier) even if the occurrence continues during this policy period.

*See Id.* at PDF pg. 76.

### C. Admiral's Denial of Coverage and Refusal to Defend the Gilbert Claim

Admiral's denial of coverage and refusal to defend is based on the Policy's Health, Nutrition & Lifestyle Professional Liability Coverage and in large part Admiral's position that the Gilbert claim does not involve a "professional incident" that occurred "in its entirety after the Retroactive Date," which is November 12, 2019. *See* the June 30, 2020 denial letter, generally. The retroactive date and the beginning of the policy period are both November 12, 2019, rendering the "retroactive date" irrelevant.

As a "claims made" policy the determination of coverage is triggered by the date the Insured first becomes aware of the potential claim and notifies the insurer of such claim. Under Florida law, a claims-made policy is "a policy wherein the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy term. The essence, then, of a [claims-made] policy is notice to the carrier within the policy period." *Jennings Const. Servs. Corp. v. Ace Am. Ins. Co.,* 783 F. Supp. 2d 1209, 1213 (M.D. Fla. 2011); *see also Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So. 2d 512, 514 (Fla. 1983)("A claims-made policy is a policy "wherein the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy term."). "If the claim is reported to the insurer during the policy period, then the carrier is legally obligated to pay; if the claim is not reported during the policy period, no liability attaches." *Gulf Ins. Co.*, 433 So. 2d at 514.

The Admiral Policy states that a professional incident means "occurrence" for claim reporting purposes. *See* Admiral Policy at PDF pg. 14, section H of Coverage D. Also, under Coverage D, section B, a claim is defined as:

> 1. A written demand for money or services received by any Insured resulting from a professional incident.
>
> 2. Service of suit of an Insured.

*See Id.* at PDF pg. 13. A "suit" is further defined as a civil proceeding in which damages resulting from a professional incident are alleged. *See Id.* at PDF pg. 14, section J of Coverage D.

3

**CONFIDENTIAL-FOR SETTLEMENT PURPOSES ONLY**

The record reflects that the Gilberts filed an Amended Complaint on March 20, 2020 adding Vapor Artillery as a defendant to the action. On June 4, 2020, Vapor Artillery was served with the Amended Complaint and shortly thereafter notified Admiral of the Gilbert claim. Accordingly, both the inception of Plaintiffs' legal claims against Vapor Artillery and Vapor Artillery's submission of the Gilbert claim to Admiral occurred within the policy period.

The Admiral Policy is illusory because it gave Vapor Artillery the impression of coverage for claims made during the policy period while simultaneously negating coverage for those same claims through either the "professional service" definition or the "pre-existing damage exclusion." *See Id.* at PDF pgs. 12, 14. Under virtually all conceivable scenarios, a professional service or personal injury that gives rise to a legal claim by a third party will always predate the date the insurer is notified of the claim. Admiral's denial of coverage for the Gilbert claim runs counter to public policy and the plain definition and purpose of a "claims made" policy.

### D. Admiral's Failure to Exercise Good Faith

Admiral's denial of coverage and refusal to defend the Gilbert claim was in bad faith and violates Fla. Stat. § 624.155. An insurer handling claims against its insured "has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." *Perera v. U.S. Fid. & Guar. Co.,* 35 So. 3d 893, 898 (Fla. 2010). When an insurer unjustifiably refuses to defend its insured, the insurer is liable to the insured for the reasonable attorney's fees and other expenses incurred in defending the action brought by the third party as damages for the breach of contract. *Kehle v. USAA Cas. Ins. Co.,* 2019 WL 1429674, at *3 (S.D. Fla. Mar. 25, 2019).

Under Florida law, first-party bad faith claims generally involve allegations the insurer improperly denied coverage or refused to settle the insured's claim in good faith. *QBE Ins. Corp. v. Chalfonte Condominium Apartment Ass'n, Inc.,* 94 So. 3d 541 (Fla. 2012). Fla. Stat. § 624.155 provides a civil remedy for any person damaged by an insurer's conduct and states, in relevant part, as follows:

> (1) Any person may bring a civil action against an insurer when such person is damaged:
>
> (b) By the commission of any of the following acts by the insurer:
>
> 1. Not attempting in good faith to settle claims, when under all circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his/her interests.

Fla. Stat. § 624.155(1)(b)1.

Fla. Stat. § 624.155 authorizes an insured or "any person," including a third-party who has been injured because of an insurer's bad faith dealing to bring a claim against an insurer. *Opperman v. Nationwide Mut. Fire Ins. Co.*, 515 So. 2d 263, 266 (Fla. Dist. Ct. App. 1987); see also *Perera*, 35 So. 3d at 899 ("insured or the third-party claimant, either on its own behalf or as the insured's assignee, may bring a common law third-party bad-faith claim against an insurer for

4

**CONFIDENTIAL-FOR SETTLEMENT PURPOSES ONLY**

damages sustained as a result of the insurer's bad faith."); *Higgs v. Indus. Fire & Cas. Ins. Co.*, 501 So. 2d 644 (Fla. Dist. Ct. App. 1986)(holding that the insured may validly assign the right to pursue the insured's bad faith claim against his insurer to a third party).

Statutory bad faith claims, under Fla. Stat. § 624.155, are "ripe for litigation when there has been (1) a determination of the insurer's liability for coverage; (2) a determination of the extent of the insured's damages; and (3) the required notice is filed pursuant to [Fla. Stat.] § 624.155(3)(a)." *Demase*, 239 So. 3d at 221; *Landers v. State Farm Fla. Ins. Co.*, 234 So. 3d 856, 859 (Fla. Dist. Ct. App. 2018); *Cammarata v. State Farm Fla. Ins. Co.*, 152 So. 3d 606, 612 (Fla. Dist. Ct. App. 2014).

Florida courts expressly allow agreements by an insured to a judgment in excess of the policy limits against an insurer who wrongfully refuses to defend and acts in bad faith. *Perera*, 35 So. 3d at 900.

### E. Plaintiffs' Proposal

Given Vapor Artillery's exposure, Plaintiffs propose that Vapor Artillery assign to Plaintiffs all rights of recovery against Admiral, including any claims of bad faith, negligence or other potential remedies stemming from Admiral's denial of coverage for the Gilbert claim. Please let us know after you have had a change to discuss the above proposal with your client.

Sincerely,

*[signature]*

Sol H. Weiss

CS/PP
cc: (via email) Paola Pearson;
Tracy Finken; Colleen Swiers