UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-21312-BLOOM/ Otazo-Reyes

ADMIRAL INSURANCE COMPANY,

    Plaintiff,

v.

VPRART, LLC; ERIN GILBERT and
PATRICK GILBERT, individually and as
Natural Parents and Guardians of their
Minor Children, F.G., H.G., and P.G.,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Plaintiff Admiral Insurance Company's ("Plaintiff") Motion for Judgment on the Pleadings, ECF No. [35] ("Motion"). Defendants Erin Gilbert and Patrick Gilbert (collectively, the "Gilberts") filed a response in opposition, ECF No. [36] ("Response"), which Defendant VPRART, LLC ("VPRART") adopted, ECF No. [37]. Plaintiff filed a reply, ECF No. [40] ("Reply"). The Court has considered the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

### I.  BACKGROUND

According to the Amended Complaint for Declaratory Relief, ECF No. [4] (the "Complaint"), Plaintiff is a Delaware corporation with its principal place of business in Arizona. *Id.* ¶ 2. VPRART is a Florida limited liability company with its principal place of business in Florida. *Id.* ¶ 4. The Gilberts are U.S. citizens and permanent residents of the U.S. Virgin Islands. *Id.* ¶ 10.

Plaintiff issued VPRART a Commercial Lines Insurance Policy (the "Policy"). *Id.* ¶ 16. The Policy is a "Claims-Made" policy. *Id.* ¶ 17. In pertinent part, the Policy offers two types of coverages: one for bodily injury ("Coverage A") and one for professional liability ("Coverage D"). *Id.* ¶¶ 18-19, 27. Coverage A provides that:

> "[Plaintiff] will pay those sums that [VPRART] becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies. . . . However, [Plaintiff] will have no duty to defend [VPRART] against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply."

*Id.* ¶ 19. Furthermore, "[t]his insurance applies to 'bodily injury' . . . only if: (2) The 'bodily injury' . . . did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period." *Id.* ¶ 20. Coverage D states:

> [Plaintiff] will pay on behalf of [VPRART] those amounts which [VPRART] is legally obligated to pay as damages caused by a professional incident taking place within the "coverage territory" and occurring in its entirety after the Retroactive Date shown in the ADDITIONAL DECLARATIONS SCHEDULE above and before the end of the policy period, for which a claim is first made against [VPRART] during the policy period or any extended reporting period [Plaintiff] provide[s].

*Id.* at 27. According to the Additional Declarations Schedule, the Policy's retroactive date is November 12, 2019. *Id.* ¶¶ 23, 28. The "Pre-Existing Damage Exclusion" further states:

> This insurance does not apply to:
> 1. Any damages arising out of or related to "bodily injury" or "property damage," whether such "bodily injury" or "property damage" is known or unknown,
>    a. which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier); or
>    b. which are, or are alleged to be, in the process of occurring as of the inception date of the policy (or the retroactive date of this policy, if any; whichever is earlier) even if the "occurrence" continues during this policy period.

*Id.* ¶ 21.

On September 25, 2019, the Gilberts filed a lawsuit against several entities in Florida State Court for injuries allegedly sustained as a result of using a vaping product (the "Underlying Litigation") and added VPRART as a defendant in their amended complaint on March 20, 2020. *Id.* ¶ 35-36. According to the Gilberts' amended complaint in the Underlying Litigation, on August 15, 2019, Erin Gilbert ("Ms. Gilbert") purchased a flavored vape cartridge that VPRART designed, manufactured, tested, labeled, marketed, distributed, and/or placed into the stream of commerce. *Id.* ¶¶ 38, 43. Ms. Gilbert used the vaping product from August 15, 2019, to August 18, 2019. *Id.* ¶ 39. From August 19, 2019, through October 2, 2019, Ms. Gilbert was hospitalized for various injuries allegedly resulting from the use of the vaping product. *Id.* ¶ 41-42. The Gilberts raise several counts against VPRART in the Underlying Litigation for Ms. Gilbert's injuries. *Id.* ¶ 44-55. On June 30, 2020, Plaintiff denied VPRART coverage for the Underlying Litigation. *Id.* ¶ 61.

On April 12, 2021, Plaintiff filed a one-count Complaint seeking declaratory relief against VPRART and the Gilberts (collectively, "Defendants") in connection with the Underlying Litigation. *Id.* at 1. Plaintiff seeks a judicial declaration that the Policy does not require Plaintiff to indemnify, defend, or otherwise provide coverage for VPRART in the Underlying Litigation ("Count 1"). *Id.* ¶ 68. Plaintiff now moves for judgment on the pleadings because Defendants concede that (1) the retroactive date is November 12, 2019; (2) VPRART designed, manufactured, tested, labeled, marketed, distributed, and/or placed into the stream of commerce the vaping product before the retroactive date; and (3) the Gilberts allege in the Underlying Litigation that Ms. Gilbert first incurred her injuries before the retroactive date. ECF No. [35] at 1-3. Defendants respond that the Policy is inconsistent with Florida law and ambiguous, and that the Court should therefore interpret the Policy in their favor to require Plaintiff to indemnify, defend, and otherwise provide coverage for VPRART in the Underlying Litigation. ECF Nos. [36]; [37]. Plaintiff replies that the Policy is consistent with Florida law and unambiguous, and that the Court should therefore

interpret the Policy to not require Plaintiff to indemnify, defend, or otherwise provide coverage for VPRART in the Underlying Litigation. ECF No. [40].

## II.     LEGAL STANDARD

### 1.  Rule 12(c) Motion for Judgment on the Pleadings

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001); *see also Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014); *Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297, 1303 (11th Cir. 2005); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1291 (11th Cir. 2002). "A motion for judgment on the pleadings admits the [non-moving party's] factual allegations and impels the district court to reach a legal conclusion based on those facts." *Gachette v. Axis Surplus Ins. Co.*, No. 19-23680-CIV, 2020 WL 2850587, at *1 (S.D. Fla. Apr. 1, 2020) (quoting *Dozier v. Prof'l Found. for Heath Care, Inc.*, 944 F.2d 814, 816 (11th Cir. 1991)). "In determining whether a party is entitled to judgment on the pleadings, [courts] accept as true all material facts alleged in the non-moving party's pleading, and [] view those facts in the light most favorable to the non-moving party." *Perez*, 774 F.3d at 1335 (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). "A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *King v. Akima Glob. Servs., LLC*, 775 F. App'x 617, 620 (11th Cir. 2019).

"A court must deny a motion for judgment on the pleadings if a 'comparison of the averments in the competing pleadings reveals a material dispute of fact.'" *United States v. Khan*, No. 3:17-CV-965-J-PDB, 2018 WL 6308678, at *1 (M.D. Fla. Sept. 26, 2018) (quoting *Perez*, 774 F.3d at 1335). Generally, "federal courts are unwilling to grant a judgment under Rule 12(c) unless

it is clear that the merits of the controversy can be fairly and fully decided in this summary manner." *Pete Vicari Gen. Contractor LLC v. Ohio Cas. Ins. Co.*, No. 17-23733-CIV, 2018 WL 6308695, at *1 (S.D. Fla. Sept. 27, 2018) (citation omitted).

### 2. Interpretation of Insurance Policies Under Florida Law

The United States Court of Appeals for the Eleventh Circuit has established that, under Florida law, [1] insurance contracts must be construed according to their plain meaning. *See Atlantic Specialty Insurance Company v. Pastukov*, 750 F. App'x 909, 911 (11th Cir. 2018) (quoting *Garcia v. Fed. Ins. Co.*, 969 So.2d 288, 291 (Fla. 2007)); *see also Grife v. Allstate Floridian Ins. Co.*, 493 F. Supp. 2d 1249, 1252 (S.D. Fla. 2007), *aff'd*, 512 F.3d 1302 (11th Cir. 2008) (citing *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So.2d 161, 165 (Fla. 2003)). The Eleventh Circuit has also established that "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [sic] another limiting coverage, the insurance policy is considered ambiguous." *Ruderman ex rel. Schwartz v. Washington Nat. Ins. Corp.*, 671 F.3d 1208, 1211 (11th Cir. 2012) (quoting *Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000)); *see also Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 412 F.3d 1224, 1228 (11th Cir. 2005).

However, a policy is not ambiguous simply because it is complex or requires analysis. *See Southern-Owners Insurance Company v. Easdon Rhodes & Associates LLC*, 872 F.3d 1161, 1164 (11th Cir. 2017) (quoting *Swire Pac. Holdings, Inc.*, 845 So.2d at 165). Furthermore, a policy with an exclusionary provision is not necessarily ambiguous if the provision excludes coverage for only a subset of claims that would ordinarily fall within the policy's insuring provisions. *Zucker for BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*, 856 F.3d 1343, 1352 (11th Cir. 2017). Moreover,

---

[1] Florida substantive law applies to the present case because the matter is before the Court based on diversity jurisdiction and the policy was issued in Florida to a Florida insured. *CBC Builders, Inc. v. Amerisure Mut. Ins. Co.*, No. 10-21678-CIV, 2011 WL 4454937, *8 (S.D. Fla. Aug. 16, 2011)*; see also Travelers Indem. Co. v. PCR Inc.*, 326 F.3d 1190, 1193 (11th Cir. 2003) ("We are required to apply state law when construing insurance policies.").

if an insurance policy provision is clear and unambiguous, the provision should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision. *See Travelers Indemnity Company of Connecticut v. Richard McKenzie & Sons, Inc.*, 10 F.4th 1255, 1264 (11th Cir. 2021) (quoting *Taurus Holdings, Inc. v. United States Fidelity & Guaranty Co.*, 913 So.2d 528, 532 (Fla. 2005)).

In addition, under Florida law, the insurer has a duty to defend an insured if the allegations in a complaint against the insured create potential coverage under the policy. *See Travelers Property Casualty Company of America v. Salt 'N Blue LLC*, 731 F. App'x. 920, 921 (11th Cir. 2018) (citing *Keen v. Fla. Sheriffs' Self-Ins.*, 962 So.2d 1021, 1024 (Fla. 4th DCA 2007)). However, if the pleadings do not bring the case within the policy's coverage, the insurer has no duty to defend the insured. *See id.*

### III.   DISCUSSION

#### 1.   Rule 12(c) Motion for Judgment on the Pleadings

To consider Plaintiff's Motion, the Court must first determine whether there are any material facts in dispute. *See Cannon*, 250 F.3d at 1301; *Perez*, 774 F.3d at 1335; *Palmer & Cay, Inc.*, 404 F.3d at 1303; *Riccard*, 307 F.3d at 1291. Plaintiff and Defendants agree that the retroactive date for the Policy is November 12, 2019. ECF Nos. [4] ¶¶ 23, 28; [36] at 3; [37]. Plaintiff and Defendants also agree that Ms. Gilbert was injured before the retroactive date after using a vaping product that VPRART designed, manufactured, marketed, and/or sold on or prior to August 15, 2019. ECF Nos. [4] ¶¶ 38, 43; [36] at 2-3; [37]. Plaintiff and Defendants further agree that the language of the two pertinent coverages, Coverage A and Coverage D, states that the incident underlying an insurance claim must have taken place after the retroactive date. ECF Nos. [4] ¶¶ 20, 27; [36] at 3-4; [37].

As such, the only remaining issue is whether the Policy is ambiguous. According to the Eleventh Circuit, under Florida law, the interpretation of an insurance policy is a question of law. *See Cathbake Investment Co. v. Fisk Electric Co.*, 700 F.2d 654, 656 (11th Cir. 1983); *see also Smith v. State Farm Mutual Automobile Insurance Co.*, 231 So.2d 193, 194 (Fla. 1970) (finding that where the evidence is undisputed, the construction and interpretation of an insurance contract is to be decided by the court). Therefore, because there are no material facts under dispute, a judgment on the pleadings is appropriate to determine whether the Policy is ambiguous or otherwise problematic.

### 2. Interpretation of the Policy Under Florida Law

The Court now turns to the language of the Policy and the parties' arguments to determine whether Plaintiff is entitled to declaratory relief. Defendants raise several arguments which the Court analyzes below.

#### a. Ambiguities in the "Claims-Made" Policy

Defendants first contend that the Policy is a "Claims-Made" policy that excludes coverage for valid claims in a manner that is inconsistent with Florida law. ECF No. [36] at 7-8. Defendants argue that, under Florida law, a claims-made policy is one in which the insured only needs to provide notice of a claim to the insurance carrier within the policy period, irrespective of whether the losses occurred before or after the start of the policy period. *Id.* at 8. Defendants cite two cases to support their definition of a claims-made policy: *Jennings Const. Servs. Corp. v. Ace Am. Ins. Co.*, 783 F. Supp. 2d 1209, 1212 (M.D. Fla. 2011) and *Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So. 2d 512, 514 (Fla. 1983). *Id.* Both cases distinguish claims-made policies, which require claims to be made within the policy period, from occurrence policies, which require the incident underlying the claims to have taken place during the policy period. However, neither case determines whether a claims-made policy can also contain a retroactive date that limits coverage. *See Jennings Const.*

*Servs. Corp.*, 783 F. Supp. 2d at 1212; *Gulf Ins. Co.*, 433 So.2d at 514. The insurance policies that were at issue in *Jennings Const. Servs. Corp* and *Gulf Ins. Co* were claims-made policies without retroactive dates, and the cases only address when a claim must be made, not when the underlying incident must have taken place. *See id.* As such, although Defendants are correct in that a claims-made policy requires claims to be made within the policy period as a necessary "condition precedent" for coverage, *Jennings Const. Servs. Corp.,* 783 F. Supp. 2d at 1213, Defendants cite no legal authority that supports their argument that claims being made within the policy period is a sufficient condition for coverage, *see* ECF No. [36] at 8. In other words, the two cases that Defendants rely upon establish that a claim being made within the policy period is a necessary condition for coverage, but they do not establish that it is a sufficient condition that renders void any agreed-upon retroactive date. *See Jennings Const. Servs. Corp.*, 783 F. Supp. 2d at 1213; *Gulf Ins. Co.*, 433 So.2d at 514.

On the contrary, several courts have determined that, under Florida law, claims-made policies can include retroactive dates to limit coverage to losses that begin to occur after the retroactive date. *See Payroll Management, Inc. v. Lexington Ins. Co.*, 815 F.3d 1293, 1300 (11th Cir. 2016) (finding that, under Florida law, a claims-made insurance policy with a retroactive date had "no contractual ambiguity"); *First Pros. Ins. Co. v. McKinney*, 973 So.2d 510, 514–15 (Fla. 1st DCA 2007) (finding that a section titled "When You Are Covered" in a claims-made insurance policy was a valid provision that lawfully limited coverage to losses that arose from incidents within the coverage period); *The Drs. Co. v. Health Mgmt. Assocs., Inc.*, 943 So.2d 807, 808 (Fla. 2d DCA 2006). Florida courts have defined a claims-made policy as one that "provides coverages for any claim that actually is made during the policy period arising out of an incident which actually occurred during the period." *Arad v. Caduceus Self Ins. Fund, Inc.*, 585 So.2d 1000, 1001 (Fla. 4th DCA 1991); *see also The Drs. Co.*, 943 So.2d at 808.

The Court finds *Payroll Management, Inc.*, 815 F.3d 1293, to be instructive on this matter. In *Payroll Management, Inc.*, the Eleventh Circuit, applying Florida law, upheld a "claims made" insurance policy that had a retroactive date. *See id.* at 1300. The Eleventh Circuit determined that, based on the language of the policy, there were no contractual ambiguities and the insurer had no duty to provide coverage for the insured. *See id.* Similarly, this Court finds that, although the claims-made Policy limits coverage through a retroactive date, that limitation does not render the Policy inconsistent with Florida law.

Defendants also raise a related argument that the Policy is illusory or ambiguous for creating an impression that certain claims are covered by the Policy and then negating coverage for those same claims with a "pre-existing damages exclusion" that references the retroactive date. ECF No. [36] at 9. Defendants argue that the Policy's definition of a "claim" indicated that VPRART only had to make a "written demand" or notify "[s]ervice of a suit" to Plaintiff and that the exclusion provision unreasonably limited the coverage implied by the Policy's definition of a "claim." ECF No. [36] at 8-9. As such, Defendants argue that the Policy's ambiguities should be construed in favor of Defendants and against Plaintiff in accordance with *Cont'l Gas. Co. v. Wendt*, 205 F.3d 1258, 1261 (11th Cir. 2000) (finding that when a term in an insurance policy is ambiguous, the court must construe it in favor of the insured and against the insurer), and several related cases. *See id.* at 10-11.

However, the Court finds that there is no ambiguity in the Policy to construe in favor of the insured. The Eleventh Circuit, applying Florida law, determined that an insurance policy is not considered illusory or ambiguous even if an exclusion provision excludes coverage for a subset of claims that would ordinarily fall within the policy's insuring provisions. *Zucker*, 856 F.3d at 1352. In *Zucker*, the Eleventh Circuit found that a "prior acts exclusion" did not render the insurance policy illusory or otherwise ambiguous for excluding a subset of claims that fell under the

insurance policy's provisions. *Id.* Similarly, in this case, the Court finds that a "pre-existing damages exclusion," which functions in the equivalent manner as *Zucker*'s "prior acts exclusion," is not illusory or otherwise ambiguous for excluding a subset of claims that fall under the Policy's definition of a "claim." *See id.* Therefore, given that there are no ambiguities to resolve in Defendants' favor, *Cont'l Gas. Co.*, 205 F3d 11258, is not instructive in the present case.

    **b. Public Policy**

Defendants further contend that the Policy as written counters public policy because it allows Plaintiff to avoid providing coverage on a mere technicality. ECF No. [36] at 9. However, Defendants do not cite any legal authority to explain why interpreting the Policy as written would counter public policy or why the retroactive date is a mere technicality. *Id.* On the contrary, as noted above, courts have recognized similar pre-existing damages exclusion provisions. *Zucker*, 856 F.3d at 1352; *Payroll Management, Inc.*, 815 F.3d at 1300; *First Pros. Ins. Co.*, 973 So.2d at 514–15. Furthermore, courts have found that, under Florida law, insurance policies should rarely be held unenforceable on the basis of public policy grounds. *See Sawyer v. Transamerica Life Ins. Co.*, No. 09-61288-CIV, 2010 WL 1372447, *1 (S.D. Fla. March 31, 2010) (quoting *Fla. Windstorm Underwriting v. Gajwani*, 934 So.2d 501, 506-507 (Fla. 3d DCA 2005)). As such, the Court refuses to void the pre-existing damages exclusion provision and the retroactive date in the Policy based on Defendants' claimed public policy grounds.

Because the Court finds that the Policy is clear and unambiguous, the Court finds no reason not to apply the Policy according to its terms.

    **IV. CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Judgment on the Pleadings, **ECF No. [35]**, is **GRANTED**.

2. Consistent with Count I of the Complaint, the Court **DECLARES** that the Policy does not require Plaintiff to indemnify VPRART for damages, if any, awarded against VPRART in the Underlying Litigation.

3. Consistent with Count I of the Complaint, the Court **DECLARES** that Plaintiff has no duty to defend or indemnify VPRART in the claims asserted against VPRART in the Underlying Litigation.

4. To the extent not otherwise disposed of, any pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.

5. The Clerk of Court is directed to **CLOSE** the above-styled case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 6, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record